# Appendix A
# Purpose and Need for Amending Current Forest Plan Direction Pertaining to Travel Management

*Under Alternatives 2 through 7-Modified, the following direction from the Gallatin National Forest Land and Resource Management Plan (Forest Plan), 9/87, would be deleted in lieu of the goals, objectives, standards, guidelines and travel planning area direction described in Chapters I and II of the document entitled "Detailed Description of the Alternatives". This appendix is a supplement to the Purpose and Need described in Chapter 1 and identifies the specific rationale for amending each standard.*

## Changes from the Draft to the Final EIS

Very few changes were made in this appendix from what was presented in the Draft EIS. Changes were limited to correcting format, grammar and sentence structure.

## Forest-wide Standards

**1. Forest-wide standard 6.a.2., page II-17 which states:**

**"The recommendations and guidelines found in the publication:  "Coordinating Elk and Timber Management, Final Report of the Montana Cooperative Elk-Logging Study, 1970-1985 will be used in evaluating the quality of elk habitat and formulating prescriptions for timber sales and road development projects."**

<u>**Purpose of Amendment**</u> **-** *Removal of Procedural Direction*

The Forest Service is proposing to amend this direction out of the Forest Plan because scientific literature can become antiquated and therefore its use should not be required by a Forest Plan standard. NEPA requires federal agencies to use accurate scientific analysis in evaluating impacts of proposed actions (40 CFR 1500.1). They must also consider and disclose research and other information that may or may not support the same conclusions. Removing this standard from the Forest Plan will allow Forest Service biologists to select and use the scientific publications that best predicts environmental effect.

**2. Forest-wide standard 6.a.4., page II-18 which states:**

**"The 1982 Elk Logging Study Annual Report contains procedures for analyzing elk habitat security as it is affected by timber harvest and road construction activities. An "elk effective cover" analysis based on this report will be conducted for timber sales and effective cover ratings of at least 70 percent will be maintained during general hunting season."**

**<u>Purpose of Amendment</u>** – *Replacement with Proposed New Direction*

The Forest Service proposes to replace this standard of the current Forest Plan with specific decisions concerning motorized use in the proposed travel management plan.  The principle reason for this amendment is that once a decision is made that identifies the designated routes on which motorized use is allowed, the need for a road density standard, which this one is, becomes moot. Open road density, motorized route density, and the habitat effectiveness rating will be a result of this decision, not the other way around.

In addition, the Forest Service proposes to remove this direction because it has been unnecessarily problematic.  When originally adopted the "elk effective cover" analysis (also known as habitat effectiveness index or HEI) to be done under this standard consisted of 2 variables; percent cover and open road density in miles per square mile.  The maximum HEI value of 100% reflected a landscape where the cover to forage ratio was 40% and open road density was 0 miles per square mile.  Using the cover variable however meant that HEI actually would go down as forested tree cover increased.  In many situations, this meant that timber would have to be harvested in order to reduce cover and meet HEI.  This did not make sense so the Forest Service dropped the cover variable unless it was below 40%.  HEI then was to be calculated based only on open road density. An HEI of 70% equates to about ¾ of a mile of open road per square mile.  However, other questions then arose.  How large an area does one use to calculate open road density?  Why should the standard only apply in hunting season when concern over providing habitat security was for all times of the year?  Should motorized trails be included in the calculation?  Should federal highways, county roads and city streets be included?  Should a primitive road be given the same weight as a federal highway?  Should the actual length of a road be used in the calculation or should it be modified somewhat in situations where roads run close together (e.g. city streets, tight switchbacks)?

The Forest Service attempted to answer these questions by developing a procedure that would make the standard workable in achieving the desired habitat security for elk.  However these procedures were never formally adopted through amendment of the Forest Plan and in practice were more restrictive than expected.  The original intent was to provide restrictions on new road development but it was soon discovered that the current condition of many areas did not achieve an HEI of 70%. This was not originally a management problem because it was believed that as long as proposals for timber harvest included a road closure program that improved HEI, the projects would be consistent with this Plan standard.  An adverse decision on appeal changed this interpretation to one in which it had to be demonstrated that enough road was planned for closure to actually achieve an HEI of 70%.  In many areas this was not even possible due to the existence of private land access roads, highways and county roads, etc. and in other areas it was undesirable.

