IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, et al., | 19-CV-00066-SPW-TJC |
| Plaintiffs, | DECLARATION OF JOHN DAGGETT |
| vs. | |
| MARY ERICKSON, in her capacity as Forest Supervisor for the Custer-Gallatin National Forest, et al., | |
| Federal-Defendants. | |

I John Daggett declare as follows:

1. I reside in Valley County near the town of Glasgow, Montana. I am over 18 years of age and competent to testify. I have personal knowledge of each of the facts set forth below.

2. I grew up in Harlowton Montana near the Crazy Mountains and started going into the Crazies as a young boy with my parents in the early 1960's.  I have hiked, hunted, fished, camped, cross country skied, snowmobiled, and rode and packed horses in the Crazies since then. I know the area – including the area to be impacted by the Porcupine Ibex Trail Project.  My kids also go into the Crazies to recreate.  My

Exhibit U

middle son tries to make a trip every year to fish one of the lakes in the Crazies.

3. I am a civil engineer by profession and a retired federal employee.  I retired in 2016 with over 38 years of federal service.  My position when I retired was Operations Project Manager for Fort Peck Dam for the US Army Corps of Engineers at Fort Peck Montana. I am currently an active member and supporter of the Skyline Sportsman's Association, the Montana Chapter of Backcountry Hunters and Anglers, and Friends of the Crazy Mountains.

4. Because of the checkerboard land pattern in the Crazies, I have encountered problems over the years with blocked trails.  Thirty years ago I was involved in litigation on blocked trails in the northern part of the Crazies.  That effort is a public success story which led to the blocking up of about 100,000 acres of Forest Service by purchasing 38,000 acres of private land.  It was a big win for both sides.

5. In August of 2018, I explored the Porcupine Lowline trail with Tony Schoonen and Harold Johns of Skyline Sportsmen and took this picture of them at a locked gate on the trail (see below).  This is where the trail goes from Forest Service to private on the boundary between Section 10 and 15(a private section) in T.4N., R.10E. It is my understanding that the lock on the gate is the private landowner's.



6. The purpose of the trip was to hike the existing  Porcupine Lowline 267 and Elk Creek195 trails and look at the proposed re-route. We found the existing trail to be on very favorable terrain as you would expect from the old time rangers.  They generally put trails where the topography was the most favorable.  The new proposed trail route shown by the Forest Service last August is on steeper terrain and Tony and Harold could not hike it.  The route shown on the Forest Service solicitation for the new trail that just had a contract award is on even steeper terrain according to topography maps and what we saw last summer.  This route is closer to their original route proposed early last year during the Forest Service's scoping.  My understanding is that there were many negative comments on this route because of the very

steep terrain and is the reason the proposed trail was moved to lower elevations as depicted on their maps last August.

7. I am familiar with the Porcupine Ibex Trail Project. I submitted extensive comments to the Forest Service during their scoping in March of 2018. They later abandoned their NEPA process and stated NEPA was already covered in the 2006 Travel Plan.

8. As stated in my comments to the Forest Service last year, I was very concerned with the precedent setting nature of their proposed actions. That is to abandon trails which they already have easements on and relocating them on much rougher terrain. It also may encourage others to block trails and extract special deals for them. In the case of the two trails in question, the Forest Service totally ignores the access to a state1/2 section which borders Section 15. They also totally ignored the Northern Pacific easements reserved for the public on land the railroad sold. The steepness of the new trails and constructing a new trail in undisturbed high elevation habitat deeply concerned me. My comments last year requested the agency do at least an Environmental Assessment and not a Categorical Exclusion (CE). The agency last summer informed us NEPA was already covered by the 2006 Travel Plan and the NEPA they started was not needed. My understanding is that there were many comments illustrating there was broad public interest in this project. From my experience it is unusual to attempt to tie a specific project like this to a broader NEPA

3

process done twelve years earlier. Particularly if there is broad public interest and new information.

9. The Porcupine Ibex Project will likely irreparably harm my interest using the Porcupine Lowline trail and Elk Creek trail to hike, cross country ski, fish, hunt, and explore the Crazy Mountains. So too will the carving of a new trail in Forest Service sections described on the proposed project map.  First it will set a precedent that the Forest Service is no longer willing to defend existing easements on their trails that have existed for over 100 years. It will send a bad message to those that block legal existing public trails.  Second the reroute is on much steeper terrain and is more susceptible to bad weather conditions which is common in the Crazy Mountains.   I'm not sure winter use will be possible at all. The new trail will be harder for me to use.  I am now 63 and not getting any younger. The new route will eliminate any existing public access to state land in the S1/2 of section 16, T.4N., R.10E..

10. The Forest Service's decision to go ahead with the Porcupine Ibex project sets dangerous precedent for how our National Forest System trails are managed.  It is about much more than a $27,000 project and simply rerouting a trail.  It rewards bad behavior pure and simple.  It rewards the landowner for blocking the trails.  These trails are federal Real Property Assets just as the lands they access are.  I know because I signed for similar Real Property as the Responsible Official while I was Project Manager at Fort Peck.  My list was very

4

extensive and listed pages on pages of Real Property I was responsible

for.  My signature accepting responsibility for that Real Property meant

that I could be held liable for it if something happened to it. The Forest

Service seems to have arbitrarily created an unwritten policy that is to

divest of valuable Real Property (trails) anywhere they cross private

land if the landowner blocks them.  Avoid the conflict. This policy of

divesting of public trails has had no public review.  I suspect if it did,

the public would respond the same way the public has responded to

proposals to divest of public lands.  This decision will directly impact me

in accessing the Crazy Mountains.

   11. Moving ahead with this project rewards the Forest Service for

not completing a proper NEPA analysis and not doing their job to keep

the existing access they already have.  It seems that for most of the

meetings the Forest Service had on this project, only the people who

agreed with them were invited.  I did know about the public meeting

last August but that meeting was after they made all their decisions.

   12. As a past employee with the US Army Corps of Engineers, I

have worked extensively with federal government procurement.  I held

a Contracting Officer's Warrant for several years.  I was particularly

surprised that the Forest Service decided to move forward with this

project, a small project at that, AFTER the civil action was filed.  First

of all, what is the rush?  The Forest Service was notified about the civil

action in February.  The Forest Service has a large backlog of trail work

and a shortage of funds to do it.  Awarding a contract ties up that money so it can't be used elsewhere.  If the plaintiffs prevail, the contract will have to be canceled possibly losing the money.  Awarding a contract and then having civil action filed is one thing but it seems very unusual to me to award a contract after the filing unless it is an emergency.  This project does not qualify as an emergency in my opinion.  Given the history of access problems in the Crazies and the politics surrounding them, I suspect there is more going on here to pressure the Forest Service to get it done.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of June, 2019.

_John E. Daggett