MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 2nd Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
Email: mark.smith3@usdoj.gov

Attorney for Federal Defendants
United States of America

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, a public land organization; MONTANA CHAPTER BACKCOUNTRY HUNTERS AND ANGLERS, a non-profit organization; ENHANCING MONTANA'S WILDLIFE AND HABITAT, a public outreach organization; SKYLINE SPORTSMEN'S ASSOCIATION, a non-profit organization,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest; LEANNE MARTEN, in her official capacity as Regional Forester, Region One, for the U.S. Forest Service; VICKI CHRISTIANSEN, in her official capacity as chief of the U.S. Forest Service; THE | CV 19-66-BLG-SPW-TJC<br><br><br><br>FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS |

| UNITED STATES FOREST SERVICE, a federal agency; THE UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department, |  |
|---|---|
| Federal Defendants. |  |

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

STANDARD OF REVIEW ...............................................................................4

ARGUMENT ...................................................................................................5

A.      Rule 12(b)(1) motion to dismiss...............................................................5

          1.      Disputes concerning a federal interest in real property cannot be litigated under the APA. ..................................................7

          2.      The APA does not authorize judicial review of USFS's decision not to enforce purported prescriptive easements. ......................................................................................9

          3.      Negotiation of USFS and public access across private property is committed to agency discretion. ...............................12

                  (a)     NFMA. ...................................................................15

                  (b)     Forest Plan. .........................................................16

                  (c)     Travel Plan. .........................................................17

                  (d)     Travel Rule.........................................................18

                  (e)     Regional Supplement........................................20

B.      Rule 12(b)(6) motion to dismiss.............................................................21

          1.      No authority supports Second cause of action; claim implausible given undisputed fact that trail location has changed and prescriptive easement is hypothetical. .....................................................................22

          2.      Plaintiffs' First Cause of Action is time-barred............................25

3.      Plaintiffs' NEPA challenge is statutorily barred for
        failure to exhaust. ............................................................................26

CONCLUSION ...................................................................................................27

# TABLE OF AUTHORITIES

**Cases** ...............................................................................................................**Page(s)**

*Alaska v. Babbitt*,
   38 F.3d 1068 (9th Cir. 1994) ............................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................... 21, 22

*Ass'n of Am. Med. Colleges v. United States*,
   217 F.3d 770 (9th Cir. 2000) ............................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................21

*Bennett v. Spear*,
   520 U.S. 154 (1997)..................................................... 4, 10, 11

*Block v. North Dakota*,
   461 U.S. 273 (1983)....................................................................8

*Chafin v. Chafin*,
   568 U.S. 165 (2013)..................................................................24

*Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*,
   677 F.3d 1073 (11th Cir. 2012) ......................................... 4, 13, 22

*Cook v. Hartman*,
   317 Mont. 343 (2003) ...............................................................23

*Defs. of Wildlife v. Jewell*,
   2015 WL 11182029 (D. Ariz. Sept. 30, 2015) ...............................22

*Dep't of Transp. v. Pub. Citizen*,
   541 U.S. 752 (2004)...................................................................27

*Dome Mt. Ranch, LLC v. Park Cty.*,
   307 Mont. 420 (2001) ......................................................................24

*Dunlop v. Bachowski*,
   421 U.S. 560 (1975)................................................................... 14, 15

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
   192 F.3d 922 (9th Cir. 1999) ...........................................................4

*FDIC v. Meyer*,
   510 U.S. 471 (1994)..........................................................................6

*Forest Guardians v. U.S. Forest Serv.*,
   495 F.3d 1162 (10th Cir. 2007) ....................................................27

*Heckler v. Chaney*,
   470 U.S. 821 (1985)............................................... 12, 13, 14, 15

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   593 F.3d 923 (9th Cir. 2010) ............................................. 4, 11, 26

*High Country Resources v. F.E.R.C.*,
   255 F.3d 741 (9th Cir. 2001) ...........................................................6

*Jachetta v. United States*,
   653 F.3d 898 (9th Cir. 2011) ...........................................................1

*Kingman Reef Atoll Investments v. United States*,
   541 F.3d 1189 (9th Cir. 2000) ........................................................5

*La Grasta v. First Union Sec., Inc.*,
   358 F.3d 840 (11th Cir. 2004) ......................................................22

*Lane v. Pena*,
   518 U.S. 187 (1996)..........................................................................6

*Leisnoi, Inc. v. United States*,
   170 F.3d 1188 (9th Cir. 1999) ........................................................8

*Leisz v. Avista Corp.*,
   340 Mont. 294 (2007) ......................................................................................23

*Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*,
   381 Mont. 389 (2015) ......................................................................................24

*Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers,*
   *Warehousemen & Packers v. Crowley*,
   467 U.S. 526 (1984) ........................................................................................14

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .......................................................................................4, 9

*Nat'l Parks Conservation Ass'n v. Norton*,
   324 F.3d 1229 (11th Cir. 2003) ....................................................................6, 7

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) .................................................................................. 4, 5, 11

*Pub. Lands Access Ass'n v. Madison Cty.*,
   373 Mont. 277 (2014) ............................................................................... 25, 26

*Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found., Inc.*,
   259 Mont. 279 (1993) ......................................................................................24

