United States     Forest
Department of     Service
Agriculture

USDA Forest Service<br>BOZEMAN, MT 59715<br>JUL 26 1994

Reply To: 5460        Date: JUL 2 6 1994

Subject: Rights by Prescription / Protecting United States Interest

To: Forest Supervisors

*See page 2 (bottom): Statements of Interest*

After Mark Lodine's interesting presentation on prescriptive rights at the April Regional Rights-of-Way session, Gary Johnson of my staff met with him, Assistant U.S. Attorney Lorraine Gallinger, and Sandy Becker of the U.S. Attorney's Office to gain a better understanding of this process. A summary of their conversation follows:

PRESCRIPTIVE EASEMENTS:

Although the United States (U.S.) would sue in federal court to quiet title to property, the law which we would apply to decide the merits of the case is real property rights of the appropriate state.

Before considering the elements in establishing a prescriptive right, one must look to the appropriate state codes; i.e., Montana Code Annotated, Part 4 of Title 70, sets out the ability of any party to acquire any property under adverse possession.

The U.S. would pursue adverse possession similiar to a private party rather than under public rights. If successful in its claim, the US could then control and manage the right-of-way.

Because the US would pursue under private rights, the Forest Service may be able to claim rights under recreational use. A claim could be made that this is a major activity on National Forest lands.

To acquire a right by prescription, state codes require that certain elements must be proven. In Montana, use must be:

| | |
|---|---|
| Open | Continuous |
| Notorious | Uninterrupted |
| Exclusive | For a Statutory Period of Time |
| Adverse | |

For definitions of these elements, please review the material Mark handed out at the rights-of-way session. Each Forest should have at least one copy of the

material. The definitions are not how you or I would interpret, but how the various courts have ruled.

The statutory period must be kept in mind. In general, for Idaho and Montana it is 5 years, 10 years for North Dakota, and 20 years for South Dakota.

If the Court decides that a right has been established, it becomes a property right to be held until relinquished by the U.S.

The U.S. would acquire a right to the extent of historic use only. Therefore, it is important to establish what was the extent of "historic use". Maintenance records are a must in proving our case.

The location of the facility (road/trail) is important. It must remain the same but could move if acquiescence by the landowner could be shown.

| Advantages of: | Prescriptive Rights | - | Condemnation |
|---|---|---|---|
| | No Compensation. | | Recordable document. |
| | Shorter time period to pursue rights. | | Right-of-way set out in the easement. |

PROTECTION OF RIGHTS:

The interests of the United States in the road and trail system must be protected. I am certain that each Forest has roads/trails where access may be blocked by some means.

If a Forest discovers that use (and that use can be supported by historic evidence) of a road/trail is being challenged, the landowner must be contacted, informing them that the US claims an interest in the facility and that they are in trespass. You should also require removal of any obstacle within a reasonable time period. If the landowner refuses to comply, the Forest should remove the obstacle and inform the owner that you are protecting the interest of the United States in the system. If the landowner is persistent in blocking access, legal action must be taken against the party. For example:

If a right-of-way is fenced, notify the landowners to remove the fence. If they refuse, remove the fence and notify the landowners. If they persist in blocking access, legal action must be taken against the owners.

If a road is constructed across a trail, notify the landowners and require that the trail be reestablished. If they refuse, bring suit against the landowners.

In all cases, the statute of limitation for trespass must be considered, as the statutory period begins when Forest personnel became aware of the trespass.

TO PROTECT THE INTEREST OF THE UNITED STATES, YOU SHOULD GIVE SERIOUS CONSIDERATION TO FILING A STATEMENT OF INTEREST ON ALL TRAILS AND ROADS WHERE

THE FOREST SERVIC   GS NOT HAVE RECORDED EASEMENT   'T EVIDENCE INDICATES THAT A RIGHT CAN BE ESTABLISHED.

    To start the process, the Forest must inventory their road/trail system.

    Criteria for filing must be developed; i.e. documented historic use, no documented historic use but could obtain affidavits, and possible ownership change. Based on the criteria, priorities can be set for filing the statement of interests.

    Any statement of interest proposals must be reviewed by OGC before filing.

Hopefully this information will be helpful in pursuing your rights-of-way cases. Mark and Lorraine are available to assist in determining "historic use". If you have any questions, feel free to contact Gary Johnson at 329-3600.

