**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 2nd Avenue North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4667**
**Fax: (406) 657-6058**
**Email: mark.smith3@usdoj.gov**

**JOHN M. NEWMAN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 829-3336**
**Fax: (406) 542-1476**
**Email: john.newman@usdoj.gov**

**Attorneys for Federal Defendants**
**United States of America**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **FRIENDS OF THE CRAZY MOUNTAINS, a public land organization; MONTANA CHAPTER BACKCOUNTRY HUNTERS AND ANGLERS, a non-profit organization; ENHANCING MONTANA'S WILDLIFE AND HABITAT, a public outreach organization; SKYLINE SPORTSMEN'S ASSOCIATION, a non-profit organization,**<br><br>**Plaintiffs,** | **CV 19-66-BLG-SPW-TJC**<br><br><br>**UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO COMPLETE THE RECORD, STRIKE POST-DECISIONAL DOCUMENTS, AND STAY BRIEFING** |

**vs.**

**MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest; LEANNE MARTEN, in her official capacity as Regional Forester, Region One, for the U.S. Forest Service; VICKI CHRISTIANSEN, in her official capacity as chief of the U.S. Forest Service; THE UNITED STATES FOREST SERVICE, a federal agency; THE UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department,**

**Federal Defendants.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................iii

EXHIBIT LIST .......................................................................... vii

INTRODUCTION ....................................................................1

STANDARD OF REVIEW ........................................................2

BACKGROUND ....................................................................4

ARGUMENT ........................................................................7

    I.     Plaintiffs' motion is unnecessary, wastes judicial resources........................................................................7

          A.    USFS seeks to exclude nothing. ............................7

          B.    Specifically identified documents already added and removed.......................................................10

    II.    Plaintiffs fail to show by clear evidence improper exclusion or inclusion of record documents. .................11

          A.    Gallatin travel plan documents. ...........................12

          B.    Communications regarding the Ibex easement donation..............................................................13

          C.    Communications regarding the two eastside trails...............................................................15

          D.    Communications with the Crazy Mountain Working Group and others. .................................18

          E.    Railroad deeds to private landowners..................19

          F.    Specialist reports confirm environmental effects remain as analyzed...........................................19

    III.   Deliberative documents are not part of administrative record............................................................................20

i

A.   No "deliberative" documents regarding east side trails. .............................................................20

B.   No clear evidence of "deliberative" documents. ................21

C.   "Deliberative" documents are not part of the record. .............................................................22

IV.   A stay is unnecessary and will further waste time and resources; Plaintiffs' motion violates the scheduling order. .............................................................26

CONCLUSION .................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Alaska Dep't of Envtl. Conservation v. EPA*,
    540 U.S. 461 (2004)........................................................................17

*ASSE Int'l v. Kerry*,
    No. SACV1400534CJCJPRX, 2018 WL 3326687 ................................ 23, 25

*Bar MK Ranches v. Yuetter*,
    994 F.2d 735 (10th Cir. 1993) ...................................................4, 11

*Carlsson v. U.S. Citizenship & Immigration Servs.*,
    No. 2:12-cv-7893- CAS(AGRx), 2015 WL 1467174 n.5 (C.D. Cal. Mar. 23,
    2015) ................................................................................25

*Checkosky v. SEC*,
    23 F.3d 452 (D.C. Cir. 1994)..........................................................24

*Citizens to Pres. Overton Park v. Volpe*,
    401 U.S. 402 (1971)....................................................................3

*City of Duluth v. Jewell*,
    968 F. Supp. 2d 281 (D.D.C. 2013)................................................4, 14

*Cook Inletkeeper v. EPA*,
    400 F. App'x 239 (9th Cir. 2010) ....................................................24

*Ctr. for Biological Diversity v. Zinke*,
    No. 3:18-CV-00064-SLG, 2018 WL 8805325 (D. Alaska Nov. 16, 2018)...25

*Ctr. for Envtl. Health v. Perdue*,
    No. 18-CV-01763-RS, 2019 WL 3852493 (N.D. Cal. May 6, 2019)............22

*Dep't of Transp. v. Pub. Citizen*,
    541 U.S. 752 (2004)....................................................................20

*Friends of the Clearwater v. Dombeck*,
   222 F.3d 552 (9th Cir. 2000) .............................................................6

*Friends of the Earth v. Hintz*,
   800 F.2d 822 (9th Cir. 1986) ............................................................3

*Golden Gate Salmon Ass'n v. Ross*,
   No. 117CV01172LJOEPG, 2018 WL 3129849 (E.D. Cal. June 22, 2018) .......
   ...................................................................................... 23, 25, 26

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   593 F.3d 923 (9th Cir. 2010) ............................................................5

*Herguan Univ. v. Immigration & Customs*,
   *Enf't*, 258 F. Supp. 3d 1050 (N.D. Cal. 2017).....................................2

*In re Subpoena Duces Tecum*,
   156 F.3d 1279 (D.C. Cir. 1998)......................................................23

*Indep. Min. Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ............................................................6

*Indigenous Envtl. Network v. United States Dep't of State*,
   No. CV-17-29-GF-BMM, 2018 WL 1796217 (D. Mont. Apr. 16, 2018)..........
   ...................................................................................... 20, 21, 25

*Inst. for Fisheries Res. v. Burwell*,
   No. 16-CV-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) . 20, 21, 22

*McCrary v. Gutierrez*,
   495 F. Supp. 2d 1038 (N.D. Cal. 2007)................................. 3, 4, 11

*Morgan v. United States*,
   304 U.S. 1 (1938).............................................................................23

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
   463 U.S. 29 (1983)...........................................................................23

