**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 2nd Avenue North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4667**
**Fax: (406) 657-6058**
**Email: mark.smith3@usdoj.gov**

**JOHN M. NEWMAN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 829-3336**
**Fax: (406) 542-1476**
**Email: john.newman@usdoj.gov**

**Attorneys for Federal Defendants**
**United States of America**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **FRIENDS OF THE CRAZY MOUNTAINS, a public land organization; MONTANA CHAPTER BACKCOUNTRY HUNTERS AND ANGLERS, a non-profit organization; ENHANCING MONTANA'S WILDLIFE AND HABITAT, a public outreach organization; SKYLINE SPORTSMEN'S ASSOCIATION, a non-profit organization,** | **CV 19-66-BLG-SPW-TJC** |
| | **FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO FILE SUPPLEMENTAL COMPLAINT** |
| **Plaintiffs,** | |

**vs.**

**MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest; LEANNE MARTEN, in her official capacity as Regional Forester, Region One, for the U.S. Forest Service; VICKI CHRISTIANSEN, in her official capacity as chief of the U.S. Forest Service; THE UNITED STATES FOREST SERVICE, a federal agency; THE UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department,**

**Federal Defendants.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

INTRODUCTION.........................................................................................1

STANDARD OF REVIEW ..........................................................................1

ARGUMENT ................................................................................................2

I. The landowners are not "necessary parties." ............................................3

      A.    There was no easement exchange. ............................................3

      B.    The landowners' participation is not required to provide complete relief because the USFS action did not transfer title.........................................................................6

      C.    The landowners assert no interest impeded by this lawsuit. ................................................................................12

II. Joinder is not feasible. ........................................................................14

III. Supplemental pleading will prejudice the federal defendants...................17

CONCLUSION ........................................................................................19

CERTIFICATE OF COMPLIANCE.........................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alaska Envtl. Ctr. v. Hodel,*
   803 F.2d 466 (9th Cir. 1986) .................................................................. 13

*Cetacean Cmty. v. Bush,*
   386 F.3d 1169 (9th Cir. 2004) ................................................................ 7

*Cook v. Hartman,*
   317 Mont. 343 (2003) .................................................................... 4, 12

*Cooper v. Sely,*
   No. 1:11-CV-00544-AWI, 2012 WL 5364502 (E.D. Cal. Oct. 30, 2012) .... 18

*Cottonwood Envtl. Law Center v. U.S. Forest Serv.,*
   789 F.3d 1075 (9th Cir. 2015) ............................................................... 17

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.,*
   375 F.3d 861 (9th Cir. 2004) ................................................................ 6

*Dome Mt. Ranch, LLC v. Park Cty.,*
   307 Mont. 420 (2001) ........................................................................... 4

*E.E.O.C. v. Peabody W. Coal Co.,*
   400 F.3d 774 (9th Cir. 2005) ............................................................... 15

*Enos v. Marsh,*
   769 F.2d 1363 (9th Cir. 1985) ....................................................... 16, 17

*Federal Power Comm'n v. Idaho Power Co.,*
   344 U.S. 17 (1952) ....................................................................... 7, 8

*Fund for Animals, Inc. v. Lujan,*
   962 F.2d 1391 (9th Cir. 1992) ............................................................. 16

*Hood ex rel. Mississippi v. City of Memphis, Tenn.,*
   570 F.3d 625 (5th Cir. 2009) ................................................................. 2

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) .................................................................. 17

*Kettle Range Conservation Group v. Bureau of Land Management*,
    150 F.3d 1083 (9th Cir. 1998) ............................................... 10, 11, 12, 15

*Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*,
    257 F. Supp. 2d 148 (D.D.C. 2003) ........................................................ 7

*Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*,
    381 Mont. 389 (2015) ............................................................................ 4

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) .................................................................. 2

*McLaughlin v. Int'l Ass'n of Machinists*,
    847 F.2d 620 (9th Cir. 1988) ............................................................ 13, 14

