IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, a public land organization, *et al.*, | CV 19-66-BLG-SPW-TJC |
| Plaintiffs, | **ORDER** |
| vs. | |
| MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest, *et al.*, | |
| Defendants. | |

Plaintiffs Friends of the Crazy Mountains *et al* brought this action for

declaratory and injunctive relief against Federal Defendants Mary Erickson, in her

official capacity as Forest Supervisor for the Custer Gallatin National Forest, U.S.

Forest Service ("USFS"); Leanne Marten, in her official capacity as Regional

Forester, Region One, USFS; Vicki Christiansen, in her official capacity as chief of

the USFS; the USFS, a federal agency; and the U.S. Department of Agriculture, a

federal department (collectively, "Defendants").  (Doc. 18.)  Plaintiffs challenge

the USFS's decision to change public access on four trails in the Crazy Mountains

in south-central Montana under the Administrative Procedures Act ("APA"), 5

U.S.C. § 701 *et seq.*  Plaintiffs allege violations of the Federal Advisory

Committee Act ("FACA"), 5 U.S.C. app 2 § 1 *et seq.*; the National Environmental

Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*; the National Forest Management

Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*; the Federal Land Policy Management

Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*  (*Id.* at 2.)

Before the Court is Plaintiffs' Motion for a Complete Administrative

Record, to Strike Post-Decision Documents, and to Stay Summary Judgment

Briefing.  (Doc. 28.)  Defendants filed a response brief (Doc. 30) and Plaintiffs

replied.  (Doc. 31).

Plaintiffs additionally filed a Notice of Supplemental Authority in support of

the motion based on a recent decision in the U.S. District Court for the District of

Montana, *Ksanka Kupaqa Xa'lcin et al v. U.S. Fish and Wildlife Service et al*, CV-

19-20-DWM (Doc. 64) (D. Mont. Mar. 9, 2020).  (*See* Doc. 32.)  Defendants

requested leave to file a response brief; the request is still outstanding and will be

addressed herein.  (Doc. 37.)

The remaining matters are fully briefed and ripe for review.  For the

following reasons, Plaintiffs' motion (Doc. 28) is granted in part and denied in

part, and Defendants' motion (Doc. 33) is denied.

## I.    Procedural Background

Plaintiffs filed suit challenging alleged management decisions regarding

Custer – Gallatin National Forest trails located on the west and east sides of the

Crazy Mountains.  (Doc. 18.)  The parties subsequently filed a Joint Management

Plan, which expressed the parties' agreement that the case would be resolved through motions for summary judgment following submission of the administrative record.  (Doc. 23.)  Defendants agreed to provide Plaintiffs with a bates-numbered, hyperlinked, indexed, and searchable administrative record on or before December 16, 2019.  (*Id.* at 3.)  The parties further agreed that any outstanding issues or objections regarding the administrative record were first to be resolved between the parties and, in the event the effort was unsuccessful, Plaintiffs would file any objections with the Court.  (*Id.*)

Defendants timely provided the administrative record to Plaintiffs and filed the same with the Court.  (Doc. 24.)  But issues relating to the record arose after its filing.  (*See* Doc. 31-1 at 2-4.)  When the parties could not resolve Plaintiffs' issues with the administrative record, Plaintiffs timely filed the instant motion to complete the administrative record, which included a request to stay briefing. (Doc. 28.)

## II.    **Legal Standard**

This matter involves APA review of USFS actions relating to the four Crazy Mountain trails under FACA, NEPA, NFMA, and FLPMA.  Because these laws do not contain a separate provision for judicial review, courts review an agency's compliance with the laws under the APA.  5 U.S.C. § 706(2)(A).  Judicial review of administrative agency decisions under the APA is based on the administrative

record compiled by the agency, not on independent fact-finding by the district court. *Camp v. Pitts,* 411 U.S. 138, 142 (1973). As the parties have agreed, the Court will resolve the underlying APA challenge via summary judgment. *See Nw. Motorcycle Ass'n v. United States Dep't Agric.,* 18 F.3d 1468, 1472 (9th Cir. 1994). In such a summary judgment proceeding, the function of a district court is to determine whether, as a matter of law, the evidence in the administrative record permitted the agency to make its decision. *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 90 (D.D.C. 2006). Thus, a complete and intact record is crucial to the Court's disposition of the matter under Fed. R. Civ. P. 56.

