**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 2nd Avenue North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4667**
**Fax: (406) 657-6058**
**Email: mark.smith3@usdoj.gov**

**JOHN M. NEWMAN**
**RANDY J. TANNER**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 829-3336 – John**
**          (406) 329-4268 – Randy**
**Email: john.newman@usdoj.gov**
**          randy.tanner@usdoj.gov**

**Attorneys for Federal Defendants**
**United States of America**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **FRIENDS OF THE CRAZY MOUNTAINS, a public land organization; MONTANA CHAPTER BACKCOUNTRY HUNTERS AND ANGLERS, a non-profit organization; ENHANCING MONTANA'S WILDLIFE AND HABITAT, a public outreach organization; SKYLINE SPORTSMEN'S ASSOCIATION, a non-profit organization,** | **CV 19-66-BLG-SPW-TJC**<br><br>**UNITED STATES' RESPONSE TO PLAINTIFFS' SECOND MOTION TO COMPLETE THE RECORD** |

|  |  |
|---|---|
| **Plaintiffs,** | |
| **vs.** | |
| **MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest; LEANNE MARTEN, in her official capacity as Regional Forester, Region One, for the U.S. Forest Service; VICKI CHRISTIANSEN, in her official capacity as chief of the U.S. Forest Service; THE UNITED STATES FOREST SERVICE, a federal agency; THE UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department,** | |
| **Federal Defendants.** | |

## INTRODUCTION

Plaintiffs have filed a Second Motion to Complete the Record (Doc. 51) following their first motion filed in January of this year (Doc. 28). The Court ruled on that motion in September. (Doc. 42.) In their first motion, Plaintiffs asked the Court to compel the United States Forest Service (USFS) to supplement the administrative record with several categories of documents. USFS opposed that motion, and the Court granted the motion in part and denied it in part. While the Court concluded USFS need not supplement the record with several of the

2

document categories requested by Plaintiffs, it ordered USFS to supplement the record with others, as discussed in more detail below. USFS timely complied with the Court's order and supplemented the administrative record on October 30, 2020. (*See* Doc. 45.)

The Court then ordered Plaintiffs to file any additional motions concerning the record by November 30, 2020. (Doc. 44.) Plaintiffs requested a two-week extension to file their motion, which USFS did not oppose. The Court granted Plaintiffs' motion, allowing them to file by December 14, 2020.

In this Second Motion, Plaintiffs repeat many of the same arguments they made in their first motion, arguing USFS has failed to properly supplement the record. Not so. USFS has fully complied with the Court's order and appropriately supplemented the record, not to mention having previously provided thousands of pages of extra-record documents in response to Plaintiffs' FOIA requests. (*See* Doc. 30-1 to 30-5.)

Despite claiming the record is incomplete, Plaintiffs did not meet and confer with USFS to identify and resolve or narrow any issues. They failed to do so even though they assured the Court and USFS in their request for an extension that they would first "discuss any concerns regarding the record with the Service and attempt to resolve any disagreements without Court involvement." (Doc. 48 at 2.) Nor, as required by Local Rule 7.1(c), did Plaintiffs contact USFS to determine

3

whether it opposed the Second Motion. *See* Local Rule 7.1(c) ("The text of the motion must state that other parties have been contacted and state whether any party objects to the motion.").[1]

Had Plaintiffs met and conferred with USFS, the parties might have been able to resolve or at least narrow some of the issues presented in the Second Motion. Nevertheless, for the reasons below, the Court should deny Plaintiffs' motion in its entirety on the merits. *See FTC v. Am. Evoice, Ltd.*, 242 F. Supp. 3d 1119, 1120 n.1 (D. Mont. 2017) (indicating a party's motion could be denied for failure to comply with Local Rule 7.1(c)(1) but instead denying on merits). USFS fully complied with the Court's prior order, and the administrative record is complete. Since the Court has addressed Plaintiffs' first motion and is familiar with the background and standard of review for these issues, those discussions are incorporated into the argument section below rather than briefed separately.

---

[1] Plaintiffs' failure to confer with USFS is a sufficient basis to deny their motion. *See* Local Rule 7.1(c)(4) ("Failure to comply with this rule may result in summary denial of the motion."); *Windsor v. Boushie*, 2014 WL 1348013 (D. Mont. Apr. 3, 2014) (denying motion for failure to comply with Local Rule 7.1(c)(1); *Saga Petroleum, LLC v. Arrowhead Drilling, LLC*, 2010 WL 4922505, at *1 (D. Mont. Nov. 29, 2010) (denying motion for failure to comply with Local Rule 7.1(c)(1) and observing: "The defendants represent in their response brief that Saga in fact failed to contact the defendants to discuss the motion and ask whether they object to it. Court Doc. 50 at 2. Thus Saga's omission was not simply failing to comply with the letter of the rule requiring the reporting of compliance in the text of a motion, but failure to comply with the spirit of the rule as well. It appears to the Court that had Saga done so, the issues presented could have been more focused and narrowed.").

4

**ARGUMENT**

**I.      USFS is not withholding any deliberative documents, and Plaintiffs do not identify any purportedly withheld documents that should be included on a privilege log.**

Plaintiffs again argue USFS has withheld deliberative documents from the administrative record and failed to identify them on a privilege log. (Doc. 52 at 4–7.) USFS explained in response to the first motion that it has not withheld any documents (deliberative or otherwise), it is not invoking the deliberative process privilege, and there is, therefore, no need to create a privilege log. (Doc. 30 at 7–10, 20–26.) The privilege log would be empty. Addressing Plaintiffs' first motion, the Court concluded "Plaintiffs have not met their burden showing clear evidence that identifies specific omitted deliberative materials with sufficient specificity." (Doc. 42 at 25.) The Court, however, ordered USFS to provide a privilege log if it is withholding deliberative materials. (Doc. 42 at 26.)

USFS is mindful of the Court's order and reiterates: it is not invoking the deliberative process privilege and it has not otherwise withheld any deliberative material or other documents from the administrative record. (*See* Doc. 30-8 at 4; Second Declaration of Mary C. Erickson, **Exhibit A** at ¶ 8.) Plaintiffs, however, claim USFS is withholding unidentified deliberative documents (Doc. 52 at 5), documents referenced in the supplemental record (Doc. 52 at 6), and documents related to the Porcupine-Ibex reroute and the east side trails provided to Plaintiffs

through their FOIA requests (Doc. 52 at 6). Plaintiffs are mistaken. USFS has not

withheld any deliberative material or asserted the deliberative process privilege.

### A.    There are no withheld deliberative documents.

Plaintiffs contend USFS admitted it withheld deliberative documents

because USFS noted the record was prepared in accordance with the National

Forest System Land Management Litigation Guide (2018), which states that

deliberative documents are not part of the record. (Doc. 52 at 5.) USFS did, indeed,

prepare the record in accordance with the Guide. But, as USFS explained in

response to Plaintiffs' first motion, that does not mean USFS withheld deliberative

documents *in this case*. (Doc. 30 at 16–19, 30–31.) It did not—USFS has not

withheld any deliberative documents from Plaintiffs, and Plaintiffs provide no

evidence to the contrary. (*See* Ex. A at ¶¶ 6–8.)

This is no less true in light of the Court ordering USFS to provide all record

material leading up to the date of the Ibex landowner easement donation or to

identify any deliberative material for that time period on a privilege log. (*See* Doc.

42 at 19.)[2] USFS appropriately supplemented the record in light of the Court's

order, and there are no deliberative documents to log. (Ex. A at ¶¶ 6–8.) There are

---

[2] The Court ordered: "Plaintiffs' motion as it pertains to the Ibex project will be granted insofar as to produce materials *directly or indirectly considered* that relate to the easement exchange, including conference and meeting notes and materials; internal and external communications; and, given the lack of valuation or appraisal materials, any feasibility analyses addressing these land interests." (Doc. 42 at 19 (emphasis added).)

6

no documents USFS considered—either directly or indirectly—between the date of the 2009 NEPA decision and the date of the Ibex landowner easement donation that are not already part of the administrative record, as revised on October 30, 2020.[3]  (Ex. A at ¶¶ 6–8.)

In short, USFS has withheld no deliberative materials for any time period, and there are no documents to identify on a privilege log.

**B.    The alleged "parallel efforts" and "comprehensive proposal" documents were not improperly excluded from a privilege log.**

Plaintiffs claim USFS's supplement to the administrative record shows it is withholding documents related to (1) landowners' "parallel efforts" to coordinate with Secretary of Agriculture Perdue and Senator Steve Daines and (2) a "comprehensive proposal" for public access on the east side trails. (*See* Doc. 52 at 6 ("We also know that documents included in the supplemental record reference other materials which remain missing from the record, *see infra* sections 3

---

[3] A title file was generated in USFS's Regional Office for each of the two easements donated to USFS. (*See* Second Declaration of Cindy Hockelberg, Exhibit B, at ¶ 5.) The title files are maintained by the Regional Office Land Status Group as part of the Region 1, Northern Region official land adjustment case file records; the files are not maintained by or housed with the Forest Supervisor's Office. USFS does not consider these files to be part of any administrative record, and the files did not influence or affect the Porcupine Ibex reroute (the files also do not contain any additional railroad deeds beyond those already produced). Nor is Plaintiffs' motion directed at these two title files. However, out of an abundance of caution, USFS expects to produce the title files soon, even though it does not consider them part of the administrative record. Had Plaintiffs consulted with USFS before filing this motion, as they promised to do, this issue might have been identified and clarified.

["parallel efforts" section] [and] section 4 ["comprehensive proposal" section])).

Plaintiffs briefly mention these two categories of alleged documents in the privilege-log section of their brief, but they argue separately and, in more depth, that the documents should be produced and are not subject to any privilege. (*See* Doc. 52 at 8–11.) To be clear, no such documents are identified on a privilege log because they are not administrative record documents in the first place—USFS did not rely on either category of documents in any decision making for the Porcupine-Ibex reroute or the east side trails (where, in fact, no decision has been made (*see, e.g.*, Doc. 42 at 20–22)). Nor has USFS withheld any internal, deliberative material. (Ex. A at ¶¶ 6–14.) Plaintiffs provide no evidence to the contrary. More fundamentally, and as discussed below in Sections III and IV of this brief, despite possessing all USFS documents on these subjects, Plaintiffs still cannot identify any specific documents directly or indirectly considered but not included in the administrative record.

Further, as to the "comprehensive proposal" documents discussed in more detail below, those documents relate solely to east side trails. (*See* Doc. 52 at 11.) The Court has already concluded those documents belong to no administrative record because there was no final agency decision as to the east side trails. (*See* Doc. 42 at 20–23.) The Court therefore ordered that USFS need not produce any east-side-trail documents as part of the administrative record or identify them on a

8

privilege log. (*See* Doc. 42 at 20–23.)

Since USFS did not rely either directly or indirectly on "parallel efforts" or "comprehensive proposal" documents for any decision, they are not record documents or deliberative documents that should be identified on a privilege log.

### C.  USFS did not consider the extra-record FOIA documents either directly or indirectly in its decision making.

Plaintiffs argue "that hundreds of documents pertaining to the Ibex project (and the eastside trails) that were obtained by Plaintiffs through Freedom of Information Act (FOIA) request are still being withheld from the record." (Doc. 52 at 6.) Plaintiffs incorrectly assume, however, that the FOIA documents are part of the administrative record in the first place and that USFS considered them as deliberative materials. They are not part of the administrative record, they are not deliberative material, and there is no basis to identify these documents on a privilege log.

The administrative record does not include every communication or document related to a particular action. Instead, "The whole administrative record . . . consists of all documents and materials *directly or indirectly considered* by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis added; citations, alterations, and internal quotation marks omitted); (*see also* Doc.

9

42 at 4). The agency's administrative record is presumed complete. *See Indigenous Envt'l Network v. U.S. Dep't of State*, 2018 WL 1796217, at *2 (D. Mont. Apr. 16, 2018) (citation omitted); (*see also* Doc. 42 at 4.) If a party believes the record is incomplete, it must come forward with "specific[]" and "clear evidence . . . that the alleged documents were considered by the agency and not included in the record." *Id.* at *2 (citation omitted); (*see also* Doc. 42 at 4).

Here, USFS has provided the complete administrative record for the westside Porcupine-Ibex trail reroute, including for the time period up to the landowner easement donation.[4] (Ex. A at ¶¶ 6–9.) That record is entitled to a presumption of completeness. Plaintiffs, however, have failed to provide any evidence—much less clear, specific evidence—showing that any documents provided to them in response to their FOIA requests were considered by USFS but not included in the record. It is their burden to do so.

USFS provided thousands of pages of documents in response to Plaintiffs' FOIA requests. (*See generally* Docs. 30-1 to 30-5.) But, since USFS neither directly nor indirectly considered any of the extra-record FOIA documents in its decision-making, those documents are not part of the administrative record and there is no basis for identifying them on a deliberative-process privilege log

---

[4] No record is provided for the east side trails because no such record exists in the absence of a final agency decision. (Doc. 42 at 20–23.)

designed to explicate withholdings from such a record.[5]

To summarize, USFS has not withheld any deliberative material, and Plaintiffs have not met their burden of providing specific and clear evidence that USFS considered any documents not already part of the record. The Court should deny Plaintiffs' request that USFS produce a privilege log—USFS cannot produce that which does not exist.

## II.     USFS does not possess any additional railroad deeds.

Plaintiffs contend USFS withheld various railroad deeds, despite being ordered to produce them. (Doc. 52 at 7–8.) In particular, they claim USFS withheld:

> the Northern Pacific Railway deeds conveyed to the landowners for Section 15 (Township 4 North, Range 10 East) and section 35 (Township 4 North, Range 10 East) both of which are implicated by the Ibex project and both of which expressly "reserve an easement in the public for any public roads heretofore laid out or established, and now existing over an across any part of the premises." *See* Doc. 29-10 (copy of deeds).

---

[5] As USFS explained, however, in its briefing on Plaintiffs' first motion, the fact that the various FOIA documents are not part of the administrative record does not mean Plaintiffs are barred from citing them or attaching them as exhibits to their summary judgment brief. (See Doc. 30 at 18–19.) Plaintiffs may, for instance, argue extra-record documents should have been considered by USFS but were not (an argument with which USFS would disagree). *See, e.g.*, *Alliance for the Wild Rockies v. Marten*, 2016 WL 7174671, at *1 (D. Mont. Oct. 3, 2016) (citations omitted) (discussing "four narrowly construed circumstances" when a court may inquire outside the administrative record). As counsel for USFS explained to Plaintiffs' counsel, though, USFS reserves its right to challenge consideration of those documents since they are outside the record. (*See* Doc. 30-6 at 5–6.) Further, with respect to the east side § 706(1) claims, objections to any extra-record documents are unlikely because there is no administrative record in the first place. (*See* Doc. 30-7 at 4–6.)

(Doc. 52 at 8.) Plaintiffs already possess these deeds (*see* Doc. 29-10), but they nonetheless claim the deeds should be made part of the record.

In their first motion, Plaintiffs likewise argued USFS had withheld these deeds and others. (Doc. 29 at 31.) USFS explained these deeds were not part of the administrative record because USFS did not directly or indirectly consider any railroad deeds and Plaintiffs had failed to provide any evidence to the contrary. (Doc. 30 at 28; Doc. 30–8 at ¶ 8.) Addressing Plaintiffs' motion, the Court concluded that USFS's assertion that it did not rely on the deeds was an acknowledgment that the deeds exist but were omitted from the record. The Court then ordered USFS to produce the Northern Pacific Railway deeds conveying lands to the landowners. (Doc. 42 at 25.)

USFS provided the railroad deeds for lands associated with the Porcupine-Ibex Trail re-route—the three deeds at AR 5602, 5603, and 5610. But it does not possess the additional railroad deeds identified by Plaintiffs: deeds for Sections 15 (Township 4 North, Range 10 East) and 35 (Township 4 North, Range 10 East) (Plaintiffs, however, already possess copies of these deeds). As explained by USFS's Regional Land Adjustment Program Manager for the Northern Region, USFS did not acquire these railroad deeds because USFS was not acquiring any easement or property interest in the lands associated with those deeds. (*See* Second Declaration of Cindy Hockelberg, **Exhibit B** at ¶ 5.)

12

To be clear, USFS did not consider any of the deeds as part of the 2009 NEPA decision or the Porcupine-Ibex reroute. (*See* Ex. A at ¶ 9, Ex. B at ¶ 5.) USFS therefore maintains its position that the railroad deeds are not part of the administrative record for the Porcupine-Ibex reroute. Mindful of the Court's order, however, USFS has produced the only deeds it possesses—the deeds at AR 5602, AR 5610, and AR 5603. Copies of deeds that USFS did not possess (and still do not possess) were not "before" the agency at the time of any decision and, therefore, are not part of the administrative record. *See Pac. Choice Seafood Co. v. Ross*, 976 F.3d 932, 942 (9th Cir. 2020) (noting the administrative record includes only material that was "before the agency pertaining to the merits of its decision"); *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision").

## III.  The purported "parallel efforts" documents are not part of the administrative record.

Plaintiffs argue USFS has improperly withheld so-called "parallel efforts" documents. (Doc. 52 at 8–10.) As discussed in a June 14, 2017 e-mail exchange between Forest Supervisor Mary Erickson and various landowners, the landowners engaged in "parallel efforts" to express their concerns related to the trails in an "open letter" to Secretary of Agriculture Perdue and Senator Daines. (AR 5527–

29.)

As indicated in that e-mail exchange, the landowners did not share that open letter with USFS or otherwise advise USFS they were working on it and had sent it to Secretary Perdue and Senator Daines. (AR 5528–29; *see also* Ex. A at ¶¶ 10–11.) Nor was USFS involved in any parallel efforts or included on any related communications. (Ex. A at ¶¶ 10–11.) USFS never relied either directly or indirectly on any of the landowners' communications with Secretary Perdue or Senator Daines in any decision making, whether for the Porcupine-Ibex reroute or east side trails. (Ex. A at ¶¶ 10–11.) Nor did Secretary Perdue or Senator Daines (or anyone on their behalf) direct any USFS decision making, whether for the Porcupine-Ibex trails or east side trails. (Ex. A at ¶¶ 10–11.)

To the extent, then, that any of these landowner communications with Secretary Perdue or Senator Daines relate to the Porcupine-Ibex trails, they are not part of the administrative record because USFS did not directly or indirectly rely on them. *See Thompson*, 885 F.2d at 555 (holding the administrative record consists only of "documents and materials directly or indirectly considered by agency decision-makers" (emphasis added)); (*see also* Doc. 42 at 4, 19 (as to the Porcupine-Ibex trails, ordering USFS to produce only "materials directly or indirectly considered")). Plaintiffs have not met their burden to provide contrary evidence—clear and specific evidence that any parallel-efforts documents were

14

considered by USFS as part of any agency decision making for the Porcupine-Ibex trails. *See Indigenous Envt'l Network*, 2018 WL 1796217, at *2; (*see also* Doc. 42 at 4).

Any parallel-efforts documents are also not part of any administrative record for the east side trails—no such record exists. (*See* Doc. 42 at 20–23.) As the Court explained in its order, no record exists for the east side trails because there is no final agency action with respect to those trails. (*See* Doc. 42 at 20.) Indeed, Plaintiffs' request that the Court order USFS to make these documents part of a record is the same failed argument Plaintiff made in their first motion. In response to that argument, the Court observed:

> Plaintiffs have failed to show at this stage of proceedings that a final agency action has occurred despite having obtained "thousands of FOIA documents." (Doc. 29 at 26, FN4.) . . . . Here, Plaintiffs have advanced no particular circumstance or argument in support, but instead argue that "if a complete record is produced, it will reveal there was a 'final agency' decision in the summer of 2017 to change its policy following inquiries and complaints from landowners, Senator Daines, and Secretary Purdue." (Doc. 31 at 10-11.) While Plaintiffs cite to *Alliance for the Wild Rockies*, they neglect to provide the subsequent analysis the case required. Their request sounds precisely like the "unlimited discovery" that Judge Molloy forewarned against. *Alliance for the Wild Rockies*, 2016 WL 7174671 at *1.

(Doc. 42 at 19, 22–23.) The same still holds true—USFS has not taken any final action for the east side trails, and there is no administrative record to which any parallel-efforts documents might belong, even assuming USFS has relied on them

15

(which it has not).

As USFS noted above, Plaintiffs are free to cite any "parallel efforts" documents subject to a valid extra-record exception, *see Alliance for the Wild Rockies*, 2016 WL 7174671, at *1, but they are not part of any administrative record. The Court should therefore deny Plaintiffs' request that USFS be ordered to make such documents part of the record.

## IV. The purported "comprehensive proposal" documents are not part of the administrative record.

The same rationale defeats Plaintiffs' argument that USFS must make "comprehensive proposal" documents part of the record. (*See* Doc. 52 at 11.) As used by Plaintiffs, the term "comprehensive proposal" refers to a February 14, 2019 USFS briefing that provided an update on Crazy Mountain access issues. (AR 5413.) The briefing mentions "ongoing discussions" with landowners related to "[d]eveloping a comprehensive proposal for public access on the East side of the Crazies." (AR 5413.)

USFS frequently engages with landowners and conservation organizations regarding conceptual ideas that might or might not evolve into proposals that USFS brings forward to the public. (Ex. A at ¶ 12.) While USFS has met with a group that has expressed interest in a proposal for the east side trials, USFS has not taken any action in response to any proposals, and no proposals have been put

16

forward to the public for consideration. (Ex. A at ¶ 13.)

The February 14, 2019 briefing states clearly that no "public process" had been undertaken for any proposed comprehensive proposal and that any public process "will still take time." (AR 5413.) That has not changed. Consequently, as the Court has already concluded, there is no administrative record related to a comprehensive proposal or any east-side actions. (Doc. 42 at 20–23.) There is, therefore, no administrative record to which any comprehensive proposal documents would belong. The Court should therefore deny Plaintiffs' request to order USFS to make these documents part of the record.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' Second Motion to Complete the Record.

**DATED** this 28th day of December 2020.

> **LEIF M. JOHNSON**
> **Acting United States Attorney**
>
> **/s/ RANDY J. TANNER**
> **MARK STEGER SMITH**
> **JOHN M. NEWMAN**
> **RANDY J. TANNER**
> **Assistant U.S. Attorneys**
> **Attorneys for Federal Defendants**

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 3,320 words, excluding the caption and certificates of service and compliance.

**DATED** this 28th day of December, 2020.

**/s/ RANDY J. TANNER**
**MARK STEGER SMITH**
**JOHN M. NEWMAN**
**RANDY J. TANNER**
**Assistant U.S. Attorneys**
**Attorneys for Federal Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of December 2020, a copy of the foregoing document was served on the following person by the following means.

| | |
|---|---|
|    1-3    | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.  Clerk of Court

2.  Matthew K. Bishop
    Western Environmental Law Center
    103 Reeder's Alley
    Helena, Montana 59601
    (406) 324-8011 – phone
    bishop@westernlaw.org
    Attorney for Plaintiffs

3.  Michael A. Kauffman
    Patricia Klanke
    DRAKE LAW FIRM, P.C.
    111 North Last Chance Gulch
    Suite 3J, Arcade Building
    Helena, Montana 59601
    michael@drakemt.com
    patricia@drakemt.com
    Attorneys for Plaintiffs

**/s/ RANDY J. TANNER**
**MARK STEGER SMITH**
**JOHN M. NEWMAN**
**RANDY J. TANNER**
**Assistant U.S. Attorneys**
**Attorneys for Federal Defendants**