Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
406-324-8011
bishop@westernlaw.org

Michael A. Kauffman
DRAKE LAW FIRM, P.C.
111 North Last Chance Gulch
Suite 3J, Arcade Building
Helena, MT 59601
406-502-1668
michael@drakemt.com

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, et al., | 19-CV-00066-SPW-TJC |
| Plaintiffs, | REPLY IN SUPPORT OF SECOND MOTION TO COMPLETE THE RECORD |
| vs. | |
| MARY ERICKSON, in her capacity as Forest Supervisor for the Custer-Gallatin National Forest, et al., | |
| Federal-Defendants. | |

Plaintiffs submit this reply in support of its second motion to complete the administrative record (Doc. 51). As outlined below, none of the objections raised in Federal-Defendants' (the "Forest Service's") response have merit.

## ARGUMENT

### 1.   The purpose of Local Rule 7.1(c) was satisfied, the error was harmless, and denial on such grounds would only result in further delay.

First, after submitting a seventeen-page brief opposing Plaintiffs' second motion to complete the record, the Forest Service asks this Court to summarily dismiss the motion on technical grounds for failing to contact and state the agency's position as required Local Rule 7.1(c)(1). Doc. 54 at 3-4. This request should be denied.

Local Rule 7.1(c)(1) requires Plaintiffs' motion state whether the other party was contacted and objects to the motion. The purpose of the rule is to avoid needless court filings. Non-compliance with the rule "may result in summary denial of the motion" but such a denial on the first occasion must be "without prejudice" and the filer must be given the opportunity to refile the motion. Local Rule 7.1(c)(4).

In this case, the Forest Service is correct: Plaintiffs did not

formally reach out and contact the agency about its position on its second motion as required by Local Rule 7.1(c)(1). Plaintiffs apologize for any inconvenience this oversight may have caused this Court or the Forest Service. That said, however, the purpose of Local Rule 7.1(c)(1) – to require the parties to meet and confer to avoid needless court filings – had already been satisfied in this case so the error was harmless.

The Forest Service's opposition to four issues raised in Plaintiffs' second motion, i.e., no privilege log, missing railroad deeds, missing documents on landowner efforts, and missing documents on the eastside proposal, for instance, was already known and well-documented. The Forest Service had previously objected to producing a privilege log on two separate occasions – during informal negotiations regarding the record (Doc. 31-1 at 14) and in briefing on Plaintiffs' first motion (Doc. 30 at 35). The Forest Service also already opposed producing the Northern Pacific Railway deeds (Doc. 31-1 at 39 and Doc. 30 at 28), and opposed producing the other missing documents sought in this second motion. *See* Doc. 30 at 22-23, 24-27. The Forest Service's position on these issues was thus well known.

Plaintiffs' plans to file a second motion objecting to the

supplemental record was also no surprise. Following this Court's order on the record (Doc. 42) and the Forest Service's filing of a supplemental record, Plaintiffs expressly included a deadline for filing a second motion in the parties' proposed briefing schedule (Doc. 43) and subsequently sought and filed an unopposed motion for extension of time for the motion (Doc. 48), which this Court granted on November 25, 2020 (Doc. 49). While Plaintiffs remained committed to try and resolve any identified concerns with the supplemental record with the Forest Service, they did so only if "necessary." Doc. 48 at 2. Given the Forest Service's previously stated position on the four issues identified in Plaintiffs' second motion, Plaintiffs deemed it futile and thus unnecessary to try and resolve such disputes informally for a second and even third time. In short, the Forest Service made its position abundantly clear and has done so – once again – in its response in opposition. Plaintiffs' technical error for failing to formally state the Forest Service's position was thus harmless and did not prejudice the agency.

Further, if the Forest Service's request is granted and Plaintiffs' second motion is summarily denied for non-compliance with Local Rule

7.1(c)(1), such a result would only lead to more meaningless delay which is something the Forest Service previously argued against (*see* Doc. 30 at 35). Local Rule 7.1(c)(4) states that the remedy for violating this Local Rule "may" result in the denial of the motion but such a the "denial must be *without prejudice* on the first occasion and the filer must be given an opportunity to refile the motion." *United States v. Murray*, 2020 WL 2557945, at \*2 n.3 (D. Mont. May 20, 2020) (quoting Local Rule 7.1(c)(4)). As such, if denied, Plaintiffs would simply refile the motion and put the parties in the exact same position they are currently in. This would result in further "meaningless delay" of this case. *Id*. at \*2. This Court should thus decline the Forest Service's invitation to facilitate such a "substantively empty and time-consuming exercise." *Murray*, 2020 WL 2557945 at \*2 n 3; *see also United States v. Thill*, 2015 WL 1579497, at \*1, n. 3 (D. Mont. Apr. 8, 2015) (addressing merits in the interests of efficiency despite non-compliance with Local Rule 7.1(c)(1)); *Bank of Bozeman v. Bancinsure*, 2008 WL 11347993, at \*1 n. 1 (D. Mont. June 26, 2008) (same).

2.    **The Forest Service cannot withhold hundreds of documents from the record and simultaneously refuse to produce a privilege log.**

Second, the Forest Service concedes that hundreds of documents (and thousands of pages) pertaining to the Forest Service's management of the four disputed trails at issue in this case – the two west-side trails implicated by the Ibex project and the two east-side trails – are: (1) not included in the administrative or supplemental records filed in this case; and (2) not documented and listed in a privilege log or index.

The Forest Service, for example, concedes that it already provided Plaintiffs "all documents" pertaining to the agency's management of the four disputed trails in response to earlier FOIA requests. Doc. 30 at 16. The Forest Service "compiled thousands of pages of responsive records" on the agency's management of the four disputed trails. *Id*. The Forest Service also said Plaintiffs can cite and use "whatever documents" it already provided to Plaintiffs via FOIA on summary judgment, so long as it preserves its right to object (if need be). *Id*.

The open question, therefore, is why hundreds of documents (and thousands of pages) pertaining to the Forest Service's management of the four trails were withheld from the administrative and supplemental

5

records in this case? And relatedly, if such documents were withheld, why were they not included in a privilege log or index?

In response, the Forest Service now insists these documents were excluded because they were not relied on or considered by the agency. But this is merely a litigation position. The Forest Service never reviewed the hundreds of documents (and thousands of pages) to determine whether they qualified for inclusion in the record based on reliance or consideration. Instead, the agency produced all documents in response to the FOIA requests with "no redactions" and without withholding any documents (Doc. 30 at 18) and then summarily withheld these very documents from the administrative and supplemental records filed in this case. No subsequent, internal review of the withheld FOIA documents was undertaken.

The Forest Service insists the burden is on Plaintiffs to demonstrate that the agency actually "considered" or relied on each of these FOIA documents (thousands of pages of documents) when making management decisions regarding the four disputed trails and presumably attach each as an exhibit and then explain why it was considered by the agency. But this is an impossible and unreasonable

task given the sheer volume of documents provided via FOIA and withheld from the record in this case.

Notably, all of the FOIA response documents pertain solely to the history and Forest Service's *management* of the four disputed trails in this case, *see* Doc. 30 at 17 (citing FOIA requests), so presumably such documents, including the photos and internal and external emails about trail management and landowner obstruction efforts were indirectly considered by the agency when issuing *management decisions* regarding the four disputed trails, i.e., before approving the Ibex project and before making management decisions regarding the two east-side trails.

For example, most of the documents included in the FOIA are communications between the Forest Service and landowners about the landowners' efforts to obstruct public access on the National Forest System trails in the Crazy Mountains, including the Porcupine Lowline and Elk Creek trails implicated by the Ibex project, *see* Exhibit A (sampling of such documents), public complaints to the Forest Service about such obstruction efforts, *see* Exhibit B, and various internal communications within the agency regarding the same, *see* Exhibit C. These documents (and hundreds of others like them in the FOIA

7

responses) must have been indirectly considered by the Forest Service before approving the Ibex project because they were the impetus for the easement exchange. In other words, but for the landowners' obstruction efforts on the Porcupine Lowline and Elk Creek trails and the resulting public access dispute it created, there would be no need for the Ibex project and no need for the Forest Service to relinquish the public's access rights on these existing National Forest System trails in exchange for new access rights across private lands. But all of this communication and documentation – i.e., the history of the disputed trails, communications with landowners about blocking public access, internal emails regarding the same, and public complaints – was withheld from the administrative and supplemental record and never included in a privilege log or index. Also withheld were documents and communications between the Forest Service, landowners, and others (including Congressional staff) from January, 2017 through July 27, 2017 about the four disputed trails and the Forest Service's management of them. *See* Doc. 29-8.

The Forest Service insists that the decision-maker for the Ibex project (here, Ms. Erickson the Forest Supervisor) must rely on or

consider the documents in order to have them included in the record. But this misstates the applicable APA standard.

The "whole record" is "everything that was before the agency pertaining to the merits of its decision," *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993), which includes "all documents and materials directly or *indirectly* considered by agency decision-makers [including] evidence contrary to the agency's position," *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis added) (citations omitted). This includes "documents that literally passed before the eyes of the final agency decision maker as well as those considered and relied upon by subordinates who provided recommendations." *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017) (brackets and internal quotation marks omitted). An agency may not exclude information it considered on the grounds that it did not rely on it. *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006). Internal agency emails amongst staff and emails and communications between agency staff and the landowners concerning the management of the trails (and illegal efforts

to block public access) thus fall into this "indirectly considered" category and certainly informed the Forest Service's ultimate decision.

### 3.   The railway deeds implicated by the Ibex project should be included in the record.

Third, the Forest Service insists it never considered any of the Northern Pacific Railway deeds in Sections 15 and 35 (Township 4 North, Range 10 East) when approving the Ibex project and, as such, the deeds are not part of the administrative record. Doc. 54 at 13. These railway deeds expressly "reserve an easement in the public for any public roads heretofore laid out or established, and now existing over an across any part of the premises" *See* Doc. 29-10.

For support, the Forest Service relies on two self-serving declarations from agency staff (Docs. 54-1 and 54-2). Both declarations, however, are post-decisional, extra-record documents that should be struck by this Court. Information contained in the declarations is also misleading. The Forest Service, for example, says it did not review title documents pertaining to Section 15 and 35 (Township 4 North, Range 10 East) because it was not *acquiring* any easement or property interest in those lands. Doc. 54 at 12; Doc. 54-2 at 4. But as part of the Ibex project the Forest Service *relinquished* its easement interests to the

10

Porcupine Lowline trail and Elk Creek trail in those lands (Sections 15 and 35, Township 4 North, Range 10 East) which is something the landowners insisted on before agreeing to the exchange. *See, e.g.,* AR-5582 (email exchange regarding exchange and need for the Forest Service to relinquish interest in trails). Contrary to the Forest Service's suggestion, the easement exchange was not a unilateral "donation" from generous landowners. It was a quid-pro-quo situation. As Ms. Erickson explained in an email to the landowner: "As you know, through the Reciprocity Agreement we are 'exchanging interests.'" AR-5498. "With your donation of a trail easement to provide public access across your property, the Forest Service *will relinquish* any interests and claims on the Porcupine Lowline trail and North Fork Elk Creek trail through your property." *Id.* (emphasis added); *see also* AR-5484 (easement exchange agreement stating the same); AR-00432 (Ibex project scoping document stating the same).

Further, if – as the Forest Service asserts – the agency never considered Northern Pacific Railway deeds for Sections 15 and 35 (Township 4 North, Range 10 East) before agreeing to the easement exchange then it shows the Forest Service failed to consider an

11

important and relevant factor before relinquishing the public's easement interests on the National Forest System trails and approving the Ibex project, namely that the trails might be subject to a recorded easement for public access (in addition to a well-documented prescriptive easement for public access). This alone is sufficient grounds to supplement the record with such documents. *See Lands Council v. Powell*, 395 F.3d 1019, 1029 -1030 (9th Cir. 2005) (explaining that courts can supplement the record with evidence if it is necessary to determine "whether the agency has considered all relevant factors and has explained its decision").

## 4.   No documents on the landowners' "parallel efforts" to go above the local Forest Service office are included in the record.

Fourth, the Service does not dispute that the landowners reached out to Secretary Perdue (and Senator Daines) to complain about the District Ranger (and his efforts to protect public access on the disputed trails implicated by the Ibex project and eastside trails) and put pressure on the agency to change its approach. *See* AR-5527. Instead, the Forest Service now insists it did not "rely either directly or indirectly" on such efforts for the Ibex project or any management

decisions regarding the east-side trails (Doc. 54 at 8-9). But this position is undermined by the agency's own decision to include this very document referencing the "parallel effort" in the supplemental record. In other words, presumably the parallel effort was considered by the agency (if even indirectly) because this document was included in the supplemental record.

The Forest Service also challenges Plaintiffs failure to identify "any specific documents" that were considered by the agency but not included in the record regarding this parallel effort. *Id*. at 8. In reply, Plaintiffs provide the following documents (all of which informed the Forest Service's decision to proceed with the Ibex project in March, 2018 and the agency's management decisions regarding the east-side trails):

·  January 30, 2017 letter from landowners to Senator Daines regarding public access disputes in the Crazy Mountains including the trails at issue in this case (Doc. 29-8 at 1);

·  Various emails between Senator Daines' office (Spenser Merwin) and Ms. Erickson regarding public access disputes in the Crazy Mountains, including the trails at issue in this case (*see, e.g.*, Doc. 29-8 at 2-6, 17);

·  May 26, 2017 letter from Senator Daines to Chief Tidwell regarding the public access disputes in the Crazy Mountains and the agency's policy for dealing with them (Doc. 29-8 at 7);

13

·   June, 2017 emails referencing various meetings with Secretary
    Perdue and others regarding access disputes in the Crazy
    Mountains and briefing papers regarding the same (Doc. 29-8 at
    15);

·   Various emails between Ms. Erickson and the landowners and
    working group regarding the access disputes in the Crazy
    Mountains and the landowners open letter to Senator Daines and
    Secretary Perdue (Doc. 29-8 at 27);

·   The Forest Service's July 14, 2017 response to Senator Daines on
    access disputes in the Crazy Mountains and the agency's policy
    regarding the same (Doc. 29-8 at 18-19);

·   Ms. Erickson's email response to this letter referencing various
    "confidential discussions" regarding management of the disputed
    trails in the Crazy Mountains (Doc. 29-8 at 20); and

·   Senator Tester's July 25, 2017 letter to the Forest Service
    regarding public access disputes in the Crazy Mountains (Doc. 29-
    8 at 25).

Again, none of these documents (or the other documents,

meetings, and communications referenced within them) were included

in the administrative or supplemental records even though – by their

own terms – they were before and indirectly considered by the agency.

Nor were these documents indexed and provided in a privilege log.

14

**5.    Documents relating to the Forest Service's "comprehensive proposal" for managing the east side trails should be part of the record.**

Finally, the Forest Service now admits – for the first time – that it has met with "a group" that has expressed interest in a proposal for the two east side trails at issue in this case. Doc. 54 at 16. The agency states that this comprehensive proposal includes a "Big Sky and east side Crazy Mountain concept" that is still in the early stages and has yet to be accepted as a "final proposal." Doc. 54-1 at 6. The Forest Service also concedes that documents relating to this proposal for the two east side trails exists – including the proposal itself and "related communications" – exist. Doc. 54-1 at 7; *see also* Doc. 54 at 17 (referencing "these documents"). No further details are provided but this proposal has undoubtedly affected and will continue to affect the Forest Service's *current* management of the two east side trails which is directly at issue in this case. *See* Doc. 18 at 42-47.

Indeed, even if one assumes, *arguendo*, that no formal decision – no "final agency action" – has occurred with respect to the management of the east side trails, Plaintiffs are still entitled to challenge (and intend to challenge) the Forest Service's failure to properly manage the

15

two east side trails for public use and access as required by its own forest plan, travel plan, regulations and policies under 5 U.S.C. § 706(1). *See* Doc. 18 at 42-47.

In response, the Forest Service maintains that documents pertaining the east-side proposal need not be provided because the proposal has not been subject to a "public process" and "will still take time." Doc. 54 at 17. The agency also states the proposal is not "final" and has yet to be subject to formal "agency action." Doc. 54-1 at 6. But the fact that the comprehensive proposal for the two east side trails has not been made "public" or been submitted for a "public process" or is not "final" is irrelevant to whether the underlying documents themselves must be included in the record in this case (which directly challenges the Forest Service's failure to properly manage the two east side trails). Discussions and documents relating to the east side trail proposal exist and belong in the record because they have been (and are being) directly or indirectly considered by the agency with respect how it *currently* manages the two east side trails.

## CONCLUSION

For these reasons, Plaintiffs request this Court grant its second motion to complete the record and order the Forest Service to correct the deficiencies described herein and file a new, complete record.

Respectfully submitted this 11th day of January, 2021.

/s/ Matthew K. Bishop
Matthew K. Bishop

/s/ Michael Kauffman
Michael Kauffman

*Counsel for Plaintiffs*


## CERTIFICATE OF COMPLIANCE

I, the undersigned counsel of record, hereby certify that this brief is proportionally spaced, has a typeface of 14 points or more, and contains less than 3,250 words. I relied on Microsoft Word to obtain the word count.

/s/ Matthew K. Bishop
Matthew K. Bishop

17