3.  **Forest-wide standard 11.a.4., page II-24 which states:**

**"Access and transportation systems for minerals development will be coordinated during the preparation of the resource area analysis for that area."**

**Purpose of Amendment -** *Removal of Procedural Direction*

The Forest Service is proposing to amend this direction out of the Forest Plan because the "resource area analysis" process is no longer used.  Resource area analysis (RAA) was a process unique to the Gallatin National Forest used during the 1980's.  It was developed to meet the requirements of NEPA for multiple projects within a given area.  Subsequent appeals of decisions made through this process however showed that it was not legally sufficient to meet some the specific requirements of NEPA and therefore was discontinued.  Today, transportation system proposals would be evaluated in an environmental assessment or environmental impact statement.

**4.   Forest-wide standard 12.b.1., page II-26 which states:**

**"Road and trail rights-of-way will be acquired across non-National Forest lands to assure adequate protection, administration, and utilization of National Forest resources.   Areas where access is needed to meet the objectives of the Forest Plan including public access are identified on the Management Area Map."**

**Purpose of Amendment –** *Replacing with Proposed New Direction*

The Forest Service is proposing to replace this standard with new direction in the Travel Plan that more accurately identifies areas where access is currently desired (See Goal B and associated objectives and guidelines proposed in Chapter I of the "Detailed Description of the Alternatives").  Also, this direction should not be listed as a "standard" and not specify that "road and trail rights-of-way will be acquired." Negotiation and agreement are necessary with private landowners to achieve access goals.

**5.   Forest-wide standard 12.b.2., page II-26 which states:**

**"The Forest will cooperate with other landowners in developing roads or road systems which serve mutual needs."**

**6.   Forest-wide standard 12.b.3., page II-26 which states:**

**"A satisfactory jurisdictional status for roads on National Forest and other public land will be sought in cooperation with appropriate authorities."**

**7.   Forest-wide standard 12.b.4., page II-26 which states:**

**"Define National Forest interest on all existing system roads and trails and acquire necessary additional interests, as needed, to meet management objectives."**

**Purpose of Amendment -** *Removal of Procedural Direction*

The Forest Service is proposing to amend this direction out of the Forest Plan because it is simply unnecessary.  There is no measurable definition as to what constitutes adequate cooperation and therefore this direction is unenforceable.  This standard is also redundant to Forest Service policy.

Also see proposed Goal B and associated objectives and guidelines proposed in Chapter I of the "Detailed Description of the Alternatives" for programmatic direction pertaining to access that is proposed for inclusion in the Travel Management Plan.

**8.  Forest-wide standard 12.b.5., page II-27 which states:**

**"Rights-of-way across National Forest lands will be granted in situations involving a statutory right of access, subject to compliance with applicable rules and regulations of the Secretary of Agriculture."**

**Purpose of Amendment –** *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because it is unnecessary.  There is no need for Forest Plan direction to simply state that current laws, rules and regulations will be followed.  Also see proposed Goal B and associated objectives and guidelines proposed in Chapter I of the "Detailed Description of the Alternatives" for programmatic direction pertaining to access that is proposed for inclusion in the Travel Management Plan.

**9.  Forest-wide standard 13.1., page II-27 which states:**

**"Analysis for transportation needs will be integrated into resource area analysis and will be completed prior to transportation project work."**

**Purpose of Amendment -** *Removal of Procedural Direction*

The Forest Service is proposing to amend this direction out of the Forest Plan because the "resource area analysis" process is no longer used.  Resource area analysis (RAA) was a process unique to the Gallatin National Forest used during the 1980's.  It was developed to meet the requirements of NEPA for multiple projects within a given area.  Subsequent appeals of decisions made through this process however showed that it was not legally sufficient to meet some the specific requirements of NEPA and therefore was discontinued.  Today, transportation system proposals would be evaluated in an environmental assessment or environmental impact statement.

**10. Forest-wide standard 13.2., page II-27 which states:**

**"Road and trail management will be determined as part of area transportation analysis and will be based on management area needs, such as recreation access, wildlife security, soil protection, economics, and protection of the investment.  The Forest Travel Map will display road, trail, and area restrictions.  See Executive Order 11644."**

**Purpose of Amendment  -** *Removal of Procedural Direction*

The Forest Service is proposing to amend this direction out of the Forest Plan because this comprehensive travel management plan EIS satisfies the intended purpose.

**11. Forest-wide standard 13.3., page II-27 which states:**

**"Road and trail use may be restricted to meet management needs."**

<u>**Purpose of Amendment**</u> – *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because it provides no direction. It actually is just a notice to the public that road and trail use may be restricted on unspecified roads and trails if the Forest Service deems it necessary. This proposed Travel Management Plan is far more specific on where and when road and trail use would be restricted. If there are future proposals to restrict use, 36 CFR 261 requires 60-day public notice prior to implementation.

**12. Forest-wide standard 13.4., page II-27 which states:**

**"Roads and trails will be designed to standards that meet resource management objectives."**

<u>**Purpose of Amendment**</u> – *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because it is redundant to more detailed direction provided in Forest Service Handbooks for engineering roads and trails (e.g. FSH 7709.57 Road Construction Handbook).

**13. Forest-wide standard 13.5., page II-27 which states:**

**"The Hyalite road will be reconstructed and maintained to provide for recreation and timber management and public safety."**

<u>**Purpose of Amendment**</u> - *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because reconstruction of the Hyalite road has been accomplished. It was paved to accommodate increasing recreation use and to provide for public safety. In addition, adequate maintenance of the Hyalite road, as well as other Forest roads, is an objective that does not need to be stated in the Forest Plan.

**14. Forest-wide standard 13.6., page II-27 which states:**

**"Areas now under cost-share agreement may be modified or new agreement areas created if analysis shows the action will be economically advantageous to the government, consistent with the management area goals, and in the public's interest."**

<u>**Purpose of Amendment**</u> – *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because it is not ripe or specific enough to provide any direction. As with other standards, this is more a notice that there

could be changes in cost-share agreements in the future if the need arises.  It does not provide sideboards on management activity as a Forest Plan "standard" should.

**15. Forest-wide standard 13.7., page II-27 which states:**

**"Roads and trails that have been disrupted by management activities and are required for continued use will be restored to serviceable condition prior to completion of the project."**

<u>**Purpose of Amendment:**</u>  *Unnecessary or Redundant*

The Forest Service is proposing to amend this direction out of the Forest Plan because it is redundant to direction provided in Forest Service Engineering Handbooks.  It is also unnecessary because if a route is needed over the long-term, any disruption caused by management activity would be restored to a serviceable condition regardless of whether this direction was included in the Forest Plan.

**16. Forest-wide standard 13.8., page II-27 which states:**

**"Noxious weeds along roads and trails will be treated."**

<u>**Purpose of Amendment:**</u>  *Inconsistent with Law, Regulation or Policy*

The Forest Service is proposing to amend this direction out of the Forest Plan because proposed noxious weed treatment must first meet the requirements of NEPA.  Adequate NEPA analysis requires a site-specific proposal, consideration of treatment alternatives, and an evaluation of potential environmental impacts.  The Forest Service completed an EIS and decision in 2005 for noxious weed treatment that meets these requirements.

**17. Forest-wide standard 13.9., page II-28 which states:**

**"Existing roads and trails will be maintained consistent with management area goals."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The Forest Service is proposing to replace this standard in lieu of the more detailed goals, objectives, standards and guidelines proposed in this Travel Management Plan.  The above standard is vague but it could also be misinterpreted such that it would conflict with some of this proposed direction.  For example, there is a proposed forest-wide travel plan objective to "close and rehabilitate existing roads in excess to administrative, recreation and access needs."  In Forest Plan management area (MA) 6, this could be interpreted to be inconsistent with the existing goal to "provide additional public access to these areas."

**18. Forest-wide standard 16.e., page II-29, pertaining to eligible Wild and Scenic River segments which states:**

**"Paralleling roads or railroads can be constructed and maintained on one or both river banks. Access roads leading to the river and bridges across the river may be constructed."**

<u>Purpose of Amendment:</u>  *Misleading*

The Forest Service proposes to amend this statement out of the Forest Plan because it implies that there are proposals for road, bridge and/or railroad construction along eligible Wild and Scenic River segments.  It also implies that, as a Forest Plan Standard, a decision has been made to permit such activity if and when it is proposed.

**19. Forest-wide standard 16.h., page II-28, pertaining to eligible Wild and Scenic River segments which states:**

**"Motorized travel on land or water may be permitted, prohibited or restricted.  Controls will usually be similar to surrounding lands and waters."**

<u>Purpose of Amendment:</u>  *Unnecessary or Redundant*

The Forest Service proposes to amend this statement out of the Forest Plan because it provides no direction.  As with other standards proposed for amendment, this is more a notice that there could be restrictions on motorized travel in eligible Wild and Scenic River corridors, or not.  It does not provide sideboards on management activity as a Forest Plan "standard" should.  The proposed travel plan will identify what types of travel are appropriate on roads and trails within these areas.

## Management Area Standards

**20. Management Area 1 standards on page III-2 and III-3 which state:**

**"Maintain existing recreation opportunities consistent with the rural and urban recreation opportunity spectrum classes."**

**"Design, construct, reconstruct, and maintain trail consistent with management area goals."**

<u>Purpose of Amendment:</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend this statement out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan, and it is an objective to design, construct, reconstruct and maintain trails to accommodate the designated uses.  It is not desirable to limit the range of travel plan alternatives by existing "recreation opportunity spectrum" (ROS) classes or management area goals.  Note that the management area goals of the Forest Plan are not being proposed for amendment and are not in conflict with the alternatives for the proposed travel management plan.

**21. Management Area 2 standards on page III-4 and III-5 which state:**

**"Recreation Opportunity Spectrum classes are rural and urban."**

**"Design, construct, reconstruct, and maintain roads and trails consistent with management area goals."**

<u>Purpose of Amendment:</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend this statement out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan, and it is an objective to design, construct, reconstruct and maintain trails to accommodate the designated uses. It is not desirable to limit the range of travel plan alternatives by existing "recreation opportunity spectrum" classes or management area goals. Note that the management area goals of the Forest Plan are not being proposed for amendment and are not in conflict with the alternatives for the proposed travel management plan.

**22. Management Area 3 standards on page III-6 and III-7 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized or semi-primitive non-motorized."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private land access, special use mineral activity, or to provide access to other management areas if the soil and water values can be protected."**

**"The Forest Service investment in road and trail maintenance will be at a minimal level necessary to protect the investment and provide for soil and water protection and user safety."**

<u>Purpose of Amendment:</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend this statement out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The second part of this standard that precludes road construction for surface management (with certain exceptions) is unnecessary. Management area 3 consists of nonforest, noncommercial forest, and forested areas which are not suitable for timber production. Topographic constraints and poor accessibility characterize these sites. In other words the Forest Service has no objectives to manage these areas for commodity production and therefore roads would not be needed. If roads

are proposed for mineral development, private land access, or to access other areas, they would be site-specifically evaluated in accordance with NEPA.

The third part of the standard that specifies road and trail maintenance be at the minimum level necessary may not be consistent with the objectives of the proposed travel management plan to maintain routes to adequately accommodate the designated uses.

**23. Management Area 3a standards on page III-8 which state:**

**"Recreation Opportunity Spectrum classes and semi-primitive motorized and semi-primitive non-motorized."**

**"No road or trail construction will occur."**

**"Existing trails may be closed and reseeded or relocated."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend this statement out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The statement that no road or trail construction will occur would not be inconsistent with the proposed travel management plan alternatives but it would be inconsistent with the guiding principle of making specific route-by-route management decisions.  In other words, this standard is unnecessary given that the travel management plan would preclude summer motorized use except on routes designated for that use and any possible future proposals for new route construction would be evaluated through a site-specific NEPA analysis.

The statement that existing trails may be closed, reseeded or relocated is simply a disclosure that such actions may occur in this management area.  It does not provide any specific direction.  The proposed travel plan includes more specific objectives for route decommissioning.

**24. Management Area 5 standards on page III-14 and III-16 which state:**

**"Manage these areas to provide roaded recreation opportunities in a natural appearing forest setting.  The Recreation Opportunity Spectrum classes are roaded natural appearing and roaded modified."**

**"Design, construct, reconstruct, and maintain roads and trails consistent with management area goals and traffic demands."**

**"Coordinate with other agencies to improve roads under their jurisdiction to achieve the goals of this management area."**

**Purpose of Amendment:**  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend this statement out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes or management area goals.  Note that the management area goals of the Forest Plan are not being proposed for amendment and are not in conflict with the alternatives for the proposed travel management plan.

The last statement to coordinate with other agencies to improve roads under their jurisdiction to achieve the goals of this management area is unnecessary.  Forest Service coordination with other agencies, particularly counties, in improving and maintaining roads is ongoing.

**25. Management Area 6 standards on page III-17 and III-18 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized or semi-primitive non-motorized."**

**"Develop trails and end-of-road facilities to provide access and disperse use throughout the area."**

**"Conflicting recreational uses such as hiking, trail biking, horse riding, snowmobiling, and skiing may be separated or restricted in some areas."**

**"Identify opportunities and restrictions on the Forest Travel Map."**

**"Roads will not be constructed for surface management purposes, except to provide public access.  Allow roads for private land access, special use mineral activity, or to provide access to other management areas."**

**Purpose of Amendment:**  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The remaining statements of this standard will no longer be needed in the Forest Plan because the proposed travel plan will make specific decisions on how to manage travel and the results will be reflected on an updated Forest Visitor Map.  In the unlikely event that there would be a future proposal for road construction in this management area, it is better addressed through a site-specific analysis process consistent with NEPA requirements.

**26. Management Area 7 standards on page III-19 and III-20 which state:**

**"All recreation opportunity spectrum classes are included in this management area."**

**"Restrict off-road vehicle use, except snowmobiles, to roads and trails."**

**"Locate roads and trails outside of riparian areas where possible.  Minimize amount of material from road and trail construction wasted into riparian areas.  Follow best management practices that apply to road construction."**

**"Design road drainage to minimize the entry of sediment into streams.  Road design will also provide for low risk of drainage failure and mass failure."**

**"Minimize the number of stream crossings.  Locate and design approaches to stream crossings to minimize damage to the riparian area.  Design all crossings located in fishery streams to allow for upstream fish passage."**

**"Avoid channel realignment where possible."**

**"Minimize short-term sedimentation during bridge or culvert installation."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The remaining direction provided by this standard is proposed for amendment because there is new direction being proposed with the travel plan alternatives designed to achieve protection of riparian areas.

**27. Management Area 8 standards on page III-24 and III-25 which state:**

**"Recreation Opportunity Spectrum classes are roaded natural appearing and roaded modified."**

**"Local roads and some collector roads will be closed as needed to protect the road surface, reduce maintenance costs, and protect other resources."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The second statement indicating that some roads will be closed as needed is merely a disclosure that some roads may be closed and therefore provides little management direction. The proposed travel management plan would direct that roads, not otherwise designated for summer motorized use, be closed.

**28. Management Area 9 standards on page III-27 and III-28 which state:**

**"Recreation Opportunity Spectrum class is roaded natural appearing."**

**"Manage roads for dispersed recreation and to protect other resources."**

**"Dispersed recreation opportunities will be provided with moderate levels of investment in trail and recreational road maintenance, trailhead facilities, and in the event of disruption from timber harvest activities, trail relocation."**

**"Trailhead facilities will be installed as necessary to disperse use throughout the area."**

**"Identify opportunities and restrictions on the Forest Travel Map."**

**"Design, construct, reconstruct, and maintain roads and trails consistent with management area goals."**

**"Maintain the trail system to enhance dispersed recreation."**

**"Provide trailhead facilities."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The remaining statements of this standard will no longer be needed in the Forest Plan because the proposed travel plan will make specific decisions on how to manage travel and the results will be reflected on an updated Forest Visitor Map.

**29. Management Area 10 standards on page III-30 and III-31 which state:**

**"Recreation Opportunity Spectrum classes are roaded natural appearing and roaded modified."**

**"Dispersed recreation opportunities will be provided with moderate levels of investment in trail and recreational road maintenance, trailhead facilities, and in the event of disruption from timber harvest activities, trail relocation.  Management activities will be oriented toward reducing the impacts associated with recreation activities on other resource values, including protection of soil and water quality."**

**"Design, construct, reconstruct, and maintain roads and trails consistent with management area goals."**

<u>Purpose of Amendment:</u>  *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes or management area direction.  Note that the management area goals of the Forest Plan are not being proposed for amendment and are not in conflict with the alternatives for the proposed travel management plan.

The remaining direction provided by this standard is proposed for amendment because there is new direction being proposed with the travel plan alternatives designed to achieve protection of other resources.

**30. Management Area 11 standards on page III-33 and III-35 which state:**

**"Recreation Opportunity Spectrum classes are roaded natural appearing and roaded modified."**

**"A variety of dispersed recreation activities are compatible with the management area goals. Winter recreation activities will not be allowed on important winter range when they disrupt big game use."**

**"Trailhead facilities will be installed as necessary to disperse use throughout the area."**

**"Locate roads and trails to avoid important wildlife areas such as wallows, licks, calving, and fawning areas."**

**"Implement road use restrictions to achieve an elk habitat effectiveness level of at least 60% or a specified elk hunter opportunity objective."**

**Purpose of Amendment:** *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The remaining direction provided by this standard is proposed for amendment because there is new direction being proposed with the travel plan alternatives designed to achieve protection of wildlife and wildlife habitat. The alternatives also include area restrictions on snowmobiles, prohibitions and seasonal restrictions on summer motorized use to achieve the same purpose. The requirement to maintain an elk habitat effectiveness level of 60% or specified objective is proposed for amendment for the same reasons as discussed for the forest-wide standard 6.a.4.

**31. Management Area 12 standards on page III-37 and III-38 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized and semi-primitive non-motorized."**

**"A variety of dispersed recreation activities are compatible with the management area goals."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private land access, special use mineral activity, or to provide access to other management areas."**

**"Locate roads and trails to avoid important wildlife areas such as wallows, licks, calving, and fawning areas."**

**"Manage roads and trails to provide for dispersed recreation activities consistent with wildlife goals."**

**"Construct trailhead facilities to enhance recreation opportunities."**

**Purpose of Amendment:** *Replacement with Proposed Direction*

Similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The remaining direction provided by this standard is proposed for amendment because there is new direction being proposed with the travel plan alternatives designed to achieve protection of wildlife

and wildlife habitat.  The alternatives also include area restrictions on snowmobiles, prohibitions and seasonal restrictions on summer motorized use to achieve the same purpose.

The statements within this standard also do not provide good management direction as written. They lack measurable specificity and therefore provide no guidance for project decisions.

**32. Management Area 13 standards on page III-40 and III-42 which state:**

**"Recreation Opportunity Spectrum classes are roaded natural appearing or roaded modified."**

**"Developed recreational capacity will not be increased above the existing level, except to accommodate increase in winter sports activity."**

**"Dispersed recreation opportunities will be provided with moderate levels of investment in trail and recreational road maintenance, trailhead facilities, and, in the event of disruption from timber harvest activities, trail relocation."**

**"Trailhead facilities will be installed as necessary to disperse use throughout and beyond the area."**

**"Locate roads and trails to avoid important wildlife areas."**

**"Strive for habitat effectiveness levels of at least 80% for MS-1 and at least 60% for MS-2."** *Note that this standard was removed via Forest Plan amendment 19.*

**"Manage roads and trails to control public use in areas where a high potential for human/grizzly bear conflict is identified."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

Again, similar to the other standards above pertaining to specific management areas the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan.  It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes.

The statement that developed recreation capacity will not be increased above existing levels is proposed for amendment because direction for management of the grizzly bear and grizzly bear habitat is in the process of being revised (Proposed Grizzly Bear Conservation Strategy Amendment).  This proposed revised direction is being considered in the travel planning process.

The remaining direction provided by this standard is proposed for amendment because there is new direction being proposed with the travel plan alternatives designed to achieve protection of wildlife and wildlife habitat.  The alternatives also include area restrictions on snowmobiles, prohibitions

and seasonal restrictions on summer motorized use to achieve the same purpose.  In other words, the proposed travel management plan is specific to how each route and area would be managed therefore eliminating the need for the broad statements above.

**33. Management Area 14 standards on page III-44 through III-46 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized, semi-primitive non-motorized, and primitive."**

**"Dispersed recreation opportunities will be provided with moderate levels of investment in trail and recreational road maintenance and trailhead facilities."**

**"Trailhead facilities will be installed as necessary to disperse use throughout this area."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private access, special use mineral activity, and access to other management areas."**

**"Manage roads and trails to control public use in areas where a high potential for human/grizzly bear conflict is identified."**

**"Strive for elk habitat effectiveness levels of at least 80% during the winter period."** *Note that this standard was removed via Forest Plan amendment 19.*

**"Strive for elk habitat effectiveness levels of at least 80% for MS-1 grizzly bear habitat and 60% for MS-2 grizzly bear habitat."** *Note that this standard was removed via Forest Plan amendment 19.*

**Purpose of Amendment:** *Replacement with Proposed Direction*

As indicated several times previously, the Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan.  The recreation opportunities to be provided on roads and trails will be identified through the travel plan.

The requirements to strive for specified elk habitat effectiveness levels were removed via Forest Plan Amendment 19.

The remaining statements of this standard will no longer be needed in the Forest Plan because the proposed travel plan will make specific decisions on how to manage travel and the results will be reflected on an updated Forest Visitor Map.  In the event that there would be a future proposal for road construction in this management area, it is better addressed through a site-specific analysis process consistent with NEPA requirements.

**34. Management Area 15 standards on page III-47 and III-48 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized, semi-primitive non-motorized, and primitive."**

**"Provide dispersed recreation opportunities with moderate levels of investment in trail and recreational road maintenance and trailhead facilities."**

**"Install trailhead facilities as necessary to disperse use throughout this area."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private access, special use mineral activity, and access to other management areas."**

**"Manage roads and trails to control public use in areas where a high potential for human/grizzly bear conflict is identified."**

**"Strive for elk habitat effectiveness levels of at least 80% for MS-1 grizzly bear habitat and 60% for MS-2 grizzly bear habitat."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The purpose of this amendment is the same as for the MA 14 direction described previously.

**35. Management Area 16 standards on page III-50 and III-51 which state:**

**"Recreation Opportunity Spectrum classes are roaded natural appearing, semi-primitive motorized, and semi-primitive non-motorized."**

**"Provide dispersed recreation opportunities at a low level of investment, primarily travel planning and maintenance of recreation travel routes that pass through this area."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private land access, special use mineral activity, or to provide access to other management areas."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

As with the other management area standards proposed to be replaced through amendment, they would no longer be needed if the proposed travel plan is adopted.  The proposed travel plan would specify the types of uses to be allowed on every road and trail.  It also proposes a new set of goals, objectives, standards and guidelines that would provide direction for future activities related to travel, including road and trail construction and maintenance activities.  The standard identifying ROS class is proposed for amendment for reasons stated previously.

**36. Management Area 17 standards on page III-52 and III-53 which state:**

**"Recreation Opportunity Spectrum classes include semi-primitive motorized and semi-primitive non-motorized."**

**"Provide dispersed recreation opportunities at a low level of investment, primarily travel planning and maintenance of recreation travel routes. Winter recreation activities may be controlled or restricted when they disrupt big game use."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private land access, special use mineral activity, or to provide access to other management areas."**

**"Locate roads and trails to avoid important wildlife areas."**

**"Road use restrictions may be used to minimize disturbance to big game."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The purpose of this amendment is the same as described for the MA 16 standards above.

**37. Management Area 18 standards on page III-54 and III-55 which state:**

**"Recreation Opportunity Spectrum classes include semi-primitive motorized and semi-primitive non-motorized. Restrict summer motorized use to trails designated on the Forest Travel Map."**

**"Construct, reconstruct, and maintain trails to accommodate recreation needs."**

**"Evaluate the need for a trail connecting the East and Main Fork Hyalite Creek trails."**

**"Develop a trailhead on Dry Creek."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The Forest Service proposes to replace this direction of the Forest Plan for much the same reasons as described previously. The Forest Service proposes to amend the statement about ROS out of the Forest Plan because it could be interpreted in a way that is inconsistent with direction proposed with this travel management plan. The recreation opportunities to be provided on roads and trails will be identified through the travel plan. It is not desirable to limit the range of selectable travel plan alternatives by existing "recreation opportunity spectrum" classes. The travel management plan proposes to restrict summer motorized use to designated routes across the Forest so this standard is no longer needed. A trailhead has been developed on Dry Creek so that direction is outdated. The statement to construct, reconstruct, and maintain trails to accommodate recreation needs is too broad to provide meaningful direction. Lastly, a trail connecting the East and Main Fork Hyalite Creek is no longer desired.

**38. Management Area 19 standards on page III-56 and III-57 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized and semi-primitive non-motorized."**

**"The Porcupine drainage will be closed to motorized off-route travel. Motorized trail vehicles can use designated routes. The Elkhorn trail will be managed for non-motorized use (see Forest Travel Map)."**

**"In the Buffalo Horn drainage, off-route vehicle travel is open to snowmobile travel only; other vehicles are restricted to designated routes. There will be no snowmobile use before December 1 (see Forest Travel Map)."**

**"Roads will not be constructed for surface management, except to provide public access. Allow roads for private land access, special use mineral activity, or to access adjacent management areas."**

<u>Purpose of Amendment:</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend statements about ROS out of the Forest Plan for reasons described previously. The remaining statements are proposed to be removed because the proposed travel plan would restrict summer motorized use to designated routes and will determine the appropriate types and season of use for specific trails as well as area and seasonal restrictions for snowmobile use.

**39. Management Area 20 standards on page III-59 and III-60 which state:**

**"Recreation Opportunity Spectrum classes are semi-primitive motorized and semi-primitive non-motorized."**

**"Allow use of motorized vehicles for recreational purposes where such use is compatible with the protection and propagation of wildlife."**

**"Allow snowmobile use during periods when there is no conflict with grizzly bear or big game."**

**"Allow motorized trail vehicles less than 40 inches wide on designated routes from July 15 through October 30 (see Forest Travel Map)."**

**"No new road construction will be allowed."**

**"Manage the trail system consistent with management area goals."**

**"No new trailheads or trails will be constructed until the grizzly bear cumulative effects analysis is complete."**

**Purpose of Amendment:**  *Replacement with Proposed Direction*

The Forest Service proposes to replace this direction with the travel management plan which includes a new set of goals, objectives, standards and guidelines along with site-specific decisions over appropriate uses of each road and trail. The statements above could be in conflict with the new direction prescribed by the travel plan. For example, the statements to allow certain uses may not be consistent with certain travel plan alternatives that would restrict those uses. Road construction is already prohibited in this area pursuant to the Lee Metcalf Wilderness Act so that standard is unnecessary. The grizzly bear cumulative effects model has been completed so the need for that direction is also unnecessary. The Forest Service proposes to amend the statements regarding ROS out of the Forest Plan for reasons described previously.

**40. Management Area 21 standards on page III-63 and III-64 which state:**

**"Recreation Opportunity Spectrum classes include primitive, semi-primitive motorized, and semi-primitive non-motorized."**

**"Evaluate road construction necessary to meet RNA objectives on a case-by-case basis."**

**Purpose of Amendment:**  *Replacement with Proposed Direction*

The Forest Service proposes to amend statements about ROS out of the Forest Plan for reasons described previously. The second standard to evaluate road construction on a case-by-case basis is redundant to analysis already required by NEPA.

**41. Management Area 23 standards on page III-65 and III-66 which state:**

**"Inventory and evaluate potential trails for their suitability and management as part of the National Recreation Trail system."**

**"Manage trails for either motorized or non-motorized use, depending on the objective of the individual trail."**

**"Trail location, construction, and maintenance will meet the management area goal."**

**Purpose of Amendment:**  *Replacement with Proposed Direction*

Management Area (MA) 23 specifically pertains to the National Recreation and Scenic Trails on the Gallatin National Forest. The proposed travel management plan will determine how each of these trails shall be managed and therefore the above standards would no longer be needed. The management area goal for MA 23 is to "protect the integrity of the trail and provide the traveler with a wide variety of visual experiences." The standard above to locate, construct and maintain trails to meet this goal provides no direction because any visual experience obtained would meet it. Therefore it is unnecessary to retain it as Forest Plan direction.

**42. Management Area 24 standards on page III-67 and III-68 which state:**

**"Recreation Opportunity Spectrum classes include semi-primitive motorized, semi-primitive non-motorized, roaded natural appearing, and roaded modified."**

**"Coordinate roads necessary for the development of minerals with goals of adjacent management areas."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend statements about ROS out of the Forest Plan for reasons described previously.  The statement to coordinate roads necessary for the development of minerals with goals of adjacent management areas is unnecessary as Forest Plan direction.  Consideration of other possible road access needs when a road is proposed for mineral development is just a matter of good policy.

**43. A Management Area 25 standard on page III-69 which states:**

**"All Recreation Opportunity Spectrum classes are included in this management area."**

<u>**Purpose of Amendment:**</u>  *Replacement with Proposed Direction*

The Forest Service proposes to amend statements about ROS out of the Forest Plan for reasons described previously.