*Reed ex rel. Allen v. U.S. Dep't of the Interior*,
   231 F.3d 501 (9th Cir. 2000) ............................................................................6

*Samuels v. Fed. Hous. Fin. Agency*,
   54 F. Supp. 3d 1328 (S.D. Fla. 2014) ..............................................................6

*Stock West, Inc. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989) ..........................................................................5

*Stout v. U.S. Forest Serv.*,
   869 F. Supp 2d 1271 (D. Or. 2012) ..................................................... 16, 17, 18

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
   136 F.3d 641 (9th Cir. 1998) .........................................................................5, 9

*United States v. Mitchell*,
 463 U.S. 206 (1983)............................................................... 1, 2, 3, 6

*United States v. Sherwood*,
 312 U.S. 584 (1941).....................................................................6

*Wayte v. United States*,
 470 U.S. 598 (1985)....................................................................12

**Statutes**

5 U.S.C. § 704...............................................................................4, 9

7 U.S.C. § 6912(e) ..........................................................................26

16 U.S.C. § 1604(a) ........................................................................15

16 U.S.C. § 1609(a) ........................................................................12

28 U.S.C. § 2401(a) ....................................................................1, 25

28 U.S.C. § 2409a(a) .......................................................................8

**Rules**

Federal Rule of Civil Procedure 12(b)(1)......................................5, 6

Federal Rule of Civil Procedure 12(b)(6)........................................22

**Regulations**

36 C.F.R. §§ 212.50 through 212.57 ...............................................20

36 C.F.R. §§ 212.55(d) ...................................................................19

40 C.F.R. § 1505.3 ..........................................................................14

70 Fed. Reg. 68264 (Nov. 9, 2005) ................................................14

**INTRODUCTION**

Plaintiffs' complaint (Doc. 1) alleges five causes of action, sounding the National Environmental Policy Act (NEPA) and National Forest Management Act (NFMA).  All of these claims should be dismissed for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and for failure to state a claim (Fed. R. Civ. P. 12(b)(6)).

Plaintiffs' claims must be dismissed for lack of jurisdiction because they pertain to disputed federal interests in real property and real property use rights, which can only be litigated under the Quiet Title Act (QTA).  Plaintiffs' Administrative Procedures Act (APA) claims are also invalid because Plaintiffs fail to identify any duty supporting a §706(1) "failure to act" claim.  Plaintiffs' APA claims also fail because they dispute management committed to agency discretion, i.e., the Forest Service's means of securing public access to National Forest lands, and no authority provides detailed guidelines against which to assess the exercise of that discretion.  Absent a valid claim under the APA, there is no waiver of sovereign immunity, this Court lacks subject matter jurisdiction, and the complaint must be dismissed.  *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011).

Plaintiffs' complaint also fails to state a claim on which relief can be granted.  The Second Cause of Action is unsupported by any competent legal

1

authority, and even accepting the factual allegations as true the claim fails to

establish a plausible claim that USFS action is forfeiting a valid existing use

right.  Also, Plaintiffs' First Cause of Action is time-barred by the APA's six-

year statute of limitations (28 U.S.C. § 2401(a)), and is statutorily barred for

failure to exhaust administrative remedies (7 U.S.C. § 6912(e)).

**BACKGROUND**

The Crazy Mountain Range is located in south-central Montana, north of

Livingston and west of Big Timber, Montana.  Oswald Dec. ¶2.  It is an island

mountain range about 30 miles across, rising from lower plains to several peaks

over 10,000 feet.  *Id*.  Plaintiffs' complaint addresses four trails in the southern

part of the Crazy Mountains, in National Forest administered by the Custer

Gallatin National Forest.  *Id*.

Between 1907 and 1944, the United States granted five railroad patents to

the Northern Pacific Railroad Company and its successor, the Northern Pacific

Railway Company.  *Id*. ¶3.  These patents conveyed fee title to most of the odd-

numbered sections in the Crazy Mountains.  *Id*.  The resulting "checkerboard"

ownership pattern across the Crazy Mountains created complicated access

rights to both public and private lands across the Crazy Mountains.  *Id*.  USFS

and the public have used several historical trails in the Crazy Mountains to

access National Forest System lands.  *Id*. ¶4.  USFS has acquired easements and

recorded easement deeds for some of these trails, but not for others. *Id*.

Currently, public access routes to National Forest land in the Crazy Mountains

is limited to six (6) secured routes. *Id*. In the 2006 Travel Management Plan,

the agency identified the need to acquire additional easements on some

historical routes to provide adequate and permanent access to National Forest

lands in the Crazy Mountains. *Id*. ¶5.

The complaint in this action concerns four trails: Porcupine Lowline Trail

#267, North Fork Elk Creek #195, East Trunk Trail #136 (also known as Trail

#115), and Sweet Grass Trail #122. These trails are described more particularly

in the Declaration of Kamille Crootof, which also utilizes the following map.



As depicted in this map, each of the trails at issue in Plaintiffs' complaint

traverse both National Forest land (green) and private property (white). This is

the "checkerboard" management quandary spawned by the railroad patents of the early 1900s.

## STANDARD OF REVIEW

Because NEPA and NFMA do not provide for a private right of action against the United States, Plaintiffs' claims against the United States can only be judicially reviewed under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (NEPA claim reviewed under APA); *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 924-25 (9th Cir. 1999) ("NFMA does not authorize judicial review or create a private cause of action"). However, § 701(a)(2) of the APA bars judicial review, including under § 706, when the agency actions are "committed to agency discretion by law." *Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073, 1078 (11th Cir. 2012) (quoting 5 U.S.C. § 701(a)(2)).

APA review does not extend to agency actions that are not final. 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Where a plaintiff seeks to compel agency action "unlawfully withheld or unreasonably delayed" under §706(1), plaintiff bears the burden of establishing that the action is mandatory, discrete, ministerial, and "so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing

*Norton v. S. Utah Wilderness All*., 542 U.S. 55, 62-63 (2004)).  A claim under §

706(1) "can proceed only where … an agency failed to take a discrete agency

action that it is required to take."  *Norton*, 542 U.S. at 64.

**ARGUMENT**

**A. Rule 12(b)(1) motion to dismiss.**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek

dismissal of an action for lack of subject matter jurisdiction.  The subject matter

jurisdiction of a federal court presents a question of law.  *Kingman Reef Atoll*

*Investments v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2000).  Courts

presume lack of jurisdiction until the plaintiff proves otherwise.  *See Stock*

*West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Tucson*

*Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998) ("…a

suit against the United States must start from the … assumption that no relief is

available.").

In adjudicating a motion to dismiss for lack of jurisdiction, courts are not

limited to the pleadings, and may properly consider extrinsic evidence.  *See*

*Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000)

(citations and quotations omitted).  Where the court concludes that it lacks

jurisdiction, it must dismiss the action without reaching the merits of the

complaint.  *See High Country Resources v. F.E.R.C.*, 255 F.3d 741, 747 (9th Cir. 2001).

In addition to subject matter jurisdiction, a plaintiff suing the United States must also establish an applicable waiver of sovereign immunity.  It is well settled that the United States, as a sovereign, is immune from suit except to the extent of its express consent.  *Reed ex rel. Allen v. U.S. Dep't of the Interior*, 231 F.3d 501, 504 (9th Cir. 2000).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  The waiver of sovereign immunity must be "unequivocally expressed" in the text of the statute.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Thus, it is well established "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The question of whether an agency action is committed to agency discretion is analyzed under Federal Rule of Civil Procedure 12(b)(1).  *Samuels v. Fed. Hous. Fin. Agency*, 54 F. Supp. 3d 1328, 1338 (S.D. Fla. 2014). Whether agency inaction is subject to review under the APA is also a jurisdictional issue.  *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).

**1. Disputes concerning a federal interest in real property cannot be litigated under the APA.**

Inevitably, Plaintiffs' claims seek to preserve or establish the public's right to use certain trails accessing National Forest land.  "Public access" is frequently repeated throughout the complaint (*see* e.g., Doc. 1 at ¶¶ 1, 2, 5, 7, 8, 10, etc.), and is frankly disclosed as the entire *raison d'être* for Plaintiffs' organizations (*Id*. at ¶13).  The problem is that all of Plaintiffs' claims boil down to four historical access trails that cross private property.  *Id*. at ¶2. Plaintiffs' complaint with regard to all of these trails is that purportedly historical public access is being eroded or blocked by private landowners who dispute the existence of any legal access rights.  *Id*. at ¶¶2-10.  As stated in the complaint:

> …over the years, some local landowners and/or their agents have taken steps to obstruct Plaintiffs and other members of the public's ability to access and use the four trails. These efforts have recently intensified. Plaintiffs and members of the public are now confronted with locked gates and barbed wire on the trails. They also routinely encounter intimidating "private property," "no trespassing," and "no forest service access" signs at trailheads and along the four trails.

*Id*. ¶5.  In other words, Plaintiffs' claims are fundamentally grounded on disputes concerning a federal interest in real property, i.e., whether USFS possesses access easements across private property on the four trails.  This is fatal to Plaintiffs' complaint.

The exclusive means of litigating a federal interest in real property –
including a non-possessory use right like an easement – is the Quiet Title Act
(QTA).  28 U.S.C. § 2409a(a).  In the QTA, Congress consented, with certain
exceptions, to naming the United States as a party defendant in a civil action "to
adjudicate a disputed title to real property in which the United States claims an
interest."  28 U.S.C. § 2409a(a).  The Supreme Court held in *Block v. North
Dakota*, 461 U.S. 273, 286 (1983), that "Congress intended the QTA to provide
the <u>exclusive means</u> by which the adverse claimants could challenge the United
States' title to real property."  (Underlines added).  Thus, "when the United
States has an interest in . . . disputed property, the waiver of sovereign
immunity must be found, if at all, within the [QTA]."  *Leisnoi, Inc. v. United
States*, 170 F.3d 1188, 1191 (9th Cir. 1999) (citing *Alaska v. Babbitt*, 38 F.3d
1068, 1073 (9th Cir. 1994)).

In their complaint, Plaintiffs do not invoke the QTA.  Instead, Plaintiffs
rely exclusively on the APA to provide a grant of jurisdiction and waiver of
sovereign immunity.  Doc. 1 at ¶¶1, 14, 19, 20.  But the APA does not, and
cannot, apply to the federal interest in the four trails:

> The APA's waiver of sovereign immunity, however,
> contains several limitations.  By its own terms, § 702 does
> not apply to claims for "money damages" or claims
> "expressly or impliedly forbid[den]" by another statute
> granting consent to suit.  Moreover, only "[a]gency action
> made reviewable by statute and final agency action for

which there is no other adequate remedy in a court" are
subject to judicial review.

*Tuscon Airport Auth*., 136 F.3d at 645.  Because the QTA consents to judicial

review of claims involving a federal interest in real property, and explicitly

forbids review under any other statute, the APA cannot apply to the disputed

federal use right on the four trails.  As such, Plaintiffs cannot rely on the APA

to provide a basis for jurisdiction or a waiver of sovereign immunity.

To the extent it rests upon a disputed federal interest in real property,

Plaintiffs' complaint must be dismissed for lack of jurisdiction.

### 2. The APA does not authorize judicial review of USFS's decision not to enforce purported prescriptive easements.

Plaintiffs' claims fall into two APA groupings: On the west side trails,

Plaintiffs complain USFS has acted in an arbitrary and capricious manner in

reviewing and approving the Porcupine Lowline reroute.  *See*, e.g., Doc. 1 at

¶¶300-310 (First Cause of Action).  This reroute is the only legitimate "final

agency action" susceptible to review under APA §706(2)(A).  Every other

claim advanced by Plaintiffs attacks USFS's failure to act under APA §706(1).

As set forth below, Plaintiffs fail to satisfy the rigorous prerequisites for a

"failure to act" claim.

To be reviewable under the APA, an agency's action must be "final."

*See* 5 U.S.C. § 704; *Lujan*, 497 U.S. at 882.  To be considered final, the agency

action must (1) mark consummation of the agency's decision making process (i.e., not merely tentative or interlocutory); and (2) determine rights or obligations, or generate legal consequences. *Spear*, 520 U.S. at 177-78.  Here, the Porcupine Lowline reroute is the only USFS action that satisfies these criteria.  As Plaintiffs note, USFS is currently working cooperatively with private property owners to develop a comprehensive solution for public access on the east side of the Crazy Mountains, including on the East Trunk and Sweet Grass trails.  Doc. 1 at ¶ 287-288.  But those negotiations have so far yielded no definitive agency action: No decision making process has been consummated, and no legal rights or consequences have resulted.  There simply is no reroute or other alteration of the status quo on the east side trails to constitute "final agency action."

The real gravamen of Plaintiffs' Third, Fourth, and Fifth Causes of Action is that USFS failed to preserve existing public use rights, in violation of APA §706(1). *See* ¶¶ 322-363.  Concordantly, the Third Cause of Action claims USFS violated NFMA by **<u>not</u>** managing and maintaining "four National Forest System trails in the Crazy Mountains" where they cross private property for their "emphasized" uses. *Id.* at ¶¶330-31.  The Fourth Cause of Action claims USFS violated NFMA by **<u>not</u>** protecting "existing" access rights across private property on the same four trails. *Id.* ¶¶339, 343-345.  The Fifth Cause of

Action claims USFS violated NFMA when it **failed to** act "as promptly as feasible" to protect allegedly existing prescriptive access rights on the same four trails in the Crazy Mountains.  *Id.* at ¶¶350, 356, 358-59.

Indeed, every claim in the complaint not specifically tethered to the Porcupine Lowline reroute is actually challenging a failure to act, and accordingly must pass muster under APA §706(1).  Where a plaintiff seeks to compel agency action "unlawfully withheld or unreasonably delayed" under §706(1), plaintiff bears the burden of establishing that the action they seek is mandatory, discrete, ministerial, and "so clearly set forth that it could traditionally have been enforced through a writ of mandamus."  *Hells Canyon Pres. Council,* 593 F.3d at 932, citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62-63 (2004).  According to the Supreme Court, limiting judicial review to actions that are legally required "rules out judicial direction of even discrete agency action that is not demanded by law."  *Id.* at 65.

Here, Plaintiffs identify no mandatory, discrete, ministerial law setting forth a clearly prescribed duty capable of supporting mandamus.  NFMA – which is denominated as the basis for the Third, Fourth, and Fifth Causes of Action – contains no non-discretionary directive for USFS to do anything with access trails that cross private property, yet lack a recorded a use right.  *See*, e.g., 16 U.S.C. § 1609(a).  As noted in the United States preliminary injunction

11

response brief (Doc. 8 at 16-21), and below (§A(3)(a)-(e)), neither NFMA nor any of its implementing regulations apply to – let alone create involuntary public servitudes upon – private real property unburdened by any recorded use right.  USFS therefore has no non-discretionary duties on such routes.

Until Plaintiffs sustain their burden of identifying a law or regulation that imposes a legitimate APA §706(a) duty, all their "failure to act" claims must be dismissed.

### 3. Negotiation of USFS and public access across private property is committed to agency discretion.

The Supreme Court has established that a prosecutor's "decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion" and is presumptively committed to agency discretion and thus unreviewable under the APA.  *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citation omitted).  "[T]he decision of a prosecutor in the Executive Branch not to indict . . . has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'"  *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (quoting U.S. Const., art. II, § 3).

The Supreme Court in *Chaney* applied the principle of criminal prosecutorial discretion to civil administrative enforcement decisions and

determined that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Chaney*, 470 U.S. at 831; *see also Conservancy of Sw. Fla.*, 677 F.3d at 1084 (citing the Supreme Court's presumption in *Chaney* that "agency decisions to refuse enforcement" are committed to agency discretion by law) (internal quotation omitted).

Decisions not to take civil or criminal enforcement action are not reviewable in federal courts unless "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Chaney*, 470 U.S. at 832-33 (footnote omitted); *see Conservancy of Sw. Fla.*, 677 F.3d at 1085 (finding that neither the Endangered Species Act nor regulations cited by the plaintiffs provided a meaningful standard for which to subject the defendant administrative agency's denial of a rulemaking to judicial review).  Judicial review is not available when the statute under which the agency acts "'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion'—that is, where a court would have 'no law to apply.'"  *Id.* at 1078.

Here, private landowners have actively rejected the assertion that their property is traversed by historical public access routes, and have taken action to block public and agency access.  *See*, Doc. 1 at 50-56.  The Forest Service has

13

balanced numerous factors, including the available evidence, the expense and risk of litigation, and the availability of cooperative alternative access solutions, and has determined not to exercise affirmative enforcement authority, while at the same time preserving access to the public land in the Crazy Mountains. This discretionary determination is committed to the Forest Service's discretion and cannot be reviewed under the APA.

In the Third, Fourth, and Fifth Causes of Action, Plaintiffs claim the contrary, citing NFMA, the 1987 Gallatin Forest Plan, the 2006 Gallatin Travel Plan, the 2005 USFS travel management rule (70 Fed. Reg. 68264 (Nov. 9, 2005)), and USFS Manual Region 1 Supplement, §5460.3(9).  Doc. 1 at ¶¶322-363.[1]  Yet none of these provides "meaningful standards" for this Court to assess Plaintiffs' claims that USFS should have vindicated historical access routes.

In *Chaney*, the court analyzed *Dunlop v. Bachowski*, 421 U.S. 560 (1975)[2] as an example of a substantive statute that provided "law to apply" and

---

[1] Plaintiffs also cite 40 C.F.R. § 1505.3 (Doc. 1 ¶ 323), which appears to be in error.  Section 1505.3 concerns implementation of NEPA decisions, whereas ¶323 discusses NFMA and the Gallatin Forest Plan and Travel Plan.

[2] Overruled in part on other grounds by *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526 (1984).

thus sufficient enforcement guidelines to rebut agency discretion and the presumption of non-reviewability.  In *Dunlop*, the statute stated "[t]he Secretary [of Labor] *shall* investigate such complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he *shall* . . . bring a civil action." *Id*. at 833 (emphasis added).

Here, by contrast, none of the authorities cited by Plaintiffs requires USFS to vindicate public access rights via litigation, rather than negotiation. Plaintiffs cannot point to any mandatory provision, or to any statutory enforcement guidelines, to overcome the presumption that agency enforcement is committed to agency discretion.  *Chaney*, 470 U.S. at 833.

**(a) NFMA.**

NFMA provides no meaningful standards to guide affirmative agency enforcement of prescriptive access rights.  NFMA directs the USFS to develop Forest Plans for each unit of the National Forest System, and, once developed, requires USFS activities to be consistent with that plan. 16 U.S.C. § 1604(a), (i); *see also Stout v. U.S. Forest Serv.* 869 F. Supp 2d 1271, 1275-76 (D. Or. 2012).  Plaintiffs cite NFMA § 1604(i) (Doc. 1 at ¶323), but that section merely requires USFS activities, including "resource plans" and "other instruments for the use and occupancy," to be consistent with the Forest Plan.  This requires the Gallatin's Travel Plan to be consistent with its Forest Plan, but it does not

establish any standards for when the agency must sue to vindicate putative

prescriptive easement rights, rather than work cooperatively with property

owners.

**(b) Forest Plan.**

Similarly, the Forest Plan provisions Plaintiffs rely upon in the Third,

Fourth, and Fifth causes of action merely establish management goals and

objectives.  The Forest Plan contains broad forest-wide goals for various Forest

System trails, such as:

> 4. Provide additional public access to National Forest lands . . .
> 21. Coordinate with . . . private landowners.

Doc. 8-26 at 13-14.  None of these management goals sanction, let alone

establish, "enforcement guidelines" sufficient to overcome USFS discretion and

the presumption of non-reviewability.  *Stout*, 869 F. Supp. 2d at 1279 ("a Forest

Plan, is generally thought of as a policy document that does not bind particular

implementation decisions.").

Further, the trail reroute Plaintiffs contest is actually entirely consistent

with the Gallatin Plan.  The Forest Plan states, as a recreation objective, the

"[p]rovision of adequate public access to National Forest lands is of high

priority."  Doc. 8-26 at 14.  Under "Landownership," the Plan states:

"Exchange, donation, purchase, and easement authority will be used to meet

ownership adjustment needs," based upon and as "needed to respond to major

public issues, management concerns, or National Forest management

objectives." Doc. 8-26 at 37. Clearly, these amorphous terms accord USFS

abundant discretion in determining how best to fulfill access needs, especially

when working with private landowners. *Stout*, 869 F. Supp. 2d at 1279

(rejecting NFMA claim where Forest Plan provision "leaves a measure of

discretion to the Forest Service" and is therefore "unenforceable pursuant to §

706(1) of the APA").

**(c) Travel Plan.**

The Gallatin's Travel Plan (and the record of decision adopting the Plan)

build upon the Forest Plan by establishing use and maintenance standards for

various trails:

> This document…identifies and establishes opportunities for
> public recreation use and access…For each road and trail it
> specifies the types of uses that are appropriate including
> pleasure driving, high clearance and all-terrain vehicle use
> (ATVs), motorcycle use [, etc.]…It also describes seasonal
> restrictions that may apply….

Doc. 7-12 at 1. Nowhere does the Travel Plan (or record of decision) state that

affirmative litigation to establish purported prescriptive access rights is a

requirement or other established condition of the Travel Plan.

While the Travel Plan exhorts USFS to "protect existing access rights"

(Doc 7-12 at 14), it nowhere requires USFS to use affirmative civil litigation – a

costly, fractious, risky, and lengthy process – rather than cooperative

negotiation.  Instead, the Travel Plan, like the Forest Plan, leaves a measure of discretion to USFS in determining how to protect access rights.  *Stout*, 869 F. Supp. 2d at 1280 (discussing the "measure of discretion [in the Forest Plan and under NFMA] to the Forest Service in determining how to manage livestock").  Indeed, "protect existing access rights," is merely one of seven "guidelines" under the "Access" goal.  Doc. 7-12 at 2.  As the travel plan explains, "Guidelines are preferable or advisable limits…they are non-binding.  Future…activities can deviate from a guideline…."  *Id*.

An "objective" is "a measurable target" that advances USFS toward achieving a goal.  *Id*. at 7, 9-10, 21, 25.  In the Crazy Mountains, the "Access" goal for the East Crazies and Ibex area is to acquire easements across private land and "perfect trail access across private in-holdings."  *Id*.  This is exactly what the USFS is doing with the Porcupine-Ibex reroute, consistent with the Travel Plan.  *See* also Doc. 7-11 at 28 (Travel Plan Record of Decision).

**(d) Travel Rule.**

Plaintiffs next cite 36 C.F.R. §§ 212.55(d), 212.6(c), and 212.6(a) of the USFS travel management rule as purported authority requiring USFS to litigate prescriptive easements.  Doc. 1 at ¶¶ 337, 338, 350.  But none of these regulations actually embody such a requirement.  Plaintiffs say § 212.55(d) "require[s]" USFS to recognize "public access rights."  *Id*.  But § 212.55(d)

never discusses "public access rights."  Instead, under the title of "rights of access," it requires USFS to recognize "valid existing rights" held by third parties.  The preamble explains: "Some property owners also may possess reserved or outstanding rights-of-way or other rights providing access across NFS lands, which may or may not require a written authorization from the Forest Service.  Those rights must be recognized under § 212.55(d)."

Similarly, § 212.6 ("Ingress and egress") subsection (c) ("Others") merely states:

> Entering upon the National Forests and other lands
> administered by the Forest Service and use of existing
> National Forest System roads and trails shall be permitted
> for all proper and lawful purposes subject to compliance
> with rules and regulations governing the lands and the roads
> or trails to be used.

Nothing in this regulation requires USFS to sue landowners to vindicate purported prescriptive easement rights.  These provisions require USFS to acknowledge valid rights held by private landowners – rather than file suit to contest them.

Subsection 212.6(a) requires USFS to "obtain needed access" across adjacent private land "as promptly as is feasible."  But the mechanism of acquisition is not prescribed.  Moreover, the acquisition of needed access is precisely what the USFS is doing here, and proceeding via negotiation will definitively establish access in months – versus a civil enforcement action to

prosecute an uncertain prescriptive easement, which could take three or four years.  Thus, the negotiated resolution is undoubtedly more "prompt" than a civil enforcement action.

Plaintiffs' reliance on 36 C.F.R. §§ 212.50 through 212.57 (Doc. 1 at ¶324) is defective for similar reasons.  These regulations establish criteria for USFS to designate and manage motorized use on Forest System roads and trails.  Each regulation is predicated on the assumption USFS is dealing with a bona fide "National Forest System trail."  *Id*.  They do not address situations where no recorded use right sanctions USFS or public use.  They certainly do not envisage any kind of affirmative enforcement against private landowners whose interests are burdened by alleged trail easements.

**(e)  Regional Supplement.**

Finally, in the Fifth cause of action, Plaintiffs cite §5460.3(9) of the Region 1 Supplement to the Forest Service Manual and allege USFS is failing to resolve disputes as to the four trails "as soon as feasible."  Doc. 1 ¶¶352-363.  Yet §5460.3(9) identifies three levels through which "trail title questions" can be "solve[d]."  Included among the options is Level III(1), which specifies that the USFS "perfects title by: (1) acquiring road or trail easement deeds from the present landowners."  *Id*.  This is exactly what the USFS is trying to do here with the Porcupine-Ibex reroute.  While the Supplement provides various

options for perfecting title – including filing statements of interest – it does not require USFS to implement any particular method.  Thus, Plaintiffs cannot rely upon the Supplement as an enforcement guideline sufficient to overcome USFS discretion or support an APA §706(1) cause of action.

Plaintiffs cannot use the APA to require the agency to prosecute supposed easement rights.

### B. Rule 12(b)(6) motion to dismiss.

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) held that, when evaluating Rule 12(b)(6) motions, a court must determine whether a complaint alleges "enough facts to state a claim to relief that is plausible on its face," such that a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Thus, the Court imposed two requirements on a plaintiff: (i) that he plead facts and not legal conclusions and (ii) the facts alleged state a plausible claim on its face.  *Iqbal*, 556 U.S. at 678-679.

In reviewing a complaint on a 12(b)(6) motion, the district court should start by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  Next, if there are "well-pleaded factual allegations," the district court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.

At the motion to dismiss stage, the question of whether claims are time-barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6).  *Defs. of Wildlife v. Jewell*, 2015 WL 11182029, at *6 (D. Ariz. Sept. 30, 2015) (unpublished); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (abrogated on other grounds).  Dismissal under this standard is appropriate when "it is apparent from the face of the complaint that the claim is time-barred."  *Id.* (internal quotation omitted).

## 1. No authority supports Second cause of action; claim implausible given undisputed fact that trail location has changed and prescriptive easement is hypothetical.

In their second cause of action, Plaintiffs claim USFS arbitrarily and capriciously "relinquish[ed] the public's existing access rights or 'easement interest'" on the Porcupine Lowline Trail, as part of the larger decision to relocate the trail.  *Id.* at ¶¶ 320-21.  But Plaintiffs fail to identify any law USFS allegedly violated by the purported "relinquishment."  Indeed, the only citation in Plaintiffs' second cause of action is to APA §706.  *Id.* at ¶¶ 311-321.  Thus, there truly is "no law to apply" and Plaintiffs' second cause of action must be dismissed for failure to state a claim.  *Conservancy of Sw. Fla.*, 677 F.3d at 1078.  Indeed, this Court has already declined to address this argument "because the Plaintiffs cite no legal authority for it."  *See* Doc. 10 at 19.

Moreover, as noted in the United States' preliminary injunction brief, Plaintiffs fail to state a plausible claim for a public right of way on the Porcupine Lowline Trail.  Doc. 8 at 18-21.  Plaintiffs identify two tentative bases for this claim: Railroad grants and prescription.  Doc. 7 at 25-26.  The railroad grant claim is invalidated by the undisputed fact that the existence and location of the original railroad rights of way is unknown, while the location of the Porcupine Lowline Trail has changed over time.  Docs. 8-1; 8-38 at ¶3.  Thus, even though the railroad transferred its land subject to any then-existing public rights of way, any such right of way would not correspond to the current location of the Porcupine Lowline Trail.  Concordantly, the reroute project and decommissioning of parts of Porcupine Lowline do not "relinquish" the railroad grants.

The same facts contravene Plaintiffs' prescriptive easement claim: If the trail locations changed over time, each relocation reset the clock on the period of prescription.  *Leisz v. Avista Corp.*, 340 Mont. 294, 301 (2007).  Thus, Plaintiffs' allegations of historical use are irrelevant to the current trail.  Moreover, even if Plaintiffs' allegations are assumed to be true, they do not establish a prescriptive easement – they merely establish potential eligibility for USFS *to establish* a prescriptive easement.  *Cook v. Hartman*, 317 Mont. 343, 352 (2003) (alleged prescriptive easement merely an "inchoate servitude" until

established by court decree).  Plaintiffs' claims are therefore based on a

hypothetical future scenario where USFS has successfully established a

prescriptive easement through litigation.  Setting aside the intrinsic problems in

actually achieving such an outcome,[3] Plaintiffs cannot anchor their claims on

such speculation: "Federal courts may not… give opinions advising what the

law would be upon a hypothetical state of facts."  *Chafin v. Chafin*, 568 U.S.

165, 172 (2013).  Accordingly, Plaintiffs cannot state a claim anchored in the

speculation that USFS would institute and / or succeed in any prescriptive

easement litigation.[4]

Thus, even if the Court assumes the specific allegations in Plaintiffs'

complaint are true, such allegations fail to state a plausible claim that USFS

improperly relinquished public access to a valid existing use right on the

---

[3] For example, landowner signs in place since 2002 (Doc. 1 at ¶5; Doc. 8-38 at ¶5) and locked gates since 2009 (*Id*.; Doc. 8-38 at ¶7) which, under Montana law, tend to extinguish public prescriptive easements.  *Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*, 381 Mont. 389, 401 (2015); *Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found., Inc.*, 259 Mont. 279, 288 (1993); *Dome Mt. Ranch, LLC v. Park Cty.*, 307 Mont. 420, 427 (2001).

[4] Plaintiffs have not shown why they cannot vindicate such purported use rights on their own behalf.  Montana law recognizes the right of private organizations like Plaintiffs' to pursue prescriptive easements across private property on behalf of the public.  *See*, e.g., *Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found., Inc.*, 259 Mont. 279, 282 (1993).

Porcupine Lowline trail.  As such, Plaintiffs' Second Cause of Action must be dismissed.

### 2.  Plaintiffs' First Cause of Action is time-barred.

Plaintiffs allege that USFS violated NEPA in connection with two agency actions: The 2006 Travel Plan EIS and the 2009 Road & Trails EA.  Doc. 1 at 97-98.  Plaintiffs' allegations fail because USFS did engage in adequate NEPA analyses regarding the trail reroute in its 2006 and 2009 environmental documents.  *See* Doc. 8 at 7-16; Doc. 10 at 12-17.  As this Court recognized in its July 29, 2019 Order, the Road & Trails EA analyzed impacts on "Biodiversity, Fisheries, General Wildlife, Grizzly Bear, Invasive Weeds, Lynx, Migratory Birds, Water Quality, Wolverine, Rare Plants, Sensitive Wildlife Species, and more."  Doc. 10 at 17.  The EA also considered a no action alternative and explained other contemplated alternatives, as required by NEPA. *Id.*

But the Court need not even consider the merits of Plaintiffs NEPA claim, because those claims are time-barred.  NEPA claims are governed by the statute of limitations generally applicable to suits seeking review of agency action, 28 U.S.C. § 2401(a).  Under this statute, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  USFS's 2006 decision approving

the Travel Plan and the 2009 Road & Trails EA preceded Plaintiffs' June 10, 2019 Complaint by far more than six years (more like ten years).  Plaintiffs' NEPA claims were time-barred as of 2012 and 2015, respectively. Accordingly, Plaintiffs' NEPA claims must be dismissed.  *Hells Canyon Pres. Council*, 593 F.3d at 930-32.

### 3. Plaintiffs' NEPA challenge is statutorily barred for failure to exhaust.

Plaintiffs must also exhaust available administrative remedies before seeking judicial review of any decision by an agency of the Department of Agriculture.  7 U.S.C. § 6912(e).  Plaintiffs here allege that the 2009 Road & Trails EA is deficient under NEPA because it does not analyze the direct, indirect, and cumulative effects of the Porcupine Ibex trail project or analyze a reasonable range of alternatives.  Doc. 1 at #308.  But Plaintiffs have not satisfied the exhaustion requirement because they never raised these concerns when the 2009 DN was issued.  Indeed, USFS received only one comment relevant to the Crazies – pertaining to impacts from stream crossings – which USFS fully addressed in the decision document.  Doc. 8-3 at 42; Doc. 10 at 16.

To seek judicial review, plaintiffs "generally must 'structure their participation so that it alerts the agency to the parties' position and contentions, in order to allow the agency to give the issue meaningful consideration.'"

*Forest Guardians v. U.S. Forest Serv.*, 495 F.3d 1162, 1170 (10th Cir. 2007)

(internal quotation marks omitted) (quoting *Dep't of Transp. v. Pub. Citizen*,

541 U.S. 752, 764 (2004)).  "Claims not properly raised before an agency are

waived, unless the problems underlying the claim are obvious or otherwise

brought to the agency's attention."  *Id.* (citation omitted).  The exhaustion

requirement, in part, "ensure[s] that the agency possessed of the most expertise

in an area be given first shot at resolving a claimant's difficulties."  *Id.*

Here, Plaintiffs did not present their NEPA concerns to USFS during the

2008-2009 notice, comment, and NEPA analysis process on the Roads & Trails

EA.  Since then, for ten years, USFS has been implementing the 2009 decision

with no judicial challenges.  Having failed to exhaust administrative remedies

for their NEPA claims (claims that reach back to the 2009 DN), Plaintiffs

cannot now seek judicial review of those claims.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that

Plaintiffs' complaint be dismissed for lack of jurisdiction and failure to state a

claim.

DATED this 19th day of August, 2019.

KURT G. ALME
United States Attorney


<u>/s/ MARK STEGER SMITH</u>
Assistant U.S. Attorney
Attorney for Federal Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 5,981 words, excluding the caption and certificates of service and compliance.

**DATED** this 19th day of August, 2019.


/s/ MARK STEGER SMITH
Assistant U.S. Attorney
Attorney for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2019, a copy of the foregoing document was served on the following person by the following means.

    _1-3_  CM/ECF
    _____  Hand Delivery
    _____  U.S. Mail
    _____  Overnight Delivery Service
    _____  Fax
    _____  E-Mail

1.  Clerk of Court

2.  Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 324-8011 – phone
bishop@westernlaw.org
Attorney for Plaintiffs

3.  Michael A. Kauffman
Patricia Klanke
DRAKE LAW FIRM, P.C.
111 North Last Chance Gulch
Suite 3J, Arcade Building
Helena, Montana 59601
michael@drakemt.com
patricia@drakemt.com
Attorneys for Plaintiffs

**/s/ MARK STEGER SMITH**
**Assistant U.S. Attorney**
**Attorney for Federal Defendants**