/s/ CHARLES E. WASSINGER
CHARLES E. WASSINGER
Director, Lands and Minerals

cc: OGC
    Asst. US Attorney (Billings)
    RO-WRHP
    RO ENG

| United States | | Region 1 | Federal Building |
|---|---|---|---|
| Department of | Forest Service | | P.O. Box 7669 |
| Agriculture | | | Missoula, MT 59807 |

File Code: 5460
Date: MAR 0 6 1996

*Bob, Gordon, Gina GG.*
*Return to: Gina*
*SOI file*

Senator Conrad Burns
10 East Babcock, #106
Bozeman, MT 59715

Dear Senator Burns:

This letter is in response to your inquiry of February 15, regarding the filing of "Statements of Interest" in county courthouses.

Some of the National Forest System roads and most of the National Forest System trails in Montana were established in the early 1900's. Since that time, these roads and trails have been maintained, signed, managed and used for Forest Service management purposes and public recreational activities. Forest visitor maps have for years shown these roads and trails open for use, subject to Forest Service travel management regulations.

A portion of this road and trail system crosses intermingled private lands. In many cases, these roads and trails afford the only access to adjoining public lands. However, only a small portion of the roads and relatively few of the trails crossing private lands are covered by recorded easements. For those National Forest system roads and trails where the Forest Service does not have recorded easements, it is our position that the United States has an easement interest due to historic public and administrative use and maintenance.

During the past several years, various actions have been taken by landowners to deter continued use of these roads and trails, including signing or physically closing those segments across private lands. The Forest Service has adopted a policy of filing in the appropriate county courthouse a "Statement of Interest" and map showing the road or trail location in situations where continued use is threatened, or we believe continued use may be threatened. The Statement of Interest is designed to provide a notice of public record that the United States does claim an interest in those National Forest system roads and trails across the private lands.

Under current Regional policy, Forest Supervisors may file Statements of Interest if such action can be supported by adequate historical evidence. Prior to filing a Statement of Interest, Forest Supervisors must evaluate status evidence to determine historic United States investment, management, maintenance, and use of the facility. Sources of evidence may include retired Forest Service or other agency employees, local citizens who have knowledge of the facility, historians, maps, USGS plats/records, Forest Service records on capital investment expenditures and maintenance records, and county records.



Forest Supervisors are encouraged to coordinate with the Regional Office Lands staff and Office of General Counsel before filing.

Since 1993, three "Statements of Interest" have been filed: two by the Gallatin Forest Supervisor and one by the Deerlodge Forest Supervisor. The two Statements in the Gallatin Forest were terminated after the Forest Supervisor received assurance that the United States interest would be maintained. In the Deerlodge case, the interest of the United States is currently being litigated.

I trust this letter provides the information you requested. Please feel free to contact us if you have further questions on this matter.

Sincerely,

HAL SALWASSER
Regional Forester



# Briefing Paper

United States
Department of Agriculture

Gallatin National Forest
P.O. Box 130
Bozeman, Montana 59771

April 2000

## ACCESS TO NATIONAL FOREST LANDS

**Purpose and Need:** Lack of reasonable legal access to National Forest System (NFS) lands results from historic land ownership patterns (ie., private lands in the valleys, public lands in the mountains, intermingled ownership from railroad grants, homestead acts, and mining patents), and more recently from changes in private land ownership and changing attitudes toward public access through private lands.

Longstanding existing access facilities (roads and trails) that have historically provided public access to NFS lands are being closed by private landowners at an increasing rate. In some situations, local county and state road agencies have been reluctant to defend the public status of many historic roads.

Nationally, it is estimated that 17.3 million acres, or approximately 10 percent, of all NFS lands have no legal right of public access. The access problem is most acute in the West. With growing emphasis on recreation on public lands, and fewer opportunities on the private lands, many individuals and interest groups want the Forest Service to provide more dispersed access to public lands and to protect the historic access routes. There is also considerable public resentment over the issue of exclusive use, where adjoining landowners and/or outfitters may enjoy private access to the Forest, however no legal access exists for the general public.

**Policy and Objectives:** Longstanding Forest Service policy is to acquire and maintain permanent road and trail rights-of-way (access easements) to assure the protection, administration and use of the NFS lands and resources. On the Gallatin National Forest, access is a key issue. The policy for the land adjustment program (exhange and purchase) is to acquire key wildlife habitat and recreation lands, and to improve legal access and management effectiveness through land acquisition.

**Methods to Acquire and Protect Access:** The primary methods used by the Forest Service to acquire and protect access to NFS lands are land adjustment (land exchange and purchase), cooperative or reciprocal access arrangements, direct negotiation,

establishing existing rights through negotiation or legal action, and condemnation. These methods are further described in **enclosure #1** to this briefing paper.

**Gallatin National Forest Situation:** Access was the third most important issue identified in the development of the Gallatin Forest Plan (1987) based on public comments received at that time. Public access to the National Forest remains an important public concern for many people today, particularly for recreation users.

The Gallatin Forest Plan identified forty six (46) locations where public access to the Forest boundary was inadequate, involving about 21% of the Forest land base. In addition, hundreds of situations exist within the Forest where access across private ownership on existing system trails and roads is not secure because no recorded easements exist. Private land within and adjacent to this Forest continues to be sold, and often subdivided, by owners who may not support or recognize the historic public access through their lands. As a result, numerous system trails on private land are gradually being lost or deteriorated through subdivision, closure or obliteration.

**Progress Since the Forest Plan:** Since the Forest Plan went into effect in 1987, the Forest Service has made considerable progress in securing legal access rights and defending historic access routes. Seventeen (17) access corridors have been secured. Due to land consolidation and changes in management needs, five other routes are no longer needed. Today, some twenty-four (24) additional access routes are needed to the Forest boundary to properly manage the NFS lands. Areas of the Forest most in need of improved access include portions of the Crazy Mountains, Paradise Valley, Cinnabar/Tom Miner Basin, north Bridgers and north Madison.

The Forest's land purchase and exchange programs have been very effective in resolving and securing legal access to existing roads and trails within the Forest.

The recent purchases which significantly improve Forest access are:
   * 71 Ranch (Galt) lands, west side of the Crazy Mountains,
   * OTO Ranch, Dome Mountain and other inholdings which were part of the
       Northern Yellowstone Elk Project,
   * Porcupine and South Cottonwood ( Plum Creek and BSL lands),
   * Taylor Fork/Buck Creek (BSL lands) and
   * Royal Teton Ranch and the North Dry Creek Section 17 (C.U.T. lands).

Recent and pending exchanges which significantly improve Forest access include:
   * South Cottonwood (Bartosch)
   * Gallatin Range Consolidation & Protection Act or "Gallatin I" (1993)
   * Gallatin Land Consolidation or "Gallatin II", (1999)
   * Royal Teton Ranch (pending)
   * Wapiti (pending)
   * Eightmile/West Pine (pending)

**For more information:** contact Bob Dennee, Forest Lands Staff, (406) 587-6914.

March 2000

# Enclosure #1
# Gallatin National Forest
# **Methods** to Secure and Protect Access Rights

---

## 1. Land Exchange:

For the Gallatin NF, land exchange has been the single most important tool used to secure public access rights to NFS lands since the Forest Plan was adopted in 1987. Potential exchanges are carefully designed to improve access to NFS lands, and also to accomodate private access needs. The exchange agreement is negotiated and developed to include acquisition of key land parcels, and easements for existing roads and/or trails across the proponent's land which provide access to NFS land.

Forest priority is given to those exchange proposals which clearly enhance access and improve long-term management of NFS lands.   Exchange proposals which diminish public access are not considered by this Forest. Some good examples of exchanges which, by design, improve or protect access to NFS land follow:

* South Cottonwood (Bartosch) Exchange
* Gallatin I Exchange (BSL)
* Gallatin II Exchange (BSL)
* RTR Exchange (pending)
* Wapiti Exchange (pending)
* Eightmile/West Pine Exchange (pending)
* Weber/Bush Small Tracts Act Interchange
* Troy Creek Exchange

## 2. Land Purchase:

Direct purchase of private (mostly checkerboard) lands from willing owners within the Forest is a very important tool used to secure public access. Most purchases are designed to protect critical wildlife and fish habitat, to acquire wilderness inholdings, and to enhance public access. Since the Forest Plan was adopted, this Forest has purchased over 36,000 acres of private inholdings. The land purchases on this Forest which most significantly improve and/or protect access rights to NFS lands are:

* Galt (71 Ranch), west side of Crazy Mountains
* Northern Yellowstone Elk Project (OTO Ranch, 8 other purchases
* Porcupine and South Cottonwood (Plum Creek and BSL)
* Taylor Fork (BSL), purchased 8 sections as part of GLC Act
* North Dry Creek Section 17 and Road (Church Universal)
* Royal Teton Ranch (Phase I and II) Fee Purchases

## 3. Reciprocal Access Agreements:

The Gallatin NF makes effective use of cooperative agreements with other public agencies and reciprocal access provisions with intermingled private landowners. The basic principal here is that since both "owners" often need legal access to their respective lands, it may be mutually beneficial to exchange reciprocal access rights.

From the 1950s to the 1980s, this principal was applied in the **FRTA cost-share road** program with BN and PCTC. Several road easements to NFS land in the Bridgers and Gallatin Range were secured under these agreements (ie., Fairy Lake, Jackson, Stone, Olson and Willow Creek Roads in the Bridgers, and Hyalite, Rock Creek and Little Bear Roads in the Gallatin). Although the cost-share program no longer exists on this Forest, the easements remain in effect and provide vital access today.

An important current use of this principal is **"reciprocity"**, as authorized by the Federal Land Policy and Management Act of 1976 (FLPMA) and 36 CFR 251.63. The Forest Service may condition requests for access (typically a road) across NFS lands with a provision that the landowner grant reciprocal road or trail access to the U.S. across their private land. Recent uses of reciprocity on this Forest include:
- Lightning Fork Trail, Taylor Fork - Trapper's Cabin Ranch.
- Pole Gulch Admin. Road Access Agreement - Diamond B Ranch.
- Taylor Fork Roads, Reciprocal Access Agreement - BSL.
- Horsethief Mtn. Trail # 523 - Morgan Ranch.
- L-P Timber Road Use Permit, Taylor Fork.

Various **cooperative agreements** also exist between the public land agencies (federal, state and local) to facilitate the exchange of rights-of-way across intermingled public lands. Although used seldomly, the Forest has secured some important road easements from the City of Bozeman (now managed as trails) and a trail easement from the State in Sypes Canyon on the west-side Bridgers. The Forest is currently seeking a road easement across two sections of State land in North Dry Creek south of Livingston.

## 4. Direct Negotiations with Landowners to Secure Easements:

This Forest has effectively negotiated with landowners specifically to obtain legal access rights for many years, and has secured several permanent easements by purchase or donation. In recent years, the Forest has placed more emphasis on land acquisition and reciprocal agreements to enhance public access, and less emphasis on direct negotiation soley to secure access. In general, neighboring landowners were often more willing to consider granting public access in the past than they are today.

Some important examples of negotiated access rights on this Forest follow:
- * Jackson, Skunk, Stone Creek and Olson Creek Roads - Bangtails
- * Truman Gulch Road - west side Bridger Mountains
- * Little Bear Roads - northern Gallatin Range
- * West Pine Road - west side Yellowstone Valley
- * Goose Creek Road (4 landowners) - west side Yellowstone Valley
- * Beehive Basin Road, Parking and Trail - Big Sky, Spanish Peaks
- * South Cottonwood Trail (negotiations evolved into land exchange)

**5. Establish Existing or Historic Rights Through Negotiation or Legal Action:**

Although used less frequently nationwide, this approach is critical and effective in certain situations. On the Gallatin NF, this method is applied where it is believed that an historic public access route <u>exists</u> to NFS lands, but the route is contested or closed by a landowner. The Forest Service consults with the USDA Office of General Counsel, and works cooperatively with local counties and with public groups to try to resolve these situations. The counties or public groups may take the lead in some cases. The goal typically is either (a) to <u>establish</u> (prove through negotiation or legal means) that access rights exist, or (b) to <u>defend</u> the public rights of access on existing routes, where contested by a landowner. Careful and extensive research and compilation of records is often involved. Each case is different and must stand on its own merits. The process often takes several years and substantial efforts to resolve. Some examples where this approach has secured or defended legal access are:

* **Little Mission Road**, established, through settlement to litigation, as a Park County Road through 63 Ranch land to the Forest boundary.
* **Leverich Canyon Road**, established by court ruling as a "public" road to access NFS lands south of Bozeman.
* **Donahue Trail**, obtained permanent easements from Point of Rocks Ranch, through of years of effort to "quiet title" (prove NFS trail access rights exist).
* **Cherry Creek Road**. A settlement to litigation between landowners, County and PLAAI established a public road for the next 10 years.

**6. Condemnation:** In the past, several important access routes to the Forest boundary were acquired through federal condemnation authority. In each situation, just compensation is paid to the landowner(s). Condemnation remains a viable tool today, but has not been used since the Forest Plan went into effect. It is considered only when all other options have been exhausted. Some examples where condemnation has been used to acquire access rights on this Forest are:
- * Suce Creek Road, east side Yellowstone Valley
- * Felix Canyon Road, west side Bridger Mountains
- * Sheep Creek and Miles Creek Roads, Madison Range south of Quake Lake

-3-

 **Briefing Paper**

United States
Department of Agriculture

Gallatin National Forest
P.O. Box 130
Bozeman, Montana 59771

August 2002

## National Forest System Trails across Private Land

**Purpose and Need:** Many of the long standing National Forest System (NFS) **trail** segments that cross private lands lack recorded easements. In other words, rights to most existing trail segments across private lands have not been "perfected" by acquiring written (deeded) easements, or through legal (adjudicative) procedures. In some cases, however, trail easements have been acquired and recorded. And in a few instances, rights have been perfected through a court ruling that NFS trails across private lands are in fact public trails.

This paper summarizes the current situation on the Gallatin NF, and Forest Service direction and policy regarding existing NFS trails that cross private lands.

On the Gallatin NF, our system of trails crosses intermingled public and private lands throughout much of the Forest. This situation results from historic land ownership patterns, ie. private lands in the valleys, public lands in the mountains, the checkerboard land grants to railroads, homestead acts, and mining patents.

Most of the NFS trails on this Forest were constructed in the 1920's and 30's. Over the years, these trails have been maintained and signed by the Forest Service. The trails have been used by the public for recreation, and also by the agency, our permittees and contractors, for management purposes for decades. Forest Visitor Maps have displayed the NFS trail system across intermingled lands, with trail numbers and any Travel Management restrictions. A variety of other historic and current National Forest, BLM, USGS and GLO maps also display the system of trails across intermingled lands.

The growing demand for dispersed recreation on public lands, and the changes and trends in private landownership, have brought considerable attention to the trails issue on this Forest. At an increasing rate, landowners are questioning the status of trails across private land. Private land within and adjacent to this Forest continues to be sold. New owners may or may not recognize the existing public access through their lands. Some trails on private land are being lost through subdivision, closure or obliteration.

**As a result, it is critical for the Gallatin NF to continue to have a strong and consistent policy and presence in: (a) signing and maintaining our trail system across private lands; (b) defending historic trail access rights if challenged; and (c) perfecting trail access rights across private lands whenever that opportunity exists.**

1

**Gallatin National Forest Situation:**  This Forest has made considerable progress over the past 20+ years in addressing the trail access issue. Numerous (perhaps 50) trail easements have been acquired from landowners by various means available to the agency.  The Forest's land purchase and exchange programs, and reciprocal access agreements, have been particularly effective in recent years in securing legal access to existing trails.  Since 1989, over 120,000 acres of private land inholdings, containing over 70 miles of existing system trails, have been consolidated into public ownership.

Today, our system of NFS trails consists of about 2,200 miles, excluding winter use trails.  Despite the substantal progress made in consolidating lands, an estimated 200 to 250 miles of the Forest's trail system cross private and other non-federal land.  And despite the numerous trail easements now of record, **the Forest Service has not perfected easement rights for the majority of NFS trail segments on private lands.**  This situation occurs throughout most of the Forest, but is most prevalent in the Crazy Mountains, Paradise Valley, North Bridgers, Cinnabar/Tom Miner Basin, and north Madison, where most of the trails across intermingled private lands remain.

Two important local trail access cases directly affect the management of unadjudicated Gallatin NF trails across private lands today.  A synopsis follows:

(1) **Trail Creek litigation.**  In the early 1980's, new owners of the Windy Waters Resort attempted to close the Trail Creek trail across ranch lands.  This trail has been in existence for many years.  It extends from Ennis Lake up to Cowboy's Heaven and Cherry Creek on the B-D NF and Gallatin NF (Bozeman RD).  It has been signed and maintained by the Forest Service.  Sportsman and access groups filed suit to keep this trail open, citing state prescriptive rights law.  The court ruled that Trail Creek trail is in fact a Forest Service trail open for public use across private lands.

(2) **Donahue Trail.**  In this mid to late 1980s case, the new landowners of Point of Rocks Ranch threatened to close this historic trail system on the Livingston District.  Negotiations with the owners to re-open the trails were not successful.  The Gallatin NF, OGC and DOJ then compiled information about historic use and maintenance, and developed a legal position asserting that Donahue Trail was in fact a system trail across private lands.  As DOJ prepared to file a complaint in federal court, the landowners conceded and granted permanent trail easements for this trail system.

**Direction and Policy.**  National and Forest direction (FLPMA, FSM 5460, and Gallatin Forest Plan) is to acquire perpetual easements for all NFS roads and trails across non-federal lands.  Deeded easements give the Forest Service management, jurisdiction and maintenance rights.  We typically acquire twenty (20) foot wide trail easements.  We strive to acquire all rights needed to manage the trail in the future, without restrictions, regardless of our current travel management plans.  Easement language must follow the format approved by OGC.  Any deviations require OGC approval.  A formal right-of-way survey and exhibit (map) is required to record an easement.

2

Under FLPMA and FSM 5460 direction, the Forest Service uses a variety of methods to acquire and protect road and trail access: negotiate to acquire easements by purchase or donation, land exchange and purchase, cooperative and reciprocal access agreements, establish existing rights through adjudication, and as a last resort, condemnation.

**In situations where an existing NFS trail crosses private lands, and no deeded easements exist, the Forest Service position is as follows:**

> *The United States has acquired a right-of-way for the trail through development, maintenance and continuous use of the trail. As a matter of law, the Forest Service believes that there is a public access easement for the trail. The Forest Service is a beneficiary of this public right of access, will continue its efforts to defend the public's right of access.*

**In situations where an existing NFS trail crosses private lands, and no deeded easements exist, it is very important for the Forest and District to:**

**(1) Protect and maintain historic evidence, including trail blazes, signs, maps, photos and maintenance records,**

**(2) Maintain and sign the trail on a regular basis, and keep records and photos of this maintenance, and**

**(3) Take prompt action in the event that landowners threaten or take action to close or obliterate the trail.**

<u>**Statements of Interest**</u>

Current policy (R-1 Supplement 5400-93-2, 7/1/93, 5460.2 - Policy) provides direction for filing "**Statements of Interest**" in the appropriate county, in situations where continued use of a historical access route across private land is or may be threatened. Statements of Interest are designed to provide **constructive notice** in the public record that the United States, on behalf of the public, claims an interest in a road or trail facility.

On the Gallatin NF, Statements of Interest were filed in the early 1990s on the extensive system of trails across Plum Creek (later sold to BSL) lands, across the other private lands in the Taylor Fork area, and in certain other areas. We have not filed Statements of Interest on most other NFS trails on this Forest, but this remains a viable tool.

Filing an SOI must be supported by evidence adequate to document the claim of interest and must be coordinated with RO Lands and OGC. We need to inform the landowner of our intentions to file an SOI. When filed, landowners need to be notified by certified letter, and provided a copy of the recorded SOI. A sample SOI is attached.

###

## STATEMENT OF INTEREST

The **UNITED STATES OF AMERICA** hereby asserts that it has and claims **EASEMENTS** for the **NATIONAL FOREST TRAILS** over and across the real property described below, located in **Gallatin County, State of Montana**.

The purpose of this statement is to:

**1.Affirm** that the **UNITED STATES OF AMERICA** does claim **EASEMENTS** under the jurisdiction of the Forest Service, and

**2.Establish** that said **EASEMENTS** for **National Forest Trails** traverse the following described real property, as shown on **EXHIBIT A** attached hereto and made a part hereof:

**Township 8 South, Range 3 East, P.M., Gallatin County, Montana:**

CINNAMON-BUCK TRAIL N0. 6:
Section 24:  W1/2 0.6 mile

MEADOW CREEK-ALBINO LAKE TRAIL NO. 33:
Section 24:  W1/2 0.6 mile

For additional information, contact the Forest Supervisor, Gallatin National Forest, Federal Building, P.O. Box 130, Bozeman, MT 59771. Phone (406) 587-6701.

**Dated this            day of            **

UNITED STATES OF AMERICA

By: _____

Forest Supervisor
Gallatin National Forest
USDA - Forest Service

4