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*,
   842 F.Supp.2d 127 (D.D.C.2012) ................................................................. 6

*Occidental Eng'g Co. v. I.N.S.*,
   753 F.2d 766 (9th Cir. 1985) ...................................................................... 2

*Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
   448 F. Supp. 2d 1 (D.D.C. 2006) ............................................................ 4, 12

*Pinnacle Armor v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ......................................................... 4

*Portland Audobon Soc'y v. Endangered Species Comm.*,
   984 F.2d 1534 (9th Cir. 1993) ................................................................ 3, 24

*Provo River Coal. v. Pena*,
   925 F. Supp. 1518 (D. Utah 1996) .............................................................. 19

*Rempfer v. Sharfstein*,
   583 F.3d 860 (D.C. Cir. 2009) .................................................................... 3

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203 (E.D. Cal. June 23, 2016)
   .......................................................................................................... 3, 25

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*,
   789 F.2d 26 (D.C. Cir. 1986) ..................................................................... 24

*Stand up for California! v. United States Dep't of Interior*,
   71 F. Supp. 3d 109 (D.D.C. 2014) .............................................................. 24

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) ..................................................................... 4

*Thompson v. U.S. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) .................................................................... 3, 6

**Statutes**

5 U.S.C. §552(b)(5) ........................................................................26

5 U.S.C. §706................................................................................3

**EXHIBIT LIST**

A.      July 13, 2017 FOIA Request (July 13, 2016 date on letter is incorrect)

B.      August 30, 2017 USFS FOIA Response Letter

C.      October 6, 2017 USFS FOIA Response Letter

D.      November 3, 2017 FOIA Request

E.      December 7, 2017 USFS FOIA Response Letter

F.      January 16, 2020 US letter re AR

G.      January 30, 2020 US letter re AR

H.      Declaration of Mary Erickson

## INTRODUCTION

The United States opposes Plaintiffs' "Motion to Complete the Record" in this case because it is unnecessary, because Plaintiffs do not meet their burden of proof, and because Plaintiffs improperly seek deliberative or pre-decisional documents. *See* Memorandum in Support of Motion to Complete the Record, Doc. 29 ("Br."), 1-5.  These flaws also undermine Plaintiffs' derivative request for a privilege log (*Id.* at 23-29) and for a stay (*Id*. at 29-31).

Plaintiffs' motion is unnecessary.  The United States Forest Service (USFS) provided thousands of pages of documents in response to Plaintiffs' FOIA requests connected with this dispute.  USFS agreed Plaintiffs can cite any documents they see fit in support of summary judgment arguments – effectively obviating any claim that the agency has "selectively mined… materials" or is trying to manipulate the record to influence judicial review.  Br. 1.  Further, the United States already agreed to add select documents, and to remove post-decisional documents from the AR – obviating entire sections of Plaintiffs' brief.  USFS even offered to extend deadlines for record motions and summary judgment briefs to promote informal resolution.  Plaintiffs eschewed all these commonsense efforts to resolve potential record issues, and avoid this motion.

Plaintiffs' motion also lacks merit because Plaintiffs do not sustain their burden of showing, by clear evidence, that USFS improperly omitted documents

from the record.  During consultations, USFS considered each category of

documents Plaintiffs portray as "missing" from the record (Br. §I), and specifically

advised Plaintiffs the documents were either included in the record or were not

considered by the decision-maker.  Plaintiffs' brief does not clearly show the USFS

decision-maker considered a particular document that was omitted from the record.

Finally, Plaintiffs ask this Court to order USFS to expand its administrative

record to include deliberative communications.  But contrary to Plaintiffs'

assertions, there are no deliberative documents, and such documents are *not*

relevant to judicial review of the challenged decision: The scope of the Court's

review is limited to the agencies' stated reasons for their decisions and the Court

need not probe pre-decisional documents to uncover the mental processes of

agency decision-makers.

For these reasons, as more fully described below, the Court should deny

Plaintiffs' motion.

## STANDARD OF REVIEW

Plaintiffs challenge USFS trail maintenance and travel management

decisions under the APA.  Doc. 18 ¶1.  In APA cases, "the district court is

reviewing a decision of an administrative agency which is itself the finder of fact,"

*Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985), and the "district

judge sits as an appellate tribunal."  *Herguan Univ. v. Immigration & Customs*

*Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (quoting *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009)).  The standard of review in these cases is a "narrow one."  *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971); *Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986).

      In undertaking this review, courts are directed to "review the whole record or those parts of it cited by a party," 5 U.S.C. §706.  The Ninth Circuit has interpreted "the whole record" to mean all documents and materials that the agency decision-maker considered directly or indirectly.  *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted).  Stated differently, "[t]he 'whole record' includes everything that was *before* the agency pertaining to the merits of its decision."  *Portland Audobon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (emphasis added).

      The agency is entitled to a presumption of regularity that its officials properly discharged their duties when designating the administrative record. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citation omitted); *San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-cv-01290-LJO-GSA, 2016 WL 3543203, at *2 (E.D. Cal. June 23, 2016). The presumption derives from recognition "that the agency determines what constitutes the whole administrative record, because it is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it –

namely, were directly or indirectly considered." *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotation marks and citation omitted).

The party seeking to complete the record must overcome this presumption by producing clear evidence to the contrary. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041. To overcome the presumption, a movant must present "clear evidence" that an agency withheld documents that its decision-makers considered, for example, by applying the wrong standard in compiling the record or omitting information required to be included. *McCrary*, 495 F. Supp. 2d at 1041-42; *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). This evidence must be reasonable, non-speculative, concrete, and "identif[ied] . . . with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist." *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 288 (D.D.C. 2013). A "plaintiff must do more than imply that the documents at issue were in the [agency's] possession." *Pinnacle Armor v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013).

## BACKGROUND

Plaintiffs claim USFS decided "to abandon public access on four National Forest trails in the Crazy Mountains: two on the westside and two on the eastside."

Br. 2.  They claim the west side "decision" occurred August 15, 2018, and the east side "decision" sometime in "2017."  *Id*. at 2-3.  Plaintiffs are incorrect.

As previously established, the final agency action underpinning the Porcupine-Ibex reroute (i.e., the west side action) was actually the 2009 Road and Trails Environmental Assessment (EA), Decision Notice (DN), and Finding of No Significant Impact (FONSI).  Doc. 8 at 7-8; Doc. 10 at 4-8, 10.  Any document post-dating the 2009 DN and FONSI is after the fact, and must qualify for an exception to the *post hoc* bar.

Plaintiffs fail to identify any discrete agency action USFS took in 2017 as to the east side trails, let alone "final agency action" amenable to review under APA §706(2).  *See* Doc. 14 at 10 ("USFS is currently working cooperatively with private property owners to develop a comprehensive solution for public access on the east side of the Crazy Mountains…. But those negotiations have so far yielded no definitive agency action: No decision making process has been consummated, and no legal rights or consequences have resulted.") (underlines added).

Plaintiffs also fail to identify any legal duty capable of supporting an APA §706(1) cause of action, i.e., a duty that is "mandatory, discrete, ministerial, and 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'"  Doc. 14 at 11, citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).  Plaintiffs cite no authority creating a

non-discretionary USFS obligation to "maintain" public access on the East Trunk
or Sweet Grass Trails.  Doc. 14 at 9-21.

But even if Plaintiffs could state a viable §706(1) claim (they cannot), it
would not support their administrative record motion.  As Plaintiffs concede, in
§706(1) claims "review is not limited to the record as it existed at any single point
in time, because there is no final agency action to demarcate the limits of the
record."  Br. 9, citing *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560
(9th Cir. 2000).  Accordingly, §706(1) claims confound the usual paradigm of
record compilation, i.e., judicial review generally "limited to review of the record
on which the administrative decision was based."  *Thompson*, 885 F. 2d at 555.
Because there is no contested administrative decision, neither the parties nor the
Court can assess whether a "decision-maker" directly or indirectly considered a
particular document in rendering such a decision.  *Nat'l Law Ctr. on Homelessness
& Poverty v. U.S. Dep't of Veterans Affairs*, 842 F.Supp.2d 127, 130 (D.D.C.2012)
("Said another way, if an agency fails to act, there is no 'administrative record' for
a federal court to review."); *lndep. Min. Co. v. Babbitt*, 105 F.3d 502, 511 (9th Cir.
1997).  Thus, Plaintiffs cannot rely on would-be §706(1) claims to prop up their
administrative record motion.

**ARGUMENT**

**I.    Plaintiffs' motion is unnecessary, wastes judicial resources.**

Plaintiffs seek to achieve by motion practice that which was already achieved through consultation of the parties.  Plaintiffs' motion therefore directly contravenes the first rule of civil procedure, and the objective of Local Rule 7.1(c)(1).

**A.    USFS seeks to exclude nothing.**

Plaintiffs portray USFS as "selectively mining" materials for the administrative record that are helpful to its case.  Br. 1.  They accuse the agency of impermissibly "truncating" the record based on improper policies.  *Id*. at 12.  But the reality is that Plaintiffs have already been provided all documents pertaining to the four disputed trails, and USFS has not sought to limit or exclude any such document from judicial review.

On July 13, 2017, Plaintiffs submitted a Freedom of Information Act (FOIA) request to USFS seeking:

> …any and all documents pertaining to the U.S. Forest Service's management of Trail #136.  Trail #136 circumnavigates the Crazy Mountains in the Custer Gallatin National Forest and is sometimes known as the East Trunk Trail or referenced as Trail #115 or Trail #115/136.

Exhibit A.  USFS compiled thousands of pages of responsive records and delivered them to Plaintiffs via flash drive on August 30, 2017 (Exhibit B), and via web link

on October 6, 2017 (Exhibit C).  The August 30 response produced the same

information Plaintiffs address in this motion, e.g., correspondence with

landowners, correspondence with Secretary Perdue and Senator Daines, the

complete administrative record and project file for the 2006 Travel Management

Plan, etc.  Compare Exhibit B with Br. 13, 16-19.  In the October 6 response,

USFS produced another 65 pages of responsive documents, redacting a few

documents to protect personal privacy, and withholding one document based on

attorney-client privilege.  Exhibit C.  USFS did not redact or withhold any

documents as deliberative or pre-decisional.  *Id*.  Plaintiffs elected not to appeal

USFS's FOIA response.

On November 3, 2017, Plaintiffs submitted another FOIA request to USFS

seeking:

> …any and all documents pertaining to the U.S. Forest Service's
> management of three trails in the Custer Gallatin's Crazy
> Mountains: (1) the Swamp Creek Trail #43; (2) the Elk Creek
> Trail #195; and (3) the Porcupine-Lowline trail, Trail #267 and
> #272.

Exhibit D.  The request addressed both trails that form the basis for Plaintiffs'

"west side" claims here, i.e., Trails 195 and 267.  *See* Br. 2.  The FOIA request

again sought the same categories of information Plaintiffs address in this motion,

like the 2006 Travel Management Plan, "correspondence with private landowners,

organizations, the public, and agency staff, and Congressional staff regarding these

… trails."  Compare Exhibit D with Br. 13-16.

USFS responded to Plaintiffs' FOIA request pertaining to the west side trails

on December 7, 2017.  Exhibit E.  USFS produced hundreds of pages of responsive

documents on a flash drive.  USFS made no redactions and withheld no

documents.  *Id*.  Plaintiffs did not object or appeal this FOIA response.

USFS also responded to numerous additional requests from Enhancing

Montana's Wildlife regarding the disputed trails.  USFS provided Plaintiffs with

thousands of pages of documents – every document USFS possessed responsive to

these requests.  Plaintiffs admit having received all these documents.  Br. 17, n 4.

During informal record consultations, the undersigned advised Plaintiffs the United

States would not seek to prevent Plaintiffs from citing whatever documents they

saw fit in support of summary judgment:

> …to be clear, we do not object to Plaintiffs making summary
> judgment arguments based on any particular document/s,
> regardless of the status of the document/s as being part of the
> record, or extra-record.  We reserve the right to argue the Court
> should reject such arguments on any basis, including the extra-
> record nature of the supporting documents.  Addressing these
> issues in line will promote efficiency by limiting record
> disputes to the documents that actually undergird Plaintiffs'
> contentions, and to the documents USFS actually chooses to
> dispute.

Exhibit F at 5-6.  The government reemphasized that fact on January 30, 2020,

pointing out that the agreement to allow Plaintiffs to rely on extra-record evidence

in their summary judgment briefs enabled Plaintiffs to make the full suite[1] of APA

arguments "even without an AR [administrative record] motion."  Exhibit G at 10.

Thus, USFS seeks to exclude nothing, Plaintiffs already possess and can use

all FOIA documents pertaining to the trails, and Plaintiffs' motion wastes judicial

resources.[2]

### B.     Specifically identified documents already added and removed.

Plaintiffs' motion is also unnecessary because it seeks to add documents to

the record that are already there.  For example, Plaintiffs complain the record is

missing "the final Record of Decision…."  Br. 13-14.  Yet in its January 30, 2020

letter, the government stated: "In the spirit of compromise, we will add the full

ROD…."  Exhibit G at 9.  Likewise, Plaintiffs seek to compel USFS to add to the

record "appeals expressly challenging the Service's depiction and management of

the four trails at issue here as public."  Br. 14.  Yet, in its January 30 letter, USFS

agreed to add to the record "landowner appeals pertaining to the former Lowline

Trail."  Exhibit G at 9.

---

[1] The United States also repeatedly stated that, for Plaintiffs' east side §706(1) claims, objections to any "extra record" documents were unlikely because there was and is no defined "administrative record."  Exhibit G at e.g. 4-6.

[2] Plaintiffs incorrectly assert USFS was "unwilling to agree to a stay of the briefing schedule or reasonable extension of time (beyond a week) to resolve these issues."  Br. 6.  Just hours before Plaintiffs filed their motion, the United States offered to extend briefing deadlines another four weeks, and to extend the record dispute deadline another two weeks.  The United States also offered to extend deadlines indefinitely if Plaintiffs would agree not to seek injunction during the summer work season.  *See infra* §IV.

Plaintiffs' motion is also unnecessary because it seeks to remove certain declarations that were already eliminated.  *See* Br. §III.  Plaintiffs object that USFS "inappropriately packed the record with a number of post hoc documents to support its Ibex decision," including "a number of July, 2019 and August, 2019 declarations from agency employees about the Ibex project."  Br. 30, citing AR5105-5121, 5123-5133.  These declarations (by Nash, Orr, Crootof and Oswald) were drafted in association with USFS's response to preliminary injunction (Doc. 8) and motion to dismiss (Doc. 13).  In its January 16, 2020 consultation letter, USFS agreed to remove those declarations from the record.  Exhibit F at 5.

Plaintiffs' motion needlessly expends judicial resources.

## II.   Plaintiffs fail to show by clear evidence improper exclusion or inclusion of record documents.

Plaintiffs insist USFS improperly excluded a slew of documents from the record, in several categories.  But in every instance, Plaintiffs' accusations are either founded on speculation, or have been explicitly repudiated by the decision-maker.  USFS officials are presumed to properly discharge their duties in designating the administrative record.  *McCrary*, 495 F. Supp. 2d at 1041.  Plaintiffs can only overcome this presumption by producing clear, concrete, and non-speculative evidence USFS withheld documents its decision-makers considered.  *Bar MK Ranches*, 994 F.2d at 740; *McCrary*, 495 F. Supp. 2d at 1041-

42; *Pac. Shores Subdivision*, 448 F. Supp. 2d at 5.  Plaintiffs fail that burden with regard to each category of documents they identify in their brief.

   **A.    Gallatin travel plan documents.**

   Plaintiffs contend "the record filed by the Service fails to include the administrative record or even the key documents from the 2006 travel plan and EIS."  Br. 13.  Specifically, Plaintiffs complain the following components of the travel plan record are missing:

   1. Complete copy of final EIS with appendices;
   2. Complete ROD;
   3. Detailed description of ROD;
   4. "All internal and external documents and materials pertaining to the four trails."

*Id*.  Plaintiffs baldly assert these records were improperly excluded from the record.  An examination of the four categories, however, reveals they are not a required component of the record, and / or have already been included.

   A complete copy of the final EIS for the 2006 travel plan, with appendices, is unnecessary because most of that document has nothing to do with the Crazy Mountains – let alone the four trails at issue here.  The complete AR for the 2006 travel plan is massive, covering areas and topics with zero relevance to the disputed trails.  The relevant portions of the FEIS, ROD, comments, appeal resolution, etc. – i.e., "all the information the decision-maker considered in approving the reroute" – is already in the record.  Exhibit F at 5, Exhibit G at 10.

"The current iteration of the AR contains Chapters 1-5 of the FEIS, Appendix D, a map displaying the Motorized Travel Plan decision, all comments and responses," and the complete ROD.  Exhibit G at 10; *supra* § I(B).  As the decision-maker (Erickson) attests, these were the only portions of the 2006 Travel Plan USFS considered in making the disputed decision.  *See* Exhibit H, ¶3.  Set against these unequivocal attestations, Plaintiffs' baseless speculation that USFS considered additional "internal materials" or "appeal resolution materials" falls far short of their "clear evidence" burden.

### B.    Communications regarding the Ibex easement donation.

Plaintiffs next complain that, while "the Ibex project involves an exchange of easement interests," the record "is devoid of *any* internal or external materials pertaining to the exchange itself, including all negotiation with the landowners." Br. 14-15.  As an initial matter, Plaintiffs' entire premise that the project "involves an exchange of easement interests" is unsupported and invalid.  The Ibex reroute was accomplished through landowner donation of easement interests.  This explains why the record contains no documents regarding an easement exchange, nor a FLPMA § 1716(d)(1) valuation assessment for such an exchange.

Plaintiffs also lack any apparent basis for their assertion that USFS withheld particular categories of documents from the record.  Plaintiffs claim, for example, that USFS withheld "various conferences and meetings with the landowners," and

"feasibility analyses" about technical and political issues.  Br. 15.  Yet even if such meetings occurred, Plaintiffs offer no evidence documents were produced in association with those meetings.  Plaintiffs offer no evidence such meetings were germane to the reroute or "considered" by the decision-maker.  In order to carry their burden, Plaintiffs must produce reasonable, non-speculative, and concrete evidence of documents omitted from the record.  *City of Duluth*, 968 F. Supp. 2d at 288.  They must identify particular documents "with sufficient specificity," versus "merely proffering broad categories of documents and data that are 'likely' to exist."  *Id.*  In contrast to Plaintiffs' speculation, the decision-makers directly attest that USFS did not exclude information about landowner meetings or easement donations.  *See* Erickson declaration at ¶4.

Plaintiffs also assign the wrong date to the "final agency action" for the Porcupine-Ibex reroute.  Br. 15-16.  USFS did not decide to relocate that trail on August 15, 2018 (indeed, the agency took no "final action" on that date).  Rather, the project was approved in the 2009 Road and Trails EA, DN and FONSI.  Doc. 8 at 7-8; Doc. 10 at 4-8, 10.  USFS undertook the 2018 scoping merely to determine whether the range of environmental effects remained as analyzed in 2009.  Doc. 10 at 8-9.  The alteration of the trail reroute location was minor, and "still well within the area depicted on the maps attached to the EA."  *Id.* at 10.  In other words, the operative USFS decision occurred in 2009, and countenanced potential

environmental impacts of trail relocation in the vicinity of the final specific

location.  Landowner communications and trail reroute negotiations were all after

the fact, *post hoc*, and not considered by the decision-makers.  The lack of issues in

the 2018 scoping merely confirmed environmental effects remained as analyzed in

the 2009 NEPA documents.  Plaintiffs fail to show clear evidence the record was

improperly designated.

### C.    Communications regarding the two eastside trails.

Plaintiffs say USFS had a policy to "actively manage and maintain the two

eastside trails for public use and access…."  Br. 16.  But the documents Plaintiffs

cite in support of this contention (Docs. 29-6, 29-12), do not articulate USFS

policy.  They recount some of the history surrounding public use and various

communications by a USFS District Ranger opining that such historical use created

a public access right on the two east side trails.  *See, e.g.*, 29-6 at 36-37.

Actual USFS policy where historical public access trails cross private land

without a documented or recorded easement is set forth in Forest Service Manual

§5460.3, "Right of Way Acquisition."  That section directs USFS to try and (1)

acquire a perpetual right of way (5) with the least impact on private lands crossed

(8) while trying to maintain historic access routes.  USFS policy is to work with

landowners to cooperatively resolve access disputes using various means,

including reciprocal access agreements, documenting limited access rights in a

recordable easement, and negotiating new alignments.  FSM 5460.3, 5462 (AR4974, 4979).  Only when cooperative efforts fail, and alternative access is unavailable, will USFS seek to compel access across a disputed unrecorded access trail.  FSM 5460.3, 5463 (AR4974, 4980).

District Ranger Sienkiewicz's opinion that historical public use created an adverse access right on the east side trails is not USFS policy, and in no way prevented USFS from implementing policy (i.e., seeking to cooperatively resolve with landowners access disputes on the east side).  Plaintiffs only claim the contrary in order to argue USFS *changed* that policy, adopting "a new 'hands off' policy and new direction for the two eastside trails…."  Br. 17.  In this way, Plaintiffs attempt to establish a USFS "action" they can litigate under APA §§704 and 706(2), with attendant administrative record requirements.

But there was never any such change in policy.  As noted above, FSH §5460.3 defines the policy.  Sienkiewicz's claim of historical unrecorded access rights – and protecting such rights – is entirely consistent with USFS efforts to minimize burdens on private landowners, or to cooperatively realign trails.  Plaintiffs cannot establish any legitimate "action" by USFS to change policy: None of the records cited by Plaintiffs actually shows this purported change in policy.

- Plaintiffs say USFS "announced" the change at a public meeting on August 10, 2017.  Br. 18, citing AR5042.  But nowhere on page 5042 (or in any of

the associated emails [5043-45]) does any USFS official "announce" or
acknowledge any such policy change.

- Plaintiffs cite a letter from a member of the public to Senator Daines
  (AR4592) and USFS's response to Daines' resulting inquiry (AR4590).
  Yet neither of these documents announce any change in policy.  Rather,
  USFS states access on the east side trails is by "unperfected prescriptive
  rights," and that USFS is "beginning the process of trying to work amicably
  with the private landowner(s) to determine options for restoration of public
  access…."  AR4590.

- Plaintiffs say this policy change can be discerned from a series of letters and
  emails between USFS and others.  Br. 20, citing Doc. 29-8.  But nowhere
  on the cited pages does USFS proclaim or acknowledge any policy change.
  Doc. 29-8 at 1-4, 10, 15, 17, 19, 21, 23.  Questions are asked about current
  policies (1, 17), and alternative policies are proposed (10), but the
  documents ultimately just reaffirm USFS is adhering to FSH §5460.3 – i.e.,
  meeting with east side landowners to look for cooperative access solutions
  (19, 21).

Thus, Plaintiffs fail to establish USFS took any "agency action" by changing

policy on the east side trails.  The Forest Supervisor explicitly repudiates any such

action.  Exhibit H, ¶9.  Plaintiffs have certainly failed to establish any action

representing "the consummation of the agency's decision making process" – as is

required to constitute "final agency action" amenable to APA § 704 review.

*Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 482 (2004).

Because there is no "final agency action," Plaintiffs are relegated to a

§706(1) failure-to-act claim.  Nothing "demarcates the limits of the record,"

because the usual yardstick (directly or indirectly considered by the decision-

maker) does not apply.  *See supra*, "Background."  As noted above, documents

relevant to these trails were already provided to Plaintiffs, and the United States is

unlikely to object on record grounds to any document cited in support of Plaintiffs'

§706(1) claim.

      **D.**    **Communications with the Crazy Mountain Working Group and others.**

Plaintiffs next contend the record improperly excludes documents and

communications from the "extensive discussions with landowners" at Crazy

Mountain Working Group meetings.  Br. 22.  First, USFS neither organizes nor

runs the Working Group.  Exhibit H, ¶11.  USFS is a guest at Group meetings, and

is not responsible for keeping notes.  *Id*.  Second, Plaintiffs lack any apparent basis

for asserting Group discussions were reduced to writing, or possessed by USFS.

Plaintiffs lack any apparent basis for asserting such discussions factored into any

decision by USFS on Porcupine-Ibex because all the meetings (2017 & 2018)

substantially post-date the 2009 EA and FONSI.  The discussions could not factor

in the east side trails decision because no such decision exists.

Plaintiffs say USFS improperly excluded two emails and photos depicting

"landowners' illegal obstruction efforts on National Forest System trails…."  Br.

22, citing Doc. 29-11.  Again, these 2018 documents substantially post-date the

Porcupine-Ibex decision, and were not considered by the decision-maker.  Exhibit

H, ¶8.  To the extent Plaintiff may seek to use the emails in support of their east

side claims, there is no "demarcated" administrative record, and USFS is unlikely to object on record grounds.

### E.    Railroad deeds to private landowners.

Plaintiffs seek to compel the addition of certain railroad deeds they say create a public easement that may coincide with "portions of the National Forest System Trails subject to the exchange for the Ibex project…."  Br. 23.  USFS previously advised Plaintiffs the decision-maker did not directly or indirectly consider these documents in approving the Porcupine-Ibex reroute.  Exhibit G at 5. Plaintiffs offer no clear evidence to contradict this assertion, which is directly reaffirmed here by the decision-maker.  Exhibit H ¶8.

### F.    Specialist reports confirm environmental effects remain as analyzed.

Plaintiffs object to the inclusion in the record of "write ups" and specialist reports that post-date USFS's approval of Porcupine-Ibex.  Br. 30.  But the 2009 decision to approve the reroute was predicated on a trail reroute in the vicinity of the final trail location, and the decision included design principles, Standard Operating Procedures and additional mitigation measures to be applied after the decision.  ROD 22-28.  Where the NEPA documents assume such measures will be taken, "it is appropriate for the court to examine the details of the mitigation and construction plans in considering whether the consequences of the [project] are something other than was assumed at the time of the earlier documents."  *Provo*

*River Coal. v. Pena*, 925 F. Supp. 1518, 1526 (D. Utah 1996).  Here, the

specialists' reports demonstrate that the environmental effects of the final location

of the rerouted trail are no greater than as analyzed in the 2009 EA.  AR562.  The

press releases demonstrate USFS's ongoing public distribution of information

about project effects, in compliance with NEPA.  *Dep't of Transp. v. Pub. Citizen*,

541 U.S. 752, 768 (2004).

Thus, neither the specialists' reports nor press releases should be excluded

from the record, despite the fact that they post-date the decision.

## III.   Deliberative documents are not part of administrative record.

### A.   No "deliberative" documents regarding east side trails.

As noted above, Plaintiffs identify no "final agency action" with regard to

the two east side trails.  *Supra*, §II(C).  As such, USFS cannot identify documents

as "pre-decisional" or "deliberative" with regard to any particular action or

decision.  As set forth below, Plaintiffs' premise – that deliberative materials are

properly included in the administrative record – is deeply flawed.  But even if it

were valid, every case Plaintiffs cite in support of their argument relate to discrete

"final agency actions" that qualified for APA review.  *See, e.g.*, *Inst. for Fisheries

Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10,

2017) ("inter– or intra-agency emails, revisions, memoranda, or meeting notes <u>will

inform an agency's final decision</u>")(underlines added); *Indigenous Envtl. Network*

*v. United States Dep't of State*, No. CV-17-29-GF-BMM, 2018 WL 1796217, at *2
(D. Mont. Apr. 16, 2018) ("When reviewing <u>final agency action</u> under the
APA….")(underlines added).  Indeed, documents are defined as "deliberative"
only if they are "pre-decisional, i.e., generated before the adoption of an agency's
decision."  *Id*. *3.  Until USFS takes action on the east side, no documents are
"pre-decisional."

No case in any jurisdiction has endorsed the proposition that an APA
plaintiff is entitled to "deliberative" or "pre-decisional" material where the agency
has taken no action.  Indeed, such a rule would require unbounded administrative
records – every record in the agency's possession – because any document could
theoretically be "pre-decisional" to an action not yet taken.  Thus, Plaintiffs'
request for "deliberative" documents should be rejected as to the east side trails.

**B.     No clear evidence of "deliberative" documents.**

Even according to Plaintiffs' authority, no production of "deliberative"
material is warranted until a plaintiff overcomes the presumption that the
administrative record is complete.  *Inst. for Fisheries Res*., 2017 WL 89003, at *1;
*Indigenous Envtl. Network*, 2018 WL 1796217, at *3.  Plaintiffs have not sustained
this burden.  Plaintiffs assert USFS "admits that 'deliberative' documents were
withheld because the agency does not consider them relevant or material…."  Br.
24.  But the only documents cited in support of this claim (29-1 ¶3, 29-3) do not

establish any actual withholding of documents *in this case*.  They merely show that USFS policy is to categorize deliberative or pre-decisional material as not part of the record.

Indeed, as noted above, in response to two different FOIA requests, USFS produced all requested documents pertaining to management of the trails disputed in this case.  *Supra* §I(A).  USFS neither redacted nor withheld any documents from its FOIA responses based on the "deliberative process" exemption.  The decision-maker affirms no such deliberative documents were withheld.  Erickson dec. ¶4.  Thus, even if deliberative documents were properly part of administrative records (they are not), Plaintiffs have not shown USFS withheld such documents in this case.

**C.    "Deliberative" documents are not part of the record.**

Even if the agency possessed "deliberative process" documents regarding the disputed Ibex decision, they would not be properly included in an administrative record.  Plaintiffs argue the contrary, relying on two decisions by the Northern District of California.  Br. 23, citing *Inst. for Fisheries Res.*, 2017 WL 89003 at *1 and *Ctr. for Envtl. Health v. Perdue*, No. 18-CV-01763-RS, 2019 WL 3852493, at *1 (N.D. Cal. May 6, 2019).  But the Northern District of California is "a jurisdiction that requires an agency preparing an administrative record to include internal agency communications in the record and then produce a privilege

log to justify exclusion of any records under the deliberative process privilege." *Golden Gate Salmon Ass'n v. Ross*, No. 117CV01172LJOEPG, 2018 WL 3129849, at *5 (E.D. Cal. June 22, 2018).  It applies that requirement "absent any legal authority," so those decisions are not persuasive.  *ASSE Int'l v. Kerry*, No. SACV1400534CJCJPRX, 2018 WL 3326687, n 4 (C.D. Cal. Jan. 3, 2018).

Meanwhile, "the great weight of cases from the D.C. Circuit" have determined "the documents over which Defendants claim privilege are not part of the administrative record and Defendants are not required to produce a privilege log for those documents."  *Id*. *4.  The D.C. Circuit has held that "[a]gency deliberations not part of the record are deemed immaterial," because in APA cases "the reasonableness of the agency's action is judged in accordance with its stated reasons" – not its subjective ruminations.  *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998); *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 50 (1983) (agency action "must be upheld, if at all, on the basis articulated by the agency itself.").  It is "not the function of the court to probe the mental processes" of the agency.  *Morgan v. United States*, 304 U.S. 1, 18 (1938).  Thus, "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior...."  *In re Subpoena*, 156 F.3d at 1279.  Plaintiffs make no such allegation or showing of bad faith here.

In *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986), the *en banc* D.C. Circuit held judicial review of deliberative material "would represent an extraordinary intrusion into the realm of the agency."  The Circuit declined to sanction such an intrusion barring a "strong showing of bad faith or improper behavior."  *Id*.; *see also Stand Up for California! v. United States Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014); *Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994).

The Ninth Circuit has suggested it agrees with this approach.  In *Portland Audubon*, 984 F.2d 1534, plaintiff sought discovery regarding alleged *ex parte* contacts with the committee charged with granting ESA exemptions.  The court approvingly cited the DC Circuit's decision in *Mothers for Peace* in suggesting the administrative record includes "neither the internal deliberative processes of the agency nor the mental processes of individual agency members."  *Id*. at 1549.

In *Cook Inletkeeper v. EPA*, 400 F. App'x 239, 240 (9th Cir. 2010) (unpublished) the court denied a motion to supplement the administrative record with deliberative and pre-decisional materials.  The court will "assume that an agency properly designated the Administrative Record absent clear evidence to the contrary."  The petitioner in *Cook* – like Plaintiffs here – made no showing to rebut the presumption of proper record designation.

Contrary to Plaintiffs' suggestion (Br. n 5), numerous district courts in the Ninth Circuit have rejected the idea that deliberative documents are part of the record.  In *Golden Gate Salmon Ass'n*, for example, the Eastern District of California "declin[ed] to require [that] deliberative materials be included in an administrative record as a matter of course because doing so contravenes 'the standard presumption that the agency properly designated the Administrative Record.'" 2018 WL 3129849, at *5.  The court did partly grant plaintiffs' motion to supplement, but only as to documents where plaintiffs provided "clear evidence" a deliberative process privilege was unwarranted.  *Id*.  *See also, e.g., San Luis & Delta-Mendota*, 2016 WL 3543203, at *19; *ASSE Int'l*, 2018 WL 3326687, *Ctr. for Biological Diversity v. Zinke*, No. 3:18-CV-00064-SLG, 2018 WL 8805325, at *3 (D. Alaska Nov. 16, 2018); *Carlsson v. U.S. Citizenship & Immigration Servs.*, No. 2:12-cv-7893- CAS(AGRx), 2015 WL 1467174, at *7 n.5 (C.D. Cal. Mar. 23, 2015).

Plaintiffs rely heavily on Judge Morris's decision in *Indigenous Envtl. Network*.  Br. 27.  But the Court found plaintiffs "*in this particular case*, have rebutted the presumption of completeness with clear evidence," and pointed "to specific documents missing from the administrative records."  2018 WL 1796217, at *3 (italics added).  This is similar to the court's holding in *Golden Gate Salmon* that the deliberative exemption does not apply when a plaintiff adduces clear

evidence that particular documents are not deliberative.  2018 WL 3129849, at *5.

Here, Plaintiffs have failed to provide clear evidence that USFS withheld any

documents as "deliberative," let alone that such withholding was "unwarranted."

In fact, the clear evidence from the agency's FOIA responses[3] and from the

decision-maker is to the contrary: USFS withheld no deliberative documents.

Erickson dec., ¶4.

        Accordingly, in lieu of any showing USFS improperly applied the

deliberative process privilege, and any showing to overcome the presumption that

USFS properly designated the record, "deliberative" documents are not part of the

record.

## IV.    A stay is unnecessary and will further waste time and resources; Plaintiffs' motion violates the scheduling order.

        As set forth above, all Plaintiffs' objections to the record are meritless.

Plaintiffs have failed to carry their burden to clearly show USFS improperly

designated the record.   They provide zero evidence the USFS decision-maker

actually considered omitted documents in making the disputed decision, or

---

[3] This fact belies Plaintiffs' objection that, in lieu of a privilege log, plaintiffs and the court "have no way to evaluate assertions of privilege and whether documents were improperly excluded from the administrative record."  Br. 27.  Of course they have a way: The FOIA.  The FOIA makes no distinctions based on record versus extra-record status, and all "deliberative process" redactions and withholdings must be specified.  5 U.S.C. §552(b)(5).  It is the same device Plaintiffs deployed here to acquire "any and all documents pertaining to the U.S. Forest Service's management of" the disputed trails.

improperly relied on *post hoc* documents.  They fail to show USFS actually

withheld any "deliberative" or pre-decisional documents.  Thus, Plaintiffs lack any

legitimate basis to assert "it is impossible for Plaintiffs to move forward with

summary judgment briefing."  Br. 31.

Plaintiffs have possessed the administrative record since December 16,

2019, and the FOIA response documents for more than two years.  They lack any

basis to assert this was inadequate time to review the record and prepare summary

judgment briefs.  Indeed, Plaintiffs stipulated to a schedule whereby their opening

summary judgment brief would be due January 31, 2020.  Doc. 23 at 4.  Thus,

because the record is not deficient, and because Plaintiffs have had their allotted

time to review the record, a stay is unwarranted.[4]

If the parties had insoluble differences on the contents of the record,

Plaintiffs reserved the right to file a record motion, and seek an extension of

summary judgment briefing deadlines, no later than January 24, 2020.  *Id*. at 3-4.

The parties specifically stipulated: "…if Plaintiffs determine that the record dispute

is significant and may impair their ability to brief this matter on the merits

(summary judgment), they may file a motion to stay summary judgment briefing

on or before January 24, 2020."  Plaintiff filed such a motion to stay – citing record

---

[4] The government does not object to extending summary judgment deadlines four weeks, as stated above (n 2).

disputes as the basis – on January 17, 2020.  Doc. 26.  The Court granted that

motion, and extended the record motion and summary judgment briefing deadlines

by seven days.  Doc. 27.  The Court did not, however, extend the deadline for

Plaintiffs to move for a stay of summary judgment deadlines.  Plaintiffs already

filed a motion seeking such an extension, and received that extension.  Plaintiffs'

request for a second stay therefore violates the parties' agreement, and this Court's

order.

The United States is not merely picking nits in terms of the summary

judgment schedule.  Since the parties began negotiating case management

deadlines, the government has tried to schedule summary judgment so the merits

would be resolved before next work season.  When the snow clears and the ground

dries, USFS will be in a position to implement Phase II of the Porcupine-Ibex

project, and other possible work.  Plaintiffs have already rejected two requests to

forego seeking preliminary injunction in connection with such work.  Thus, the

indefinite stay Plaintiffs seek by their unnecessary AR motion will delay resolution

of the merits, inviting a whole new round of emergency briefing in the spring on

the very same issues.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion to complete the administrative

record should be denied.

**DATED** this 13th day of February, 2020.


/s/ **MARK STEGER SMITH**
**Assistant U.S. Attorney**
**Attorney for Federal Defendants**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 6,498 words, excluding the caption and certificates of service and compliance.

**DATED** this 13th day of February, 2020.

**/s/ MARK STEGER SMITH**
**Assistant U.S. Attorney**
**Attorney for Federal Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of February, 2020, a copy of the foregoing document was served on the following person by the following means.

| | |
|---|---|
| __1–3__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.  Clerk of Court

2.  Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 324-8011 – phone
bishop@westernlaw.org
***Attorney for Plaintiffs***

3.  Michael A. Kauffman
Patricia Klanke
DRAKE LAW FIRM, P.C.
111 North Last Chance Gulch
Suite 3J, Arcade Building
Helena, Montana 59601
michael@drakemt.com
patricia@drakemt.com
***Attorneys for Plaintiffs***

**/s/ MARK STEGER SMITH**
**Assistant U.S. Attorney**
**Attorney for Federal Defendants**