*Native Ecosystems Council v. U.S. Forest Serv.*,
    418 F.3d 953 (9th Cir. 2005) .................................................................. 7

*Northrop Corp. v. McDonnell Douglas Corp.*,
    705 F.2d 1030 (9th Cir. 1983) ................................................................ 2

*Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt.*,
    No. CV 03-1017-JE, 2004 WL 7333200 (D. Or. Mar. 22, 2004) .............. 15

*Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found.*,
    259 Mont. 279 (1993) ...................................................................... 4, 14

*Salt River Project Agr. Imp. & Power Dist. v. Lee*,
    672 F.3d 1176 (9th Cir. 2012) .......................................................... 2, 14

*Sierra Nevada Forest Prot. Campaign v. Tippin*, No. CIV.S-06-
    00351FCDDAD,
    2006 WL 1319397 (E.D. Cal. May 15, 2006) ........................................ 15

*W. Org. of Res. Councils v. Bernhardt*,
   362 F. Supp. 3d 900 (D. Mont. 2019) .......................................................6

*W. Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) .................................................................7

*Ward v. Apple*,
   791 F.3d 1041 (9th Cir. 2015) ............................................................ 12

*White v. Univ. of Cal.*,
   765 F.3d 1010 (9th Cir. 2014) .............................................................2

**Statutes**

5 U.S.C. § 706(2)(A) ...............................................................................7
43 U.S.C. § 1716................................................................................5

**Rules**

Fed. R. Civ. P. 15(d)............................................................................ 17
Fed. R. Civ. P. 19............................................................................ 1, 6

**Regulations**

36 C.F.R. § 254.3(b) ...............................................................................5
36 C.F.R. §§ 254.1-254.17 .......................................................................5
36 C.F.R. § 220.6(d)(6)(i)........................................................................8
41 C.F.R. §§ 102-75.936 through 102-75.938 .............................................8

**INTRODUCTION**

Plaintiffs seek to file a supplemental complaint that adds private landowners as defendants. *See* Docs. 35-36. Plaintiffs claim such joinder is required under Fed. R. Civ. P. 19, and that the private landowners are "required parties." Plaintiffs are wrong. As set forth more fully below, there has been no easement exchange or land exchange in this case. The private landowners did not acquire title to any public trail by virtue of the Porcupine-Ibex reroute. As such, the private landowners are not "required parties" under Rule 19, and the Court lacks jurisdiction over such private parties in these APA proceedings. Plaintiffs' requested "supplement" to the complaint would also be the second major overhaul of Plaintiffs' claims in this litigation and – on the eve of summary judgment – would prejudice the Defendants.

**STANDARD OF REVIEW**

In determining whether a party is required to be joined, Rule 19 imposes a three-step inquiry:

1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?

2. If so, is it feasible to order that the absent party be joined?

3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1197 (9th Cir. 2012) (internal citation omitted).  A negative answer to any of these questions terminates the Rule 19 inquiry.  *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (determining a party is not "necessary" obviates analysis whether joinder is feasible and whether party's presence is indispensable).

In the Ninth Circuit, analysis of what makes a party "necessary" under Rule 19(a)(1) consists of two broad inquiries: First, can complete relief be provided to existing parties in the absence of the absent party?  Second, does the absent party claim an interest that relates to the subject of the action?

This inquiry is "highly practical" and "fact-specific" and equitable.  *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014); *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).  The party advocating joinder has the burden of demonstrating that a missing party is necessary.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

**ARGUMENT**

The private landowners are not "necessary parties" in this APA litigation, and their joinder is not feasible.  Plaintiffs' arguments to the contrary are fundamentally founded on the erroneous assertion there has been an "easement exchange" or "land exchange" with the private landowners such that their participation is now required in order for the Court to afford complete relief.  In

truth, however, there has been no land or easement exchange, the Court can provide complete relief without the landowners' participation, and the landowners claim no interest potentially impeded by any resolution of this lawsuit.

## I. The landowners are not "necessary parties."

### A.    There was no easement exchange.

The gravamen of Plaintiffs' assertion that the private landowners must be joined is that those landowners were party to an "easement exchange" in September, 2019.  Doc. 36 at 2.  But there was no easement exchange.  Throughout the already lengthy pleading and briefing in this matter, Plaintiffs have never established that USFS possesses any kind of fee interest or recorded easement where the Porcupine Lowline or North Fork Elk Creek trails cross private property. The sole basis upon which Plaintiffs have inferred a putative USFS property interest is by prescriptive easement.  *See*, e.g., Doc. 18 at ¶53.[1]  But the mere allegation of historically adverse public use does not establish a legally valid easement – even if it meets all the prima facie elements for prescription under Montana law.  Rather, such use merely establishes USFS's potential eligibility to

---

[1] Plaintiffs also alleged a public easement was created by reservations in certain Northern Pacific Railroad grants.  Doc. 7 at 25-26.  But Plaintiffs have never established the actual existence or location of any such right of way on either Porcupine Lowline or North Fork Elk Creek.  Doc. 14 at 23.  Even if they had, the railroad grants would create only a public right of way.  According to their plain terms, the Releases of Easement Interests extinguish only USFS interests.  *See*, e.g., Doc. 36-2 at 1.  The purported public easements are unaffected.

establish a prescriptive easement.  *Cook v. Hartman*, 317 Mont. 343, 352 (2003).

Thus, Plaintiffs' claims of longstanding, hostile, and uninterrupted public use on

the two trails, even if true (they are not[2]), merely establish an "inchoate servitude"

until an actual prescriptive easement is established by a court decree.  *Id.*  Such a

decree has never been issued in connection with the Porcupine Lowline or North

Fork Elk Creek trail.  Accordingly, USFS has never possessed an easement to

exchange.

Consistent with this reality, the very documents Plaintiffs cite to establish an

"easement exchange" repudiate the concept.  Exhibit B to Plaintiffs' brief consists

of two documents entitled "Release of Easement Interests," and two "Trail

Easements."  Doc. 36-2.  The Release documents identify the portions of

Porcupine Lowline and North Fork Elk Creek trails that cross the landowners'

private property as "easement *interests*" – not easements.  *Id.* at 1, 4 (italics added).

Under the explicit terms of the releases, USFS surrenders its "claim" to easement

"interests" across the landowners' private property.  *Id.*

---

[2] Plaintiffs do not dispute (and in fact have alleged) that landowner signs restricting access have been in place since 2002 (Doc. 1 at ¶5; Doc. 8-38 at ¶5) and that locked gates have been in place since 2009 (*Id.*; Doc. 8-38 at ¶7).  Under Montana law, these actions tend to extinguish public prescriptive easements. *Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*, 381 Mont. 389, 401 (2015); *Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found.*, 259 Mont. 279, 288 (1993); *Dome Mt. Ranch, LLC v. Park Cty.*, 307 Mont. 420, 427 (2001).

Further undermining the notion of an "easement exchange," each release of easement interest is explicitly  "executed without consideration to the Government."  *Id*.  Plaintiffs try to make much of the stamp at the bottom of each release where Forest Supervisor Mary Erickson approved the releases "as to Consideration, Description, and Conditions."  Doc. 36 at 5.  But the stamp does not change the fact that the "approved consideration" was non-existent according to the black-letter terms of each document, and that there were no conditions.  Doc. 36-2 at 1-2, 4-5.  If nothing was given in consideration, then the transaction clearly was not an "exchange."

The Release documents also both recite the fact that Henry Guth and M Hanging Lazy 3 "donated" trail easements to the United States.  *Id*.  The Releases do not portray those trail easements as being in exchange for USFS surrendering its easement claims on the Porcupine Lowline or North Fork Elk Creek trails.  *Id*.  The express denomination of those transfers as "donations" belies the idea of any kind of compensated exchange (even if USFS possessed an easement to exchange).

Finally, USFS regulations prescribe specific requirements for a land or easement exchange.  *See*, e.g., 43 U.S.C. § 1716, 36 C.F.R. §254.3(b), 36 C.F.R. §§254.1-254.17.  Because the United States did not, in this instance, convey property interests to Henry Guth or M Hanging Lazy 3 as in such an exchange, USFS did not need to take such steps.  *See* Hockelberg dec., ¶7.  For example,

5

there was no assessment of the public interest, no appraisal, no agreement to
initiate an exchange, and no environmental analysis.  *Id.* at ¶7.

USFS released inchoate easement claims, and the private landowners
donated trail easements in different locations.  These transactions are not a land or
easement "exchange," and they do not make the private landowners "necessary
parties" under Fed. R. Civ. P. 19.

**B.     The landowners' participation is not required to provide complete
         relief because the USFS action did not transfer title.**

Complete relief can be accorded when a court is able to fashion "meaningful
relief" between the existing parties.  *Disabled Rights Action Comm. v. Las Vegas
Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).  Relief is "meaningful" when it is
not "partial or hollow," and when it precludes "multiple lawsuits on the same cause
of action."  *Id.*  Integral to the inquiry is a determination of what remedies are
available to the court under the claims specified in the complaint.  *Id.*

Here, Plaintiffs' amended complaint claims violations of the Federal
Advisory Committee Act ("FACA"), the National Environmental Policy Act
("NEPA"), the National Forest Management Act ("NFMA"), and the Federal Land
Policy Management Act ("FLPMA").  None of these statutes encompasses a
private right of action against the United States, or a waiver of sovereign
immunity, so all of Plaintiffs' claims must be brought under the Administrative
Procedure Act ("APA").  *See W. Org. of Res. Councils v. Bernhardt*, 362 F. Supp.

3d 900, 910 (D. Mont. 2019) (FACA); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004) (NEPA); *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005) (NFMA); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011) (FLPMA).

Under the APA, where a plaintiff seeks to overturn an agency action as "arbitrary and capricious" under 5 U.S.C. § 706(2)(A), their remedy is limited to a court order invalidating or remanding the disputed agency action.  *See Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 154 (D.D.C. 2003); *Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952).  Thus, the only "meaningful relief" the Court can provide in connection with the decision approving the Porcupine Ibex project is an order affirming or invalidating the USFS action.  Plaintiffs fail to sustain their burden of proving the private landowners are "necessary parties" for the Court to make such a determination or provide such relief.  They are not.

The disputed "major federal action" here is the 2009 Road and Trails decision.  *See*, doc. 10 at 4-8, doc. 30 at 5, 14-15.  That is where USFS proposed the Porcupine-Ibex reroute, analyzed environmental impacts, and assessed public comments.  *Id*.  That decision, however, did not cause or authorize USFS to release its potential claims to the Porcupine Lowline or North Fork Elk Creek trails.  Rather, USFS has authority under its land management regulations to relinquish

"interests in land" that it is no longer using or no longer needs. 41 C.F.R. §§ 102-75.936 through 102-75.938; AR004911-4920. That is what occurred in this instance on September 20, 2019. *See* Hockelberg dec. ¶3.

Similarly, the 2009 Road and Trails decision was not the "agency action" which enabled USFS to accept the donated easements from M Hanging Lazy 3 and Henry Guth. USFS is authorized to acquire easement interests by donation, without following the process of a land exchange. *Id*. ¶4; AR004969-4995. USFS may accept donated interests in land through a categorical exclusion, without the need for a project or case file and decision memo. *Id*. ¶5; 36 C.F.R. § 220.6(d)(6)(i). That is how USFS accepted the easement donations from M Hanging Lazy 3 and Henry Guth. Hockelberg dec. ¶3.

Because neither USFS's releases of easement interest nor its receipt of donated easements derived from the 2009 Road and Trails decision, an order by the Court invalidating and remanding that decision would not affect either transaction. The release of easement interests and acceptance of easement donations was merely consistent with the plan in the 2009 Road and Trails decision to find alternative access routes in the defined vicinity of the Porcupine-Lowline Trail. The 2009 action did not sanction or effectuate the release or acceptance. This is true regardless of whether the private landowners participate in the

8

litigation.   Accordingly,  the landowners' participation is not "necessary" in order to afford complete relief.

Plaintiffs assert the "disputed action" was an August 15, 2018 "decision to approve the Ibex project."  Doc. 36 at 3.  As previously briefed, this assertion is incorrect: The document Plaintiffs rely upon – an August 15, 2018 "Scoping Document" (Doc. 36-3) – is not a decision or a NEPA document.  It merely assisted USFS in confirming the environmental effects of trail relocation remained within the range of effects as analyzed in the 2009 Road and Trails decision and associated NEPA analysis.  Doc. 30 at 14-15.  But even if the August 15, 2018 scoping document *were* the relevant final agency action, the Rule 19 joinder analysis would not change.  The 2018 scoping document neither authorized nor approved USFS's release of potential easement claims across the former Porcupine Lowline and North Fork Elk Creek Trails.  It did not authorize or approve USFS's acceptance of the landowners' easement donations.  A Court order invalidating and remanding the 2018 scoping document (the sole remedy available under NEPA) would not reverse the release of the easement claim or acceptance of donated easements.  Again, this remains true regardless of whether the private landowners are joined in this APA litigation.  As such, again, the landowners' participation is not necessary in order to afford complete relief.

Plaintiffs argue this case is just like *Kettle Range Conservation Group v. Bureau of Land Management*, 150 F.3d 1083 (9th Cir. 1998), where the court ordered joinder of a private landowner in NEPA / APA case.  Doc. 36 at 8-11.  But Plaintiffs miss or elide pivotal distinctions between this case and *Kettle Range*:  In this case, the private landowners did not acquire lands or title to lands, and the "agency action" was not a land exchange.

The private landowner in Kettle Range was a coalition of timber companies that sought to exchange 25,000 acres of privately owned shrub-steppe lands for about 5,000 acres of public forest lands they could commercially harvest.  *Id.* at 1085.  The timber companies proposed to do this through a NEPA-sanctioned land exchange whereby, under contract, title would transfer from the public (i.e., Department of Interior and BLM) to the private timber companies.  *Id.*  The adequacy of the NEPA analysis supporting this transfer of title was the focus of litigation  in both the district court and Ninth Circuit.  *Id.*

Specifically  in connection with the Rule 19 joinder analysis, the Ninth Circuit in *Kettle Range* held "that once the private parties <u>took title</u>, they became necessary in that respect."  *Id.* at 1086 (underlines added).  This was so because the land exchange was executed, in large  part, after the district court denied preliminary injunction, and the Ninth Circuit denied emergency stay pending appeal.  *Id.* at 1085.  At that point, the exchange was largely a *fait accompli*.  At

summary judgment, plaintiffs in *Kettle Range* asked the district court to "halt the conveyance of the remaining 365 acres and to rescind the contract between the BLM and Clearwater, and thus to void the transfers that had already taken place." *Id*. at 1086.  Accordingly, "the parties holding title to the lands were necessary because the district court could not grant complete relief without 'impair[ing] or imped[ing]' their interests." *Id*. (quoting Rule 19).

But, in *Kettle Range*, unlike here, the private timber companies *acquired title* to public lands.  They only acquired that title by virtue of the very same agency action that was under attack in the litigation, i.e., the land exchange.  By enacting the APA remedy – i.e., invalidating the agency action – the court would overturn the land exchange, halt any remaining conveyances, and "void the transfers that had already taken place," as plaintiffs had requested.  *Id*. at 1087 ("Here, title to the land already transferred has vested in the private parties. We have no doubt that an order declaring the executed portion of the land exchange void *ab initio* would 'destroy the legal entitlements of the absent parties.'").  Because the timber companies owned those lands, they were "necessary parties."

Here, by contrast, M Hanging Lazy 3 and Henry Guth did not acquire title to anything by virtue of the 2009 Road and Trails decision (or the August 15, 2018 scoping document).  Rather, M Hanging Lazy 3 and Guth already held title to the real property under the Porcupine Lowline and North Fork Elk Creek trails.

11

Neither USFS, nor any member of the public, "held title" to such trails in any legal sense, because the alleged history of prescriptive public use merely creates an inchoate interest. *Cook*, 317 Mont. at 352.

The nature of the agency action is also fundamentally different here in comparison to *Kettle Range*. This case did not involve a land exchange. In this case, USFS set out to cooperatively resolve problematic public access in specific locations in the Crazy Mountains. Public access was problematic precisely because USFS lacked a recorded or recordable easement across private property on the Porcupine Lowline and North Fork Elk Creek trails. In keeping with its policies, USFS therefore secured alternative access on new routes that were less burdensome to the private landowners (and which were made possible by the landowners' donated easements). Hockelberg dec., ¶3. In contrast to *Kettle Range*, reversing the agency action here will not resurrect any public easement along either trail, because no such easement existed in the first place. For the same reason, reversing the USFS action will not "destroy the legal entitlements of the absent parties." 150 F.3d at 1087.

## C.    The landowners assert no interest impeded by this lawsuit.

The second prong of the "necessary party" analysis under Rule 19 asks whether the absent party "claims an interest relating to the subject of the action." *Ward v. Apple*, 791 F.3d 1041, 1048 (9th Cir. 2015). As an initial matter, Plaintiffs

offer no evidence that M Hanging Lazy 3 or Henry Guth claim anything in connection with this case. The brief supporting Plaintiffs' motion does not suggest the landowners have been contacted or are even aware of these proceedings. Thus, the Court is in a poor position to assess what the landowners claim (if anything), and how it factors into the "necessary party" analysis. Plaintiffs have failed to carry their burden in this regard.

The interest claimed by a "necessary party" must be more than a financial stake. *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986). The interest must be more than speculation about a future event. *McLaughlin v. Int'l Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir. 1988). Generally, there is no legally protected interest in particular agency procedures. *N. Alaska*, 803 F.2d at 469. Here, Plaintiffs seek an order overturning USFS's decision approving the Porcupine-Ibex reroute. Plaintiffs assume such an order would "void the private landowners' recently acquired property interests in the public trails." Doc. 36 at 9. But Plaintiffs are mistaken, and their assumptions about the landowners' interests are based on speculation about a future event.

As set forth above, the private landowners' ownership of the land under the Porcupine Lowline and North Fork Elk Creek Trails was not a product of any agency action. The landowners possessed fee title to their respective properties by virtue of their recorded transfers. The agency's Releases of Easement Interest did

not transfer title to any property interest, it merely extinguished any potential

USFS claim to a prescriptive easement.  Even if reversing the 2009 Road and

Trails decision would invalidate the Releases (it would not [*see* supra §I(B)]), such

action still would not impact the landowners' title.  Rather, the landowners' title

would only be impacted when and if the United States or some other group

(including private litigants like Plaintiffs[3]) filed suit to perfect the claimed

prescriptive use right, and prevailed in such a suit.  Plaintiffs lack any basis to

assert such action is imminent or even likely,[4] and lack any basis to predict victory

in such action.  Thus, the interest Plaintiffs seek to ascribe to the private

landowners (voiding their property interest [Doc. 36 at 9]) is actually nothing more

than "speculation about a future event."  *McLaughlin*, 847 F.2d at 621.  Such

interest is insufficient to support joinder under Rule 19.

## II. Joinder is not feasible.

If a party is "necessary," the second step in the Rule 19 analysis asks

whether is it feasible to order that the absent party be joined.  *Salt River Project*,

672 F.3d at 1197.  Rule 19(a) sets forth three circumstances in which joinder is not

feasible: (1) when venue is improper, (2) when the absentee is not subject to

---

[3] Montana law recognizes the right of private organizations like Plaintiffs' to pursue prescriptive easements across private property on behalf of the public.  *See*, e.g., *Pub. Lands Access Ass'n v. Boone & Crockett Club Found.*, 259 Mont. 279, 282 (1993).

[4] Such action would be contraindicated under USFS policy where alternative access can be secured with landowner cooperation.  Forest Service Manual 5460.3.

personal jurisdiction, and (3) when joinder would destroy subject matter jurisdiction. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Here, the absentee landowners cannot be joined because none of the statutes provide a right of action against private parties.

As noted above (§I(B)), Plaintiffs advance claims in the amended complaint under FACA, NEPA, NFMA, and FLPMA. All of these substantive statutes are directed at the federal government, imposing requirements on the manner in which it convenes advisory committees, conducts environmental reviews, manages National Forest land, and manages other federal lands. None of these statutes create or encompass a right of action against private parties. *See*, e.g., *Sierra Nevada Forest Prot. Campaign v. Tippin*, No. CIV.S-06-00351FCDDAD, 2006 WL 1319397, at *5 (E.D. Cal. May 15, 2006) ("private parties are not proper defendants in actions to compel compliance with NEPA or NFMA"); *Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt.*, No. CV 03-1017-JE, 2004 WL 7333200, at *1 (D. Or. Mar. 22, 2004) (private parties lack protectable interest in FLPMA compliance actions).

Concordantly, in *Kettle Range*, the Ninth Circuit held "federal courts generally have no basis for enjoining private parties under NEPA." 150 F.3d at 1086. The court noted that "Nonfederal defendants may be enjoined if 'federal and [nonfederal] projects are sufficiently interrelated to constitute a single federal

action for NEPA purposes.'"  150 F.3d at 1086, quoting *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (brackets in original).  Here, as detailed above (§I(B)), the private landowners have not engaged in a "project" in any sense.  Even to the extent the landowners have donated easements, or received USFS releases of easement claims, those actions are not "sufficiently interrelated to constitute a single federal action for NEPA purposes."  USFS accepted easement donations, and released easement claims, pursuant to its inherent authority.  Hockelberg dec., ¶¶2, 4.  The fact that those donations and releases were consistent with two previous NEPA-approved federal actions (i.e., the 2006 Gallatin Travel Management Plan and the 2009 Road and Trails decision) does not make them *a part* of those actions.

Plaintiffs argue the "exchange of easement rights is directly related to and part of the federal project," (Doc. 36 at 13), yet offer no analysis to support the assertion.  First, as set forth above, there has never been an "exchange of easement rights."  Moreover, the analysis of whether a non-federal action can be analyzed in a federal court under NEPA must, of necessity, focus on a "non-federal action."  Here, the only "non-federal action" is the landowners' easement donations.  A "'careful analysis of all facts and circumstances surrounding the relationship'" between the 2009 Road and Trails decision and the "nonfederal action" reveals the donations were non-federal.  *Enos v. Marsh*, 769 F.2d 1363, 1371 (9th Cir. 1985),

abrogated on other grounds by *Cottonwood Envtl. Law Center v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015).

The donations received no "federal funding," and the federal government did not analyze the environmental effects of the easement donations as a "secondary effect of the" 2009 Road and Trails decision (indeed, the donations did not exist until 10 years after the Road and Trails decision). *Enos*, 769 F.2d at 1371-72. The two actions are also not "functionally interdependent" such that they could be categorized as parts of a "single federal action." *Id*. at 1371 (state and federal construction of different segments of the same highway was "functionally interdependent"). While the donations were consistent with Porcupine Ibex, they are also consistent with the 2006 Gallatin Travel Plan objective of resolving public access disputes in the Crazy Mountains. Hockelberg dec., ¶8.

Because the private landowners have taken no action that could be federalized under NEPA or any other statute, the general rule applies, and no federal claims can be interposed against non-federal entities. Joinder of the private landowners is therefore infeasible.

## III. Supplemental pleading will prejudice the federal defendants.

Plaintiffs style their motion as one seeking to supplement the pleadings under Fed. R. Civ. P. 15(d). Doc. 36 at 6. They note that such motions may be granted "absent prejudice to the defendant." *Id*., citing *Keith v. Volpe*, 858 F.2d

467, 475 (9th Cir. 1988). Such prejudice will exist in this case if Plaintiffs are again allowed to revise their complaint.

This case has already been pending for nearly a year. Doc. 1 (June 10, 2019). The parties engaged in extensive briefing of Plaintiffs' original complaint, through lengthy briefs on preliminary injunction (Docs. 6-10) and on the United States' motion to dismiss (Docs. 13-14, 19). After preliminary injunction was denied, and in response to the motion to dismiss, Plaintiffs amended their complaint (Doc. 18), rewriting most of the 114-page document, adding new claims, and jettisoning many of the old claims. The United States answered that revised complaint (Doc. 20), negotiated a case management schedule (Doc. 23), and expedited preparation of an extensive administrative record in order to meet summary judgment briefing deadlines (Doc. 24).

Plaintiffs' proposed supplemental pleading will invalidate all of the substantial work detailed above, and once again return the parties to the beginning of the case management process, on the eve of summary judgment. This monumental waste of time and money, in itself, is prejudicial to the defendant. *Cooper v. Sely*, No. 1:11-CV-00544-AWI, 2012 WL 5364502, at *2 (E.D. Cal. Oct. 30, 2012). Moreover, as previously briefed in this case, USFS has endeavored to resolve the merits in this dispute before the next "work season" in the Crazy Mountains, when USFS can implement Phase II of the Porcupine-Ibex project, and

other possible work.  Doc. 30 at 28.  Plaintiffs' proposed supplemental pleading will delay resolution of the merits, possibly delaying trail work and public access while saddling this Court with an unnecessary preliminary injunction.

Plaintiffs fail to establish any "new events" that warrant such a delay.  The private landowners are not "necessary parties" because the Court can award complete relief without their participation.  Indeed, the landowner donations and United States' releases have no bearing on the adequacy and validity of the 2009 Road and Trails decision.  The landowners also claim no interest that can be impeded by these proceedings in that a decision overturning the 2009 decision will not invalidate either the donations or the releases.  Further, joinder of the private landowners is not feasible.

Accordingly, because of the prejudice to the defendants, Plaintiffs' motion to supplement the pleadings should be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs have failed to sustain their burden of proof under Rule 19, and their motion should be denied.

**DATED** this 3rd day of April, 2020.

KURT G. ALME
United States Attorney


/s/ MARK STEGER SMITH
Assistant U.S. Attorney
Attorney for Federal Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 4,502 words, excluding the caption, tables, and certificates of service and compliance.

**DATED** this 3rd day of April, 2020.

/s/ MARK STEGER SMITH
Assistant U.S. Attorney
Attorney for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2020, a copy of the foregoing document was served on the following person by the following means.

_1-3_   CM/ECF
_____   Hand Delivery
_____   U.S. Mail
_____   Overnight Delivery Service
_____   Fax
_____   E-Mail

1.  Clerk of Court

2.  Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 324-8011 – phone
bishop@westernlaw.org
Attorney for Plaintiffs

3.  Michael A. Kauffman
Patricia Klanke
DRAKE LAW FIRM, P.C.
111 North Last Chance Gulch
Suite 3J, Arcade Building
Helena, Montana 59601
michael@drakemt.com
patricia@drakemt.com
Attorneys for Plaintiffs

/s/ MARK STEGER SMITH
Assistant U.S. Attorney
Attorney for Federal Defendants