The APA requires the reviewing court to examine "the whole record." 5 U.S.C. § 706; *Indigenous Envtl. Network v. United States Dep't of State*, 2018 WL 1796217, at *2 (D. Mont. Apr. 16, 2018). "The whole record includes 'all documents and material directly or indirectly considered by agency decision-makers and ... evidence contrary to the agency's position.'" *Id.* (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (alteration original)). An agency's designated administrative record is entitled to a presumption of completeness. *Id.* This presumption is rebuttable, however, if a plaintiff provides clear evidence to the contrary by identifying omitted materials with "sufficient specificity" and by providing "reasonable, non-speculative grounds for the belief

that the alleged documents were considered by the agency and not included in the record"; or by showing the agency "applied the wrong standard in compiling the record." *Id.*

## III. Discussion

Plaintiffs challenge the USFS's decisions regarding four National Forest Service trails in the Crazy Mountains: two on the westside of the range and two on the eastside. (Doc. 29 at 10.)

On the westside, Plaintiffs challenge a decision by the USFS to approve the Porcupine-Ibex project ("Ibex project"). (*Id.*) According to Plaintiffs, this project involves the exchange of easement interests with private landowners, which impacts the public's right to access certain trails in the Crazy Mountains. (*Id.*) Plaintiffs allege the decision was approved on August 15, 2018. (*Id.*)

As to the eastside, Plaintiffs allege that the USFS decided to change its policy with respect to two trails in 2017. (*Id.* at 11.) Prior to that time, Plaintiffs allege the USFS actively managed the trails and advised the public that they did not need permission from private landowners to access them. (*Id.*) In January 2017, however, Plaintiffs maintain that the USFS decided to change its policy, to discourage public access to the trails, and prohibited work or maintenance on them. (*Id.* at 11-12.)

5

Defendants claim, on the other hand, that the final agency action underpinning the westside Ibex project was a 2009 Road and Trails Environmental Assessment, Decision Notice, and Finding of No Significant Impact. (Doc. 30 at 14.) As to the eastside trails, Defendants contend that there was no decision to change its policy 2017. (*Id.*) Thus, there was no discrete agency action taken, let alone a final agency action amendable to review under the APA. (*Id.*)

Plaintiffs advance several arguments in support of their motion. First, Plaintiffs argue that the administrative record the USFS provided is incomplete. (Doc. 29 at 16.) Second, Plaintiffs assert that the USFS failed to provide a privilege log. (*Id.* at 31.) Third, Plaintiffs also move to strike certain post-decisional documents from the record. (*Id.* at 37.) Last, Plaintiffs request briefing be stayed pending resolution of the instant dispute over the administrative record. (*Id.* at 39.)

In addition to its opposition to Plaintiffs' arguments, Defendants move the Court for leave to file a response (Doc. 33) to Plaintiffs' Notice of Supplemental Authority (Doc. 32). The Court will first address this motion, then turn its attention to the merits of Plaintiffs' motion and the parties' arguments.

## A.      Defendants' Motion for Leave to File a Response

In the Notice of Supplemental Authority, Plaintiffs proffered *Ksanka Kupaqa Xa'lcin et al v. U.S. Fish and Wildlife Service et al*, CV-19-20-DVM (Doc.

6

64) (D. Mont. Mar. 9, 2020), as new, pertinent authority regarding their position on the instant motion.  (Doc. 32 at 2.)  In *Ksanka*, District Judge Donald W. Molloy ruled that the presumption of completeness of the administrative record is rebuttable by an "admission that deliberative materials were omitted."  *Ksanka*, CV-19-20-DVM, (Doc. 64 at 4).  This rule is applicable when the internal deliberative process is at issue.  See *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993).  Internal deliberate processes are part of the "universe of materials 'directly or indirectly considered by agency decision-makers.'"  *Ctr. for Food Safety v. Vilsack*, 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017) (quoting *Inst. for Fisheries Res. v. Burwell*, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017)).  "It is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision."  *Inst. for Fisheries Res.*, 2017 WL 89003, at *1.

Defendants argue that *Ksanka* is not "pertinent and significant" because the USFS decision-maker here averred that no deliberative documents exist concerning the disputed agency action.  (Doc. 34 at 2.)  Defendants argue that the USFS did not consider deliberative documents, and that even if the Court were to order the Defendants to provide a privilege log, "such a privilege log would be empty in this case."  (Doc. 34 at 3.)

Defendants filed a brief in support of their motion (Doc. 34), Plaintiffs responded (Doc. 37), and Defendants filed a reply (Doc. 38).  The parties' briefs adequately set forth their respective positions on this issue; further briefing is not warranted.  The Court is aware of Judge Molloy's ruling in *Ksanka* and will consider the decision, as appropriate.  Thus, Defendants' motion to file a response (Doc. 33) is denied.

**B.    Motion for Complete Record**

Plaintiffs argue that the USFS's submission of truncated materials is at odds with Ninth Circuit precedent requiring a broad body of documents to be included in the administrative record.  (Doc. 29 at 17, 20, citing to *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).)  Specifically, Plaintiffs assert the following are missing from the administrative record: Gallatin Travel Plan documents; Ibex project communications; communications relating to the policy change regarding the two eastside trails; communications between the Crazy Mountain Working Group, landowners, and other organizations; and railroad deeds conveying title to private landowners.  (*Id.* at 21, 22, 24, 29, and 31.)  Last, Plaintiffs argue that the USFS failed to provide a privilege log.  (*Id.* at 31.)

Defendants argue that the USFS has provided all documents pertaining to the disputed trails and has not limited or excluded any documents from the administrative record for judicial review.  (Doc. 30 at 16.)

8

The Court will address each category of documentation in turn.

### 1.    Gallatin Travel Plan Documents

Plaintiffs argue that the USFS's failure to include the 2006 Gallatin Travel Plan's administrative record in the instant administrative record is a major oversight considering the USFS relied upon the Travel Plan, its EIS, and the 2009 Roads and Trails EA, which implemented the Travel Plan, for the current management decisions at issue.  (Doc. 29 at 21.)  Plaintiffs concede, however, that "including the entire, voluminous record from the travel plan is likely unnecessary and overly burdensome," but that key documents should be included.  (*Id.*) Plaintiffs itemize the following key documents for inclusion: (1) a complete copy of the final Environmental Impact Statement ("EIS") with appendices (not just excerpts); (2) the final Record of Decision (not just the cover letter); (3) the USFS's Detailed Description of the Record of Decision describing the final Travel Plan decision and guidance for how the four trails at issue are to be managed; (4) all internal and external documents and materials pertaining to the four trails at issue, and the USFS's final decision to depict and manage them as National Forest System Trails.  (*Id.* at 21-22.)  Plaintiffs also request all relevant landowner comments, objections, and appeals expressly challenging USFS's depiction and management of the four trails at issue, and the USFS's responses to such (only summaries were provided in the current record).  (*Id.* at 22.)

Defendants assert that all relevant portions of the Gallatin Travel Plan documents are already included in the administrative record. (Docs. 30 at 21-22; 30-8 at ¶ 3.) Defendants also note that Plaintiffs were provided this information through multiple Freedom of Information Act ("FOIA") requests. (Doc. 30 at 16-18.)

### a.   2006 Travel Plan Final EIS and Appendices

Given that the 2006 Travel Plan Final EIS is a matter of public record and easily accessible,[1] Plaintiffs had the capability to pinpoint any portion thereof that they believe informed the USFS decisions but was omitted. Plaintiffs have failed to do so and have not met their burden to provide clear evidence with sufficient specificity that any omitted portions of the 2006 Travel Plan Final EIS were considered by the agency and not included in the record.

Therefore, Plaintiffs' motion as to the entirety of this document is denied.

### b.   2006 Travel Plan Record of Decision

The USFS has agreed to provide the final 2006 Record of Decision and landowner appeals pertaining to the former Lowline Trail. (Docs. 30 at 19; 30-7 at 9.) Thus, the Administrative Record will be supplemented to reflect this stipulation; Plaintiffs' motion as to this document is granted.

---

[1] *See e.g.* https://www.fs.usda.gov/detail/custergallatin/landmanagement/planning/?cid=stelprdb5130474 (last visited 9/28/20).

### c.      Detailed Description of the Record of Decision

Plaintiffs have specifically identified that the Detailed Description of the Record of Decision is missing from the Administrative Record.  (Doc. 29 at 21-22.)  The document appears to explain the final decision for the Gallatin National Forest Travel Management Plan.  (*See* Doc. 29-5.)  It is unclear, however, how the USFS relied upon the document in consideration of the present decisions at issue.

The citation to which Plaintiffs rely to show the USFS relied on this document (A.R. 627-628) does not list the Detailed Description of the Record of Decision as being relied upon for the Porcupine Lowline Trail relocation, but instead refers to the "2006 Record of Decision, Page 53," as well as other materials.  (Doc. 29 at 21; A.R. 627-28.)  With no explanation as to how the USFS relied upon this document, Plaintiffs have not provided "reasonable, non-speculative grounds" for the belief that the alleged document was considered by the USFS in the present decision.  *Indigenous Envtl. Network*, 2018 WL 1796217, at *2.

Therefore, Plaintiffs motion as to this document is denied.

### d.      Internal and External Documents and Materials

Plaintiffs request "all internal and external documents and materials pertaining to the four trails and the Service's final decision to depict and manage them as National Forest System trails."  (Doc. 29 at 22.)  Defendants argue that it

is "baseless speculation that the USFS considered additional 'internal materials.'"
(Doc. 30 at 22.)

In *Indigenous Envt'l. Network*, the plaintiffs successfully rebutted the presumption of completeness by pointing to specific documents, including a State Department biological assessment, a Fish Wildlife Service biological opinion, and a specific comment letter from the U.S. Environmental Protection Agency criticizing the sufficiency of the EIS at issue.  2018 WL 1796217, at *2-3. Similarly, in *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, the court noted that plaintiffs had rebutted the presumption "with *a strong showing* that the Senate Report and the supporting documents were at a minimum indirectly considered."  (Emphasis added) 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006). Again, specific documents were identified as omitted and some showing was given that they were indirectly considered.

Here, Plaintiffs desire for "all internal and external documents" lacks any sort of specificity that the courts in *Indigenous Envt'l. Network* or *Lockyer* relied upon to find the presumption rebutted.

Therefore, Plaintiffs cast too wide of a net that lacks specificity, and their motion as to this request is denied.

/ / /

12

### e.    Landowner Comments, Objections, and Appeals

Plaintiffs seek to add "private landowners' comments, objections, and appeals expressly challenging the Service's depiction and management of the four trails at issue here," as well as "public, National Forest System trails and the Service's responses." (Doc. 29 at 22.) Plaintiffs cite to the record – A.R. 3185 – as an example of the insufficiency of USFS's responses. (*Id.*)

Defendants do not directly address Plaintiffs' argument but appear to lump the request for "appeals" with its characterization of "all internal and external documents and materials" as "baseless speculation" and falling short of the requisite "clear evidence" burden. (Doc. 30 at 22.)

In reviewing Plaintiffs' citation and companion pages, it appears the record contains public comments and the USFS responses. (*See* A.R. 2678 – 3694.) Plaintiffs do not explain how these comments and responses are insufficient, and thus have not met their burden to show the record is incomplete.

Without an exhaustive search of the above citation or the entire record, the Court has no way to tell whether the record's comment section includes or excludes private landowners' comments, objections, and appeals. Plaintiffs do not explain with sufficient specificity what is missing and provide no direction in briefing; the Court is not satisfied that Plaintiffs have met their burden given the amount of material USFS provided Plaintiffs via FOIA requests.

13

Therefore, Plaintiffs' motion as to landowner comments, objections and appeals is denied.

### 2.    Ibex Project Communications

Plaintiffs assert that the record is devoid of internal or external materials pertaining to the exchange of easement interests related to the Ibex project.  (Doc. 29 at 22-23.)  Specifically, Plaintiffs argue there are no materials detailing the easement exchange: conference and meeting notes and materials; feasibility analyses addressing various environmental, technical, and political issues; or communications discussing the exchange.  (*Id.* at 23.)  In addition to a NEPA-based argument, Plaintiffs cite to the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1716(d)(1), which requires appraisal of lands or interests involved in the exchange, asserting any such appraisal is vacant from the record. (*Id.*)  Plaintiffs also assert that the solicitation bid and contract for new trail construction is missing.  (*Id.*)

Defendants admit that the record excludes documents regarding the easement exchange and § 1716(d)(1) valuation, asserting that there was no "exchange of easement interests" but a landowner donation instead.  (Doc. 30 at 22.)  Defendants argue next that Plaintiffs have not met their burden to show "conferences and meetings with landowners" produced documents relevant to the rerouting of the Ibex trail project or were considered by the decision-maker.  (*Id.* at

14

23.)  In support, Defendants proffer the declaration of Mary Erickson, who avers that landowner meeting notes are not part of the 2009 Roads and Trails EA because "I did not consider them in making my 2009 Decision."  (*Id*.; Doc. 30-8 at ¶ 4.)  Last, Defendants dispute Plaintiffs' proffered date of the final action as 2018, arguing that the decision was made in 2009, and further assert that landowner communications and trail reroute negotiations were *post hoc* to that 2009 decision and not considered by decision-makers. (Doc. 30 at 23.)

The Court finds it unnecessary to entertain the parties' NEPA-based arguments because Plaintiffs have asserted a claim under FLPMA.  (Doc. 18 at ¶¶ 126-134.)  The claim relates to the exchange of easement interests involved in the trail reroute and implicates valuation and appraisal requirements under 43 U.S.C. § 1716(d)(1).  (Doc. 29 at 23.)  While the Court takes no position on the merits of Plaintiffs' FLPMA valuation claim,[2] the transfer of property interests implicates not only a land exchange, but the consummation of separate decision-making unrelated to the NEPA-based 2009 EA under FLPMA.

---

[2] *See* 43 U.S.C. § 1716(d)(1) ("No later than ninety days after entering into an agreement to initiate an exchange of land or interests … the Secretary concerned and other party or parties involved in the exchange shall arrange for appraisal"); 36 C.F.R. § 254.2 ("Acquisition means the attainment of lands or interests in lands by the Secretary, acting on behalf of the United States, by exchange, purchase, *donation* …" (Emphasis added.)

"Agency action" is defined as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C.A. § 551(13). "Action" is meant "to cover comprehensively every manner in which an agency may exercise its power." *Idaho Wool Growers Assoc. v. Schafer*, 637 F. Supp. 2d 868, 872 (D. Idaho 2009), *order clarified*, No. CV 08-394-S-BLW, 2009 WL 3806371 (D. Idaho Nov. 9, 2009). Section 704 of the APA requires agency actions either be made reviewable by statute or be considered a "final" agency action before subject to judicial review. 5 U.S.C.A. § 704. Two conditions must be satisfied for an agency action to be considered "final." *San Francisco Herring*, 946 F.3d at 577 (citing *U.S. Army Corps. of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (internal quotations, citations omitted)). First, the action must mark the consummation of the agency's decision-making process, not tentative or interlocutory. *Id.* Second, the action must determine rights or obligations, "or from which legal consequences will flow." *Id.*

Here, while the EA may have permitted the rerouting of the trail in context of environmental impacts, FLPMA ensures that the disposal of public lands, which includes *any* interest in land, "serve the national interest." 43 U.S.C. §§ 1701(a)(1), 1702(e). Plaintiffs assert that valuation documents and communications relating to the underlying disposal of easement interests are missing from the record. (Doc. 29 at 23.) In support, Plaintiffs proffer evidence to

16

show the "Release of Easement Interests" and multiple new trail easement
documents are included in the record, while materials related to them were
omitted. (*Id.*, FN3; *see* A.R. 4996 – 5021.) In response to Defendants' argument
that an "exchange" never occurred, hence § 1716 does not apply, Plaintiffs point
out that the USFS explicitly wrote in its "Frequently Asked Questions – Proposed
Porcupine Ibex Trail" information sheet that "the Forest Service *will secure all
required easements* for the construction of the new trail <u>and</u> *relinquish interest* in
portions of the current Porcupine Lowline Trail (#267) and Elk Creek Trail
(#195)." (Emphasis added) (Doc. 31 at 18, citing A.R. 424.) The conjunctive here
supports that an exchange may have occurred or at least a disposal of federal
interests in a public easement. Furthermore, the Court notes that the USFS's
"Release of Easement Interests" and the new trail easements granted by Ned Eric
Zimmerman were recorded on the same day, September 20, 2019, with the Park
County, Montana, Clerk and Recorder, making a land transaction or acquisition
plausible. (A.R. 4999-5000, 5002-5004, 5012-5014.)

Aside from the legally conclusive nature of Defendants' argument that no
exchange occurred, the documents cited by Plaintiffs show non-speculative
grounds for believing information related to the execution of easements and related
land interests was considered by the USFS but omitted from the record, which
sufficiently rebuts the presumption of completeness. The same FAQ sheet, for

17

example, states that "[t]his proposal *is a result* of these conversations and ongoing efforts between the Forest Service, landowners, access advocates and recreationists …" (Emphasis added) (A.R. 424.)  If the proposal is the result of conversations and ongoing efforts – negotiations – it follows that the final decision to execute the agreements on September 20, 2019, did as well, even if modified from the proposal.

In *Indigenous Envt'l Network*, the plaintiffs successfully rebutted the presumption of completeness by pointing out that despite more than fifteen federal agencies being involved in the review of the Keystone XL Pipeline, the record contained very few communications between them.  2018 WL 1796217, at *2-3. Here, Plaintiffs' argument is far less speculative, given their proffered evidence, and requires no inference that communications exist, as Defendants' own materials suggest the land deal proposal, and thus its execution, "is the result of these conversations and ongoing efforts."  (A.R. 424.)  Last, but certainly not least, Defendants state they excluded the materials under the theory that the NEPA-based decision occurred in 2009.  (Doc. 30 at 23.)  But it appears a final agency action may have been executed relating to the relocation of trails after 2009, which plausibly triggers the requirements for land disposition under FLPMA and requires the filing of a complete administrative record for the Court to review.

Plaintiffs final argument involves the lack of materials relating to the solicitation to bid and contract for new trail construction.  (Doc. 29 at 24.)  While Plaintiffs clearly identify the missing documents, they do not advance any argument tying the solicitation for bidding or contracting for construction of the new trails to a final agency action, such as an awarding notice, for which judicial review is available, much less identify which cause of action and associated federal law was allegedly violated.  Indeed, Plaintiffs entire argument is one sentence long simply identifying the missing documents.  (*See* Doc. 29 at 24.)  Thus, the Court finds Plaintiffs have not met their burden as to the solicitation bid and contract for new trail construction.

The Court thus finds external communications with landowners who are negotiating with the USFS over the re-routing of trails are in the universe of materials that ought to comprise the administrative record.  *Indigenous Envt'l Network*, at \*3.  Therefore, Plaintiffs' motion as it pertains to the Ibex project will be granted insofar as to produce materials directly or indirectly considered that relate to the easement exchange, including conference and meeting notes and materials; internal and external communications; and, given the lack of valuation or appraisal materials, any feasibility analyses addressing these land interests.

/ / /

/ / /

19

### 3.     Eastside Trails Policy Change Communications

Plaintiffs argue that the record lacks any documentation relating to an alleged policy shift relating to public use and access of the two eastside trails. (Doc. 29 at 24.)  In support, Plaintiffs proffer FOIA materials as examples of missing materials from the record.  (*See* Docs 29-6; 29-12.)

Defendants argue that no shift in access policy has occurred and current policy remains spelled out in Forest Service Manual § 5460.3.  (Doc. 30 at 24, 25.) Thus, Defendants assert that no final agency action has occurred as required by the APA.  (*Id.* at 26.)  Defendants do, however, acknowledge the omitted materials were provided to Plaintiffs in FOIA requests and will not object to their use at summary judgment.  (*Id.* at 27.)

While Defendants acknowledge that documents germane to eastside access issues and policy have been omitted from the administrative record, the Court finds Plaintiffs have failed to show at this stage of proceedings that a final agency action has occurred despite having obtained "thousands of FOIA documents."  (Doc. 29 at 26, FN4.)  Plaintiffs proffer multiple examples of policy statements but show no plausible final decision effectuating a new "hands off" policy deferring to landowner-controlled access for the purposes of this motion.  (*Id.* at 25-26; *cf.* Docs 29-7; 29-9; 29-12 at 11.)  Change may well be afoot to eastside trail access policy, but general statements acknowledging agency collaboration with

landowners and other interested parties is not a final agency action.  See *Colorado Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1174 (10th Cir. 2000) (agreement between Interior Department and State of Colorado concerning management programs does not constitute final agency action); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-93, FN2 (1990).  Plaintiffs are free to address the issue of a final agency action relating to the eastside access policy on the merits at later stages of proceedings.

Plaintiffs bring this action alternatively under 5 U.S.C. § 706(1).  (*See e.g.* Doc. 1 ¶¶ 310, 321, 335, 348, 363.)  Section 706(1) of the APA provides for judicial review of agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).  Plaintiffs agree that in § 706(1) cases "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record."  (Doc. 29 at 17, quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).)  Nevertheless, Plaintiffs assert that because of this, "the Ninth Circuit 'allows a broader temporal consideration of what comprises the administrative record' in 706(1) cases."  (Doc. 31 at 11, citing *Alliance for the Wild Rockies v. Marten*, 2016 WL 7174671 at *1 (D. Mont. Oct. 3, 2016).)

In *Alliance for the Wild Rockies v. Marten*, Judge Molloy clarified that "[f]ailure-to-act claims . . . 'are not manifestations of a precedential preference for

21

unlimited discovery,'" and are limited to "documents the agency considered directly or indirectly that fall under a record review exception."  2016 WL 7174671 at *1 (quoting *Seattle Audubon Soc'y v. Norton*, 2006 WL 1518895, at *3 (W.D. Wash. May 25, 2006)).  Judge Molloy then iterated the "four narrowly construed circumstances" in which a court may inquire outside the record: when necessary to explain agency inaction; when it appears the agency decision-maker relied on materials or documents the agency did not include in the administrative record; when necessary to explain technical terms or complex subject matter involved in the agency action; or when the plaintiff makes a strong showing of bad faith or improper behavior.  *Id.* (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436-38 (9th Cir. 1988), *as amended by* 867 F.2d 1244 (9th Cir. 1989) (internal quotations omitted)).

Here, Plaintiffs have advanced no particular circumstance or argument in support, but instead argue that "if a complete record is produced, it will reveal there was a 'final agency' decision in the summer of 2017 to change its policy following inquiries and complaints from landowners, Senator Daines, and Secretary Purdue."  (Doc. 31 at 10-11.)

While Plaintiffs cite to *Alliance for the Wild Rockies,* they neglect to provide the subsequent analysis the case required.  Their request sounds precisely like the "unlimited discovery" that Judge Molloy forewarned against.  *Alliance for the Wild*

*Rockies*, 2016 WL 7174671 at \*1.  Therefore, Plaintiffs motion pertaining to an eastside policy change is denied.

### 4.   Crazy Mountain Working Group Communications

Plaintiffs argue communications between the Crazy Mountain Working Group, landowners, and other organizations were part of the USFS's decision to approve the Ibex project, but few emails and no materials appear in the record. (Doc. 29 at 29-30.)  Plaintiffs assert a cause of action under the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 § 1 *et seq*, arguing "none of the materials, records, documents, minutes, studies, data, maps, or working papers are included in the record."  (Doc. 29 at 29-30.)

The Court need not address Plaintiffs' FACA argument because the Court previously determined Defendants must produce communications – internal or external – as they directly or indirectly relate to Ibex project negotiations and executed easements.  This should include any communications between USFS and the Crazy Mountain Working Group, landowners, or other organizations who were part of the "conversations and ongoing efforts between the Forest Service, landowners, access advocates and recreationists …" that resulted in the Ibex project final land deal.  (*See* A.R. 424.)  Therefore, to the extent that the USFS is in possession of Crazy Mountain Working Group materials and communications relating to the Ibex project, Plaintiffs' motion is granted.

23

### 5.   Railroad Deeds

Plaintiffs argue that Defendants failed to disclose the Northern Pacific Railway deeds conveyed to landowners that may be implicated in the Ibex project because the railroad deeds reserved an easement in the public for public roads existing on the premises.  (Doc. 29 at 31.)  Plaintiffs argue that the original deed from the United States conveying interest to the Northern Pacific was included (A.R. 4764) but subsequent deeds were omitted.  (*Id.*)

Defendants argue that the USFS decision-maker did not directly or indirectly consider these documents in approving the Porcupine-Ibex reroute.  (Doc. 30 at 28.)  Defendants proffer the declaration of Mary Erickson for the proposition that she "did not consider them directly or indirectly in making my 2009 Roads and Trails decision."  (Doc. 30-8 at ¶ 8.)

The Court finds this to be an acknowledgement that the railroad deeds exist but were omitted from the administrative record.  It would also certainly appear that any decision to reroute a trail would have included consideration of the encumbrances on those lands and would have been within the "universe" of materials directly or indirectly considered.  Further, Erickson states that she did not use those deeds for her NEPA-based 2009 EA decision, but makes no such declaration regarding the final execution of the Ibex easements.  *See* 36 C.F.R. § 254.3(h).

24

Therefore, Plaintiffs' motion as to the Northern Pacific Railway deeds conveying lands to landowners is granted.

### 6.    Deliberative Materials and Privilege Log

Plaintiffs argue that the USFS admits that deliberative documents were withheld.  (Doc. 29 at 32.)  In support, Plaintiffs proffer the declaration of their Counsel, Matt Bishop, and a 2017 DOJ Memorandum stating, "agency deliberative documents are *not* properly considered part of the administrative record."  (Docs. 29-1 at ¶ 3; 29-3) (emphasis original to DOJ Memorandum.)  Plaintiffs further argue that this poses a problem in that they and this Court are left in the dark about omitted documents without a privilege log.  (Doc. 29 at 32.)

Defendants argue Plaintiffs have not overcome the presumption of completeness because they have not established "any actual withholding of documents *in this case*."  (Doc. 30 at 30-31) (emphasis original.)  Defendants again rely on the declaration of Mary Erickson for the proposition that the administrative record reflects the entire corpus of documentation she used in the 2009 Roads and Trails decision.  (Doc.  30-8 at ¶ 4.)

The Court finds that Plaintiffs have not met their burden showing clear evidence that identifies specific omitted deliberative materials with sufficient specificity.  Even though Plaintiffs' counsel avers that during the course of negotiations "Federal-Defendants admitted that, in accordance with its internal

policies, it does not consider 'deliberative documents' to be part of the administrative record," Plaintiffs still have not identified any specific materials withheld in this case.  (Doc. 29-1 at ¶ 3.)  In *Indigenous Environmental Network*, the court's inclusion of deliberative documents rested on "Plaintiffs … pointing to specific documents missing from the administrative records."  2018 WL 1796217 at *3.  Here, no actual materials have been identified.  Therefore, Plaintiffs' motion as to deliberative materials is denied.

The Court agrees with Plaintiffs, however, that if deliberative materials are being withheld from the record, the proper course of action is for the USFS to invoke the deliberative process privilege and file a privilege log.  (Doc. 29 at 32.) "[T]he deliberative process privilege remains a qualified one," and to invoke it, "the agency must 'make a specific showing establishing the application of the privilege for each document that it contends that it may withhold.'"  *Indigenous Environmental Network*, 2018 WL 1796217 at *3.  Thus, Defendants must provide a privilege log if they seek to invoke the deliberative process privilege.

## C.    Motion to Strike Post-Decisional Documents

Plaintiffs move the Court to strike certain post-decisional documents from the record.  (Doc. 29 at 37-38.)  Defendants have agreed to remove post-decisional documents.  (Doc. 30 at 10.)  Therefore, Plaintiffs' motion as to post-decisional documents is granted.

26

### D.    Motion to Stay Briefing Deadline

Plaintiffs move the Court to stay summary judgment briefing deadlines until the instant dispute over the administrative record is resolved.  (Doc. 29 at 39.) Defendants argue that a stay in deadlines is unnecessary, is a waste of time and resources, and violates the scheduling order.  (Doc. 30 at 35-36.)

The Court disagrees.  Plaintiffs cannot be expected to prepare its summary judgment arguments without a full record.  Therefore, the parties shall meet and confer within 30 days of this order and propose a new briefing schedule.

## III.   Conclusion

In summary, the Court finds that the administrative record is incomplete and requires supplementation.  Accordingly,

IT IS ORDERED that Plaintiffs' Motion for a Complete Administrative Record (Doc. 28) is GRANTED in part and DENIED in part.  Defendants shall file a supplemented administrative record within 30 days of the filing of this order, including:

1.    Gallatin Travel Plan Record of Decision;

2.    Ibex Project Communications, including Crazy Mountain Working Group documents relating to the Ibex Project in USFS possession;

3.    Northern Pacific Railroad Deeds; and

4.     A privilege log relating to the Ibex Project, if Defendants in fact withhold documents under an asserted privilege.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike certain documents (Doc. 28) and Plaintiffs' Motion to Stay summary judgment briefing schedule (Doc. 28) are GRANTED.  The parties will meet and confer and file proposed dates within 30 days of this order.  All other aspects of Plaintiffs' motion (Doc. 28) are DENIED.

IT IS FURTHER ORDERED that Defendants Motion for Leave to File a Response to Plaintiffs' Notice of Supplemental Authority (Doc. 33) is DENIED.

**IT IS ORDERED**.

DATED this 30th day of September, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge