ETHAN W. BLEVINS, Mont. Bar No. 37415893
Email: EBlevins@pacificlegal.org
Pacific Legal Foundation
839 W 3600 S
Bountiful, Utah 84010
Telephone: (206) 619-8944
Facsimile: (916) 419-7747

JONATHAN WOOD*, Cal. Bar No. 285229
Email: JWood@pacificlegal.org
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, Virginia 22201
Telephone: (202) 888-6881

JEFFREY W. McCOY*, Colo. Bar No. 43562
Email: JMccoy@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419
-7111
*Pro Hac Vice

*Attorneys for Defendants M Hanging Lazy 3, LLC
and Henry Guth, Incorporated*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>MARY ERICKSON, in her capacity as Forest Supervisor for the Custer-Gallatin National Forest; M HANGING LAZY 3, LLC; HENRY GUTH, INCORPORATED, *et al.*,<br><br>Defendants. | No. 1:19-cv-00066-SPW-TJC<br><br>**LANDOWNERS' COMBINED OPPOSITION AND BRIEF SUPPORTING CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................. 1

BACKGROUND .............................................................................. 3

STANDARD OF REVIEW ................................................................ 10

ARGUMENT ................................................................................. 11

  I.  The Trail Donation Agreement does not violate FLPMA ............ 14

    A.  The Forest Service had no deeded easement across the Zimmermans' property prior to the Trail Donation Agreement ................................................................. 14

    B.  The Forest Service has never established a prescriptive easement and this case presents no opportunity to resolve whether such an easement could have been established ...................................... 18

    C.  The Trail Donation Agreement is not governed by FLPMA Section 206 and its implementing regulations ............ 26

      i.  Section 206 applies only to the disposal of federal land and interests in federal land ........................................ 26

      ii.  FLPMA's implementing regulations are also limited to exchanges involving federal land ..................................... 29

    D.  "Exceedingly clear language" is required for Section 206 and its implementing regulations to apply to private land ....... 32

    E.  Plaintiffs' FLPMA claim raises serious constitutional concerns ................................................................. 33

  II.  The Trail Donation Agreement does not violate NFMA ............... 36

    A.  The NFMA claim still rests on the faulty assumption that the Forest Service had a bona fide easement .................... 37

    B.  The Travel Plan did not preclude the Forest Service's negotiation with the Zimmermans but expressly encouraged it ............................................................... 40

C.   Even if the Forest Plan purported to regulate the
Zimmermans' private land, Plaintiffs' claims should fail .......... 41

CONCLUSION ........................................................................ 42

CERTIFICATE OF COMPLIANCE ........................................ 43

CERTIFICATE OF SERVICE ................................................. 44

# TABLE OF AUTHORITIES

## Cases

*All. for the Wild Rockies v. U.S. Forest Serv.*,
907 F.3d 1105 (9th Cir. 2018) ............................................................ 37

*Center for Biological Diversity v. U.S. Department of Interior*,
623 F.3d 633 (9th Cir. 2010) .............................................................. 29

*Dome Mountain Ranch v. Park Cty.*,
307 Mont. 420 (2001) ......................................................................... 25

*Fair Housing Council of San Fernando Valley v.
Roommate.com, LLC*,
666 F.3d 1216 (9th Cir. 2012) ..................................................... 36, 39

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ............................................................................ 32

*Heckler v. Chaney*,
470 U.S. 821 (1985) ............................................................................ 20

*Hells Canyon Preservation Council v. U.S. Forest Serv.*,
593 F.3d 923 (9th Cir. 2010) .............................................................. 19

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
140 F. Supp. 3d 1123 (D.N.M. 2015) ................................................. 21

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ............................................................ 11

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ................................................................ 3

*Leisz v. Avista Corp.*,
340 Mont. 294 (2007) ......................................................................... 23

*Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*,
381 Mont. 389 (2015) ......................................................................... 23

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) ............................................................................ 33

*Montana Wilderness Ass'n v. McAllister*,
07-cv-59, Doc. 54 (D. Mont. Nov. 26, 2007) .............................. 7, 38–39

*Montana Wilderness Ass'n v. McAllister,*
  658 F. Supp. 2d 1249 (D. Mont. 2009) ..................................... 7, 37–38

*Nat'l Mining Ass'n v. U.S. Dep't of Interior,*
  70 F.3d 1345 (D.C. Cir. 1995) ........................................... 15

*Native Ecosystems Council v. Dombeck,*
  304 F.3d 886 (9th Cir. 2002) ........................................... 10

*Native Ecosystems Council v. U.S. Forest Serv.,*
  418 F.3d 953 (9th Cir. 2005) ........................................... 37

*Nollan v. California Coastal Comm'n,*
  483 U.S. 825 (1987) ........................................... 33

*Norton v. Southern Utah Wilderness Alliance,*
  542 U.S. 55 (2004) ........................................... 19–20

*Occidental Engineering Co. v. I.N.S.,*
  753 F.2d 766 (9th Cir. 1985) ........................................... 10–11, 22

*Oregon Natural Desert Ass'n v. Jewell,*
  840 F.3d 562 (9th Cir. 2016) ........................................... 16

*Pascoag Reservoir & Dam, LLC v. Rhode Island,*
  217 F. Supp. 2d 206 (D.R.I. 2002),
  *aff'd,* 337 F.3d 87 (1st Cir. 2003) ........................................... 33–34

*Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found.,*
  259 Mont. 279 (1993) ........................................... 23, 25

*Public Land / Water Access Association, Inc. v. Robbins,*
  403 Mont. 491, 483 P.3d 1102 (2021) ........................................... 4, 19, 22–24

*Ruana v. Grigonis,*
  275 Mont. 441 (1996) ........................................... 17

*San Luis & Delta-Mendota Water Auth. v. Locke,*
  776 F.3d 971 (9th Cir. 2014) ........................................... 11

*Shiny Rock Min. Corp. v. United States,*
  906 F.2d 1362 (9th Cir. 1990) ........................................... 16

*Solid Waste Agency of Northern Cook Cty. v.
  U.S. Army Corps of Eng'rs,*
  531 U.S. 159 (2001) ........................................... 32

*United States Forest Service v.*
  *Cowpasture River Preservation Association,*
  140 S. Ct. 1837 (2020) ................................................ 13, 27–28, 32, 39

*United States v. Pappas,*
  814 F.2d 1342 (9th Cir. 1987) ............................................................ 34

*Utility Air Regulatory Group v. E.P.A.,*
  573 U.S. 302 (2014) ............................................................................ 30

*Wild River Adventures, Inc. v.*
  *Bd. of Trustees of School Dist. No. 8 of Flathead County,*
  248 Mont. 397 (1991) .................................................................... 16–17

## Constitution

U.S. Const. amend. V ...................................................................... 33, 35

## Statutes

5 U.S.C. § 706(2) ............................................................................... 10

43 U.S.C. § 1716 ............................................................................... 13

43 U.S.C. § 1716(a) .................................................................... 26–28, 32

43 U.S.C. § 1716(d)(1) ....................................................................... 27

43 U.S.C. § 1716(f) ............................................................................ 30

## Regulations

36 C.F.R. § 219.13(c) .................................................................... 14, 41

36 C.F.R. § 254.1(a) ...................................................................... 30–31

36 C.F.R. § 254.1(b) ...................................................................... 30–31

36 C.F.R. § 254.3(c) ........................................................................... 31

36 C.F.R. § 254.3(g) ........................................................................... 31

36 C.F.R. § 254.8 ............................................................................... 31

36 C.F.R. § 254.9 ............................................................................... 31

36 C.F.R. § 254.11 ............................................................................. 31

41 C.F.R. §§ 102-75.936–102-75.938 ................................................. 31

## Other Authorities

Callahan, Charles C., *Adverse Possession* (1961) ....................................34

Treanor, William Michael, Note, *The Origins and Original
    Significance of the Just Compensation Clause of the Fifth
    Amendment*, 94 Yale L.J. 694 (1985)..................................................34

## INTRODUCTION

The Forest Service and private landowners amicably resolved a longstanding access dispute concerning private property, thereby avoiding costly, time-consuming, and uncertain litigation over a potential prescriptive easement claim. Under their Trail Donation Agreement, landowners M Hanging Lazy 3, LLC and Henry Guth, Inc. (collectively, the Zimmermans) donated to the Forest Service a perpetual easement providing public access to federal land in the Crazy Mountains. AR_005976–88. Having avoided conflict and acquired the necessary rights, the Forest Service built the trail in 2019.

Plaintiffs disagree with the Forest Service's decision to negotiate rather than escalate the conflict. They believe the Forest Service could have prevailed in establishing an easement and, therefore, should not have agreed not to pursue the potential easement interest. But that policy disagreement is not legally actionable. Plaintiffs have brought no claim to force the Forest Service to perfect the potential easement, which would not be judicially reviewable in any event. And they identify no law forbidding the Forest Service from resolving the conflict at the negotiating table rather than in court. Indeed, the law expressly requires

1

the Forest Service to favor compromise and to pursue conflict only as a last resort. Forest Service Manual § 5463, AR_004980.

Instead, Plaintiffs bring several procedural claims against the Forest Service's acceptance of the Trail Donation Agreement. However, these claims all have a major common flaw: They rest, as this Court has already held, "on the faulty assumption the Forest Service ha[d] a bona fide interest" in the Zimmermans' land prior to their donation. Doc. 10, at 18. Plaintiffs' challenge fails because the Forest Service previously owned no property right in the land and, therefore, gave up no such right in the Trail Donation Agreement. While Plaintiffs may disagree with the Forest Service's "policy decision" to "pursue a mutually agreeable resolution with private landowners . . . instead of litigating the potential easement interest[,]" that decision was not unlawful. *See id.*

For that reason and others addressed below, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment to the Defendants.

# BACKGROUND

The facts relevant to this case are straightforward and not in dispute.[1]

The area in and around the Crazy Mountains, like much of the American west, is a checkerboard of federal, state, and private land. Landowners' Statement of Undisputed Facts (Facts) ¶ 1; AR_005156. Depending on the layout of the board, public access to federal lands can be a significant challenge and source of conflict. Sometimes there are few or no possible routes across federal land. Where the public appetite for access exceeds the capacity for federal land to provide it, access depends on easements, landowner permission, or illegal trespass.

Such is the case in the Crazy Mountains. There are few points within the range providing access via public lands or perfected easements. Facts ¶ 2; Doc. 7-12, at 9–10. There are several areas where

---

[1] Plaintiffs seek to introduce evidence outside of the Administrative Record. *See* Docs. 79-1–79-17. The Zimmermans urge the Court to reject these materials for the reasons explained herein and in their statement of disputed facts. Even were these materials properly before this Court, the Court can only consider them for the fact that they exist not, as Plaintiffs seek, for the truth of the disputed facts asserted in them. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

access rights have been disputed but no easements or other rights have ever been established by law. Facts ¶ 3; Doc. 7-12, at 9–10.

M Hanging Lazy 3, LLC and Henry Guth, Inc., which are owned by the Zimmermans and their extended family, own private land in the Crazy Mountains used for ranching and timber harvesting. Facts ¶¶ 4–5; AR__005385, 5613, 5746–47, 5781–82, 5892, 5981, 6012. Prior to the Trail Donation Agreement, this land was not encumbered by any easement for a Forest Service or other public trail. Facts ¶ 6; AR_005866–67; Doc. 10, at 18.

Forest Service personnel and members of the public had speculated that an easement for a trail, the Porcupine Lowline Trail, could be established across the Zimmermans' land by prescription. Facts ¶ 7; AR_005063. However, neither the Forest Service nor any other party has ever perfected any such easement, a legal process that would require them to bear the burden of establishing a half-dozen factors by clear and convincing evidence under state law. Facts ¶ 8; AR_005063. *See Public Land/Water Access Association, Inc. v. Robbins*, 403 Mont. 491, ¶ 41, 483 P.3d 1102, 1116 (2021).

The Zimmermans have taken several steps to protect their rights and their property, including erecting fences, installing gates, and posting signs. Facts ¶ 9; AR_001525. They have maintained these items for 20 years. Facts ¶ 9; Doc. 8-38, ¶¶ 5–7. And, for at least twelve years, the Forest Service has advised the public not to enter the Zimmermans' property without permission. Facts. ¶ 10; Doc. 8-38, ¶ 10. However, the Zimmermans have also been willing to work with the Forest Service to grant public access, provided that their property rights are respected. Facts ¶ 11; AR_58885–97.

In 2006, the Forest Service issued a Travel Plan for the Gallatin National Forest. Facts ¶ 12; Doc. 7-12, at 7; AR_005246. One of that plan's goals was to provide "reasonable, legal access to Gallatin National Forest lands to provide for human use and enjoyment and to protect and manage Forest resources and values." Facts ¶ 12; Doc. 7-12, at 7; AR_005246. With respect to public use of the Porcupine Lowline Trail, the Plan acknowledged that the Forest Service "must first negotiate an easement for portions of this trail that pass through private land." Facts ¶ 13; AR_005271. The Plan also listed the Porcupine Lowline area as one where trail access would have to be perfected. Facts ¶ 14; Doc. 7-12, at

7–8, 10. In the Plan's discussion of the Ibex Travel Planning Area (where the Zimmermans' land is located), the Forest Service reiterated its objective to "secure easements through private land on roads and trails designated for public use[.]" Facts ¶ 15; Doc. 7-12, at 25. And, in the response to the Zimmermans' comments, the Forest Service expressed its "willing[ness] to work with any landowner in agreeing to a long-term location and easement" for a trail. Facts ¶ 16; AR_003271.

In an administrative appeal, the Zimmermans objected to the Plan's depiction of a trail across their property because the Forest Service had established no valid easement rights. Facts ¶ 17; AR_005363–72. The Appeal Deciding Officer acknowledged that such depictions have led "to concern with adjacent landowners over what rights currently exist or do not exist." Facts ¶ 18; AR_005376. However, she concluded that the Travel Plan adequately disclosed that "there are insufficient rights or no existing rights" for some trails depicted in the Travel Plan, including the Porcupine Lowline Trail, by identifying them in a table as areas where the Forest Service's objective was to establish needed rights. Facts ¶ 19; AR_005376. She further recommended that the Forest Supervisor clarify how such rights would be obtained. Facts ¶ 20; AR_005376. As the Appeal

Deciding Officer had confirmed that the Travel Plan's depiction of a trail did not establish any easement but merely indicated the Forest Service's goal of establishing access rights at some later time, the Zimmermans had no cause to appeal the decision any further.[2]

In 2009, the Forest Service issued a Road and Trail Work Decision to implement the 2006 Travel Plan. Facts ¶ 21; AR_001514–56. This document provided the clarification suggested by the Appeal Deciding Officer, acknowledging that the route depicted for the Porcupine Lowline Trail "passes through large portions of private lands with fences, gates, past harvest and road building" and proposed that some portions of this route "may be shifted onto National Forest land to the east" and any route across private land "will be relocated to correspond with final rights-of-way." Facts ¶ 22; AR_001525. The Environmental Assessment and Finding of No Significant Impact accompanying the 2009 Road and Trail

---

[2] Plaintiffs falsely state that the Zimmermans pursued an unsuccessful legal challenge to the 2006 Travel Plan. Doc. 79, at 7 The Zimmermans were not parties to *Montana Wilderness Ass'n v. McAllister*, 658 F. Supp. 2d 1249 (D. Mont. 2009). Moreover, that case did not establish the existence of any easements on the Zimmermans' property. *See Montana Wilderness Ass'n*, 07-cv-59, Doc. 54, at 25–26 (D. Mont. Nov. 26, 2007). And, as nonparties, the Zimmermans would not be bound by the decision even if it had.

Decision analyzed the environmental impacts of constructing a trail if final rights-of-way could be obtained. Facts ¶ 23; AR_001209–1419.

Pursuant to the Forest Service manual, and the Forest Service's representations in the 2006 Travel Plan and 2009 Road and Trail Decision, the agency negotiated with the Zimmermans to secure a perpetual easement and resolve the dispute. Facts ¶¶ 25–26; AR_004974, 4980, 5885–97. In 2018, the two sides were close enough to an agreement that the Forest Service began the public scoping process for construction of the Porcupine Ibex Trail. Facts ¶ 27; AR_000277. The Forest Service asked the public to identify any environmental impacts of trail construction that had not previously been analyzed under the 2006 Travel Plan and the 2009 Road and Trail Decision. Facts ¶ 28; AR_000277. No significant, unanalyzed environmental impacts were identified. Facts ¶ 28; AR_000277.

In June 2019, the Zimmermans agreed, pending formal approval by the Forest Service, to donate an easement across their property in exchange for the agency not pursuing its disputed claims over the Porcupine Lowline Trail. Facts ¶ 29; AR_005885–97. The Zimmermans and the Forest Service executed this Trail Donation Agreement on

8

September 30, 2019, with the Zimmermans donating a well-defined easement to the Forest Service and the Service releasing "any easement interests it *may* have" in the Porcupine Lowline Trail. Facts ¶ 30; AR_005976–88 (emphasis added).

As the Zimmermans and the Forest Service were working toward a resolution, Plaintiffs filed this case challenging various Forest Service actions (and inaction) with respect to disputed Crazy Mountain trails, including the Porcupine Lowline Trail. Doc. 1. Plaintiffs initially sought a preliminary injunction, which this Court denied because Plaintiffs had "not raised serious questions" about the adequacy of the Service's environmental analysis, their case "rests on the faulty assumption the Forest Service has a bona fide interest in the disputed portions of the [Porcupine Lowline] trail," and Plaintiffs' claims attacked the rights of "private landowners, who are not parties to this lawsuit." Doc. 10, at 18–19. This Court also concluded that the public interest weighed against an injunction because blocking the Forest Service and the Zimmermans' agreement would "result in losing permanent public access rights to preserve what is only a potential easement interest in the trails." *Id.* at 21–22.

After the Trail Donation Agreement was executed, Plaintiffs moved to supplement their complaint and name M Hanging Lazy 3, LLC and Henry Guth, Inc. as defendants, which this Court allowed. Doc. 46. This supplemental complaint asserts three categories of claims, all against the Forest Service under the Administrative Procedure Act (APA). Plaintiffs bring no claims against the Zimmermans and this Court's order granting the motion to supplement the complaint authorizes no claims against them. *See id. See also* Doc. 47. Instead, their inclusion as defendants is solely to protect any interest that could be adversely affected by Plaintiffs' APA challenge to the Forest Service's acceptance of the Trail Donation Agreement. *See* Doc. 47.

## STANDARD OF REVIEW

The APA allows agency action and, in a narrow set of cases, agency inaction to be challenged as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2). *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Review of APA claims is limited to an administrative record containing the documents the agency considered when it took the challenged action, with narrow exceptions not implicated here. *Occidental Engineering Co.*

*v. I.N.S.*, 753 F.2d 766, 769–70 (9th Cir. 1985). APA cases should, therefore, be resolved on summary judgment without discovery, introduction of (and disputes over) outside evidence, or a trial. *Id.* ("Th[e] court is not required to resolve any facts in a review of an administrative proceeding" but only "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.").

Courts apply the APA's standards deferentially and will not disturb an agency's policy judgment. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). Instead, an agency action will be set aside only if the agency ignored factors required to be considered, its judgment is not supported by substantial evidence in the administrative record, or the action is contrary to governing law. *See Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005).

## ARGUMENT

Plaintiffs challenge (1) alleged procedural violations in the Forest Service's acceptance of the Trail Donation Agreement, Doc. 77, ¶¶ 115–139; (2) alleged violations in the Service's decision to construct a trail in the donated easement, *id.* ¶¶ 95–114; and (3) the Forest Service's failure

to assert and enforce a potential easement interest on other private land, *id.* ¶¶ 131–48. Consistent with this Court's ruling on Plaintiffs' motion to supplement the complaint, the Zimmermans will address only those claims against the Trail Donation Agreement and defer to the Forest Service on the other claims.

Plaintiffs' challenge to the Trail Donation Agreement depends on the assumption that the Forest Service owned a property right in the Zimmermans' land prior to the Trail Donation Agreement. It did not. Doc. 10, at 18. Therefore, the Federal Land Policy Management Act (FLPMA) provisions and regulations Plaintiffs cite do not apply. And, the Zimmerman's private land is not regulated by the 2006 Travel Plan or the National Forest Management Act (NFMA). Tellingly, Plaintiffs identify no case in which any court has ever held that these statutes apply where the government owned no property right but merely asserted a "potential easement interest" in private land. Doc. 10, at 21–22. The Court can resolve the case solely on this ground and need not address other arguments.

But Plaintiffs' claims also fail for other, independent reasons. First, Plaintiffs' FLPMA claim fails because, even if the Forest Service had

established an easement prior to the Trail Donation Agreement, the statutory provision and regulations they cite apply only to federal land and interests in federal land. *See* 43 U.S.C. § 1716. The Trail Donation Agreement involves neither. Facts ¶ 30; AR_005976–88. As the Supreme Court recently observed when interpreting similar statutory language, Plaintiffs' argument would raise serious constitutional concerns that should be avoided unless Congress uses such "exceedingly clear language" that avoidance is not possible. *See United States Forest Service v. Cowpasture River Preservation Association*, 140 S. Ct. 1837 (2020).

Second, Plaintiffs' NFMA argument fails because the 2006 Travel Plan does not regulate the Zimmermans' private land. Doc. 10, at 18. Nor does it forbid the Forest Service from negotiating with the Zimmermans. On the contrary, the Travel Plan expressly acknowledged the need to obtain an easement and expressed the Forest Service's willingness to "work with" the Zimmermans to find an acceptable "long-term location and easement." Facts ¶¶ 13–16; AR_003271, 5271; Doc. 7-12, at 7–8, 10, 25. Finally, even if the Travel Plan purported to regulate the Zimmermans' private land, despite the Forest Service's

13

acknowledgement and this Court's holding that it doesn't,[3] the Forest Service can correct such an error without jumping through the procedural hoops Plaintiffs assert. 36 C.F.R. § 219.13(c).

# I.   The Trail Donation Agreement does not violate FLPMA

## A.   The Forest Service had no deeded easement across the Zimmermans' property prior to the Trail Donation Agreement

Plaintiffs' characterization of the Trail Donation Agreement as an "exchange" regulated under FLPMA Section 206 and its implementing regulations assumes that the Forest Service owned a property right in the Zimmermans' land prior to the agreement. Despite the Forest Service's acknowledgment that it had no such right, Plaintiffs assert that it "may" have had a deeded easement under a decades-old deed. Doc. 79, at 22. That even Plaintiffs lack sufficient confidence in this argument to assert that the Forest Service actually *had* such an easement is sufficient to reject the argument. But the argument also fails for other reasons.

First, the deed's express terms foreclose any suggestion that it confers any easement *on the Forest Service*. Instead, any easement under the deed would be a public easement that the Forest Service does not own

_____

[3] Doc. 10, at 18.

and did not purport to extinguish in the Trail Donation Agreement. AR_000627. Therefore, the question whether the deed conveyed any easement to the public is irrelevant to this case and need not be resolved by this Court. *See* Doc. 39, at 3 n.1.

Second, Plaintiffs conflate different agency actions. The Forest Service recognized in the 2006 Travel Plan and 2009 Road and Trails Decision that it had no formal easement in the Zimmermans' land, set a goal to obtain an easement to provide public access, and committed to constructing a trail "to correspond with final rights-of-way[.]" Facts ¶¶ 13–16, 21–24; AR_000192, 1209–1419, 1514–56, 3271, 5271; Doc. 7-12, at 7–8, 10, 25. Plaintiffs do not claim that they or anyone else properly raised this issue during the administrative process concerning these agency decisions. Instead, they did so only years later, in response to the Forest Service's narrow request for the public to identify environmental impacts of trail construction not previously analyzed in 2006 and 2009. Facts ¶ 28; AR_000277. This belated and unpersuasive evidence offers no grounds to reverse the 2006 Travel Plan or 2009 Road and Trail Decision. *See Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1351 (D.C. Cir. 1995) (discussing the requirements to deem an agency to have

"reopened" an earlier decision).[4] As no party identified any significant issues or changed circumstances, the Forest Service determined no further analysis was required. Facts ¶ 28; AR_000277. Therefore, even if the deed had the effect Plaintiffs assert, Plaintiffs' failure to raise the point during the appropriate administrative process would preclude review. *See Oregon Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 574 (9th Cir. 2016) (Where commenters fail to raise an issue during notice and comment, "the issue was not exhausted and is not now subject to review.").[5]

Third, and only in an abundance of caution, the Zimmermans note that the deed created no easement whatsoever, contrary to Plaintiffs' mistaken assumption. Under Montana law, the words "subject to" in a deed "do not create an easement." *See Wild River Adventures, Inc. v. Bd. of Trustees of School Dist. No. 8 of Flathead County*, 248 Mont. 397, 401

---

[4] For this reason, Plaintiffs' NEPA claim also fails to the extent it purports to challenge the Trail Donation Agreement.

[5] Furthermore, any challenge Plaintiffs may have had against the 2006 Travel Plan and 2009 Road and Trails Decision on these grounds expired years before this complaint was filed. *See Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) (six-year statute of limitations runs from when agency action became final).

(1991). "The words 'subject to' used in their ordinary sense, mean subordinate to, subservient to or limited by. There is nothing in the use of the words 'subject to', in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights." *Id*. at 401–02. Instead, such language may leave undisturbed any existing easements or simply indicate that the grantor makes no warranty against potential easements. *Id*. The deed plaintiffs reference contains precisely the sort of boilerplate language that the Montana Supreme Court has found inadequate to establish an easement. *See* AR_000316. *See also Ruana v. Grigonis*, 275 Mont. 441, 449–51 (1996) (To grant an easement, a deed must describe the location and purpose with specificity or reference documents with such detail; "subject to" language without such specifics is inadequate.). The Forest Service acknowledges that it had established no formal easement in the Zimmermans' land prior to this deed. And Plaintiffs offer no argument to the contrary. Therefore, even if the Court were to consider the deed, it provides no support for Plaintiffs' claims.

**B.    The Forest Service has never established a prescriptive easement and this case presents no opportunity to resolve whether such an easement could have been established**

The Forest Service also has never established any prescriptive easement across the Zimmermans' property. Doc. 39, at 4. Instead, prior to the Trail Donation Agreement, the agency had at most "potential easement interests" based on the uncertain possibility that it could prevail on a prescriptive easement claim. *See* Doc. 10, at 21–22. In the Trail Donation Agreement, the Forest Service agreed not to pursue this claim; it did not give up any secure property right. *See id.*

Plaintiffs offer no argument that the Forest Service had perfected any prescriptive easement in the Porcupine Lowline Trail or the Zimmermans' property. Therefore, it is on this basis—the absence of any Forest Service property right, Doc. 10, at 18—that Plaintiffs' FLPMA claim must be judged and must fail.

Plaintiffs' misplaced reliance on disputed evidence that may have supported a theoretical easement claim is improper for many reasons. First, Plaintiffs bring no claim against the Forest Service to require it to

perfect a prescriptive easement across the Zimmermans' property.[6] Such a claim, if Plaintiffs had asserted it, would be nonjusticiable. APA review of agency decisions not to act "is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010). *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). If Plaintiffs cannot compel the Forest Service to pursue litigation to establish an easement, it necessarily follows that they cannot force the agency to act as if it brought such litigation and prevailed.

Plaintiffs identify no legislative command or other law requiring the Forest Service to escalate disputes over potential easements rather than negotiating with landowners. On the contrary, the Forest Service Manual requires the Service to "make reasonable effort to negotiate a satisfactory easement on equitable terms[.]" Forest Service Manual

---

[6] Plaintiffs have also brought no claim against the Zimmermans to establish a public prescriptive easement. This Court would not have jurisdiction to hear such a dispute, which would be between Montana parties over the application of Montana law to Montana private property. *See, e.g., Public Land/Water Access Association, Inc. v. Robbins*, 403 Mont. 491, ¶ 35, 483 P.3d 1102, 1115 (2021). Therefore, this question is also not before this Court. *See* Doc. 77, at 6 (invoking only federal question jurisdiction).

§ 5463, AR_004980. The Service considers litigation only where "there is no reasonable way to avoid non-Federal land and the right-of-way cannot be satisfactorily acquired through negotiation[s], or clear title cannot be conveyed due to title defects[.]" *Id.* And, even in those circumstances, no law requires the Service to pursue such litigation. *Id. See Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

Plaintiffs suggest that sufficient command can be found in the 2006 Forest Plan's direction that the Forest Service "protect existing access rights." Doc. 79, at 40–41. Plaintiffs beg the question by assuming the Forest Service had bona fide *rights* in the Zimmermans' land, rather than a mere potential easement interest. But even setting aside that problem for the moment, the Travel Plan's vague objective to "protect" access is not the sort of clear, ministerial command sufficient to compel agency action under the APA. *See Norton*, 542 U.S. at 64.[7] It doesn't provide *how* the Forest Service should protect access, much less compel it to do so in

---

[7] Plaintiffs also cite a Forest Plan "guideline" that the Forest Service "take actions necessary to protect the existing rights to NFS lands" where such rights are contested. The Forest Plan explicitly acknowledges that such guidelines "are non-binding." Doc. 7-12, at 2. Therefore, this guideline imposes no nondiscretionary duty on the Service either.

the manner Plaintiffs prefer.[8] For this reason, management plan objectives and guidelines like these are "not enforceable[.]" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 140 F. Supp. 3d 1123, 1193 (D.N.M. 2015). *See* Doc. 7-12, at 1–2.

Moreover, Plaintiffs' argument rests on a misleading paraphrase of the 2006 Forest Plan. The Plan gives the Forest Service "direction to protect existing access rights *and to cooperate with landowners* to meet mutual transportation needs." AR_005247 (emphasis added). And, the Plan continues, "[i]t should be noted that adoption of this direction is not a final agency decision to pursue access in specific locations. Historically, we have obtained needed access in cooperation with the private landowners as opportunities arise." *Id*. Add to this the Plan's several explicit acknowledgments that the Forest Service lacks any formal easement rights to the Zimmermans' land and Plaintiffs' argument that the Plan bound the Forest Service to escalate the conflict in the way they

---

[8] Plaintiffs do not clearly state what discrete action they think the Forest Service was required to take, be it erecting signs on federal property disputing the Zimmerman's "private" and "no trespassing" signs, trespassing onto the Zimmermans' property to remove gates and signs, or suing the Zimmermans to establish a formal easement. Regardless, nothing in the Travel Plan requires the Forest Service to follow Plaintiffs' policy preference, whatever it may be.

prefer unravels. Facts ¶¶ 13–16; AR_003271, 5271; Doc. 7-12, at 7–8, 10, 25.

Second, any prescriptive easement claim would not be reviewed under the Administrative Procedure Act, constrained to an administrative record, nor resolved on summary judgment. It simply cannot be shoehorned into an APA claim. *See Occidental Eng'g*, 753 F.2d at 769–770.[9] Instead, under Montana law, a party seeking to establish a prescriptive easement would have to prove to a court at trial, by clear and convincing evidence, "open, notorious, exclusive, adverse, continuous and uninterrupted" use of the alleged easement for five years. *See Robbins*, 403 Mont. ¶ 35, 483 P.3d at 1115. Of note, Montana considers recreational uses, including "seasonal use by hunters, fisherman, hikers, campers, use by neighbors visiting neighbors, and persons cutting

---

[9] To the extent Plaintiffs attempt to shoehorn into their APA claims a dispute over whether the Forest Service could have established a prescriptive easement, they have "confuse[d] the use of summary judgment in an original district court proceeding with the use of summary judgment . . . reviewing a decision of an administrative agency[.]" *Occidental Eng'g*, 753 F.2d at 770. Plaintiffs' APA claims provide no opportunity to introduce or resolve "disputed issues of material fact[.]" *Id.* at 769. Instead, the question in this case is only whether "the evidence in the administrative record permitted the agency to make the decision it did[.]" *Id.*

Christmas trees and gathering firewood," as inadequate to show adversity. *Id.* ¶ 41, 483 P.3d at 1116 (quoting *Leisz v. Avista Corp.*, 340 Mont. 294, 305 (2007)). A party wishing to establish an easement by prescription must also overcome landowner defenses, including whether the landowner has extinguished any easement by erecting and maintaining gates, signs, and other measures. *See Letica Land Co., LLC v. Anaconda-Deer Lodge Cty.*, 381 Mont. 389, 401 (2015); *Pub. Lands Access Ass'n, Inc. v. Boone & Crockett Club Found.*, 259 Mont. 279, 288 (1993). Rather than bear the time and expense required for the uncertain possibility the agency could meet these burdens, the Forest Service sought instead a mutually agreeable compromise with the Zimmermans—contrary to no law and precisely as the Forest Service Manual directs. Forest Service Manual § 5463, AR_004980.

Third, while unnecessary to resolve Plaintiffs' claims, the Zimmermans note that the administrative record provides ample evidence that a prescriptive easement would be difficult to prove. While the Porcupine Lowline Trail has appeared on various Forest Service maps over the years, Plaintiffs conveniently ignore that those maps identify inconsistent locations for the trail. *See* AR_000592 ("The location

of the trail alignment itself has varied up to a mile over the decades."). The record also acknowledges a lack of physical evidence of the trail crossing private land. AR_000591–92. While Forest Service employees traveled between ranger stations historically, early maps are an unreliable indicator of their route—nor do they support the route Plaintiffs seek today. *See* Doc. 8-38, ¶ 3. Even if the Forest Service employees' route had crossed the Zimmerman's land and could support a potential easement claim, public recreation "was not the intent of the trail." AR_000592. Therefore, this evidence could not support an easement sufficient for the Plaintiffs' purposes. And the alleged uses of this trail—the Zimmermans' neighbor (the Forest Service) visiting another neighbor (other Forest Service land) and, later, recreational uses—may not support adversity under Montana law. *See Robbins*, 403 Mont. ¶ 35, 483 P.3d at 1115. Therefore, it is purely speculative whether the Forest Service could have perfected a prescriptive easement prior to the Trail Donation Agreement.

Additionally, the administrative record shows that the Zimmermans had a strong argument that any potential prescriptive easement was extinguished. Under Montana law, a landowner can

24

extinguish a prescriptive easement by maintaining a locked gate or no trespassing sign for five years. *Pub. Lands Access Ass'n*, 259 Mont. at 287; *Dome Mountain Ranch v. Park Cty.*, 307 Mont. 420, 426 (2001). Plaintiffs, through their counsel, admit that the Zimmermans have taken these actions for at least twenty years. Doc. 8-38, ¶¶ 5–7. The administrative record supports this admission. *See* Facts ¶ 9–10; AR_001525. And the Forest Service has advised the public not to enter the Zimmermans' property without permission for ten years. Facts ¶ 10; Doc. 8-38, ¶ 10.

In sum, any prospect that the Forest Service could have established an easement by prescription is not before this Court, is speculative, and would have required the agency to spend significant money and time with no guarantee of success. For that reason, it was reasonable for the Forest Service to negotiate, as it is directed to do by the Forest Service Manual, and the administrative record adequately supports the agency's decision.

**C.    The Trail Donation Agreement is not governed by FLPMA Section 206 and its implementing regulations**

**i.    Section 206 applies only to the disposal of federal land and interests in federal land**

Plaintiffs selectively quote Section 206 of FLPMA to omit the language relevant to this case. Doc. 79, at 15. Section 206 only applies to exchanges in which the government disposes of federal land or interests in federal land. It does not apply in cases, like this one, that concern only interests in private land. Therefore, even if the Forest Service had an easement in the Zimmermans' land prior to the Trail Donation Agreement, Section 206 would not be implicated.

Section 206, which is titled "Exchanges of *public lands or interests therein* within the National Forest System," provides in relevant part that:

> A tract of *public land or interests therein* may be disposed of by exchange by the Secretary under this Act and a tract *of land or interests therein within the National Forest System* may be disposed of by exchange by the Secretary of Agriculture under applicable law where the Secretary concerned determines that the public interest will be well served by making that exchange . . . .

43 U.S.C. § 1716(a) (emphasis added).

By its own terms, and consistent with its title and inclusion in the *Federal Land* Policy Management Act, Section 206 applies only to the

26

disposal of federal land or interests in federal land, *i.e.*, "public land,"
"land . . . within the National Forest System," and "interests therein."[10]
*See* 43 U.S.C. § 1716(a), (d)(1). It does not apply to private land or to
interests in private land.

The Supreme Court's recent decision in *Cowpasture* is instructive
on this point. 140 S. Ct. 1837 (2020). In that case, the Court considered
whether the Forest Service could grant a pipeline right-of-way beneath a
segment of the Appalachian Trail within the George Washington
National Forest. *Id.* at 1841–42. That question turned on whether the
National Park Service's management of the trail rendered the land it
crossed "lands in the National Park System" outside of the Forest
Service's jurisdiction. *Id.* at 1842–44.

To resolve that question, the Court "focus[ed] on the distinction
between the *lands* that the Trail traverses and the Trail itself, because
the lands (not the Trail) are the object of the relevant statute." *Id.* at
1844. The National Park Service merely has an easement in the

---

[10] Section 206 distinguishes National Forest System land from other
public land because it can be disposed of by the Department of
Agriculture while other public land can be disposed of only by the
Department of the Interior. *See* 43 U.S.C. § 1716(a).

Appalachian Trail, the Court explained, and "easements are not land, they merely burden land that continues to be owned by another." *Id.* at 1845. Because land burdened by a National Park Service easement could not be deemed "lands in the National Park System[,]" the Forest Service could grant the pipeline right-of-way. *Id.* at 1846.

Although *Cowpasture* concerned which of two federal agencies had authority over federal land, the decision rested on general property law principles. *Id.* at 1845. Therefore, the same logic can be applied here. On its face, Section 206 turns on the status of the land at issue. It applies only to "public lands," "land[s] . . . within the National Forest System," and "interests therein." 43 U.S.C. § 1716(a). The Trail Donation Agreement concerns only the Zimmerman's private land. Facts ¶ 30; AR_005976–88. As the Supreme Court held in *Cowpasture*, a mere easement—even if one had existed prior to the Zimmermans' donation—would not cause their land to be lands within the National Forest System. *See* 140 S. Ct. at 1845. Therefore, Section 206 does not apply.

Notably, Plaintiffs do not offer even a *prima facie* argument that Section 206 applies. Instead, they simply ignore Section 206's scope. Doc. 79, at 15–19. Plaintiffs cannot plausibly claim surprise about this issue.

In its brief opposing the preliminary injunction, the Forest Service explained that this case concerns only private land and, therefore, statutes and regulations limited to "federal lands, i.e. 'National Forest System Lands'" do not apply. *See* Doc. 8, at 16. And this Court denied the preliminary injunction in part because of this argument. *See* Doc. 10, at 18 ("The Forest Service cannot enforce its Travel Management Plan over private property."). Yet, nearly two years later, Plaintiffs still offer no response.

The lone case Plaintiffs cite supports the Zimmermans on this point. In *Center for Biological Diversity v. U.S. Department of Interior*, the Ninth Circuit considered a land exchange between the Bureau of Land Management and a mining company. 623 F.3d 633, 636 (9th Cir. 2010). Unlike this case, that agreement disposed of federal land and Section 206 applied for that reason. *Id.* at 637 ("[T]he proposed land exchange would convey to Asarco in fee simple thirty-one parcels of public land totaling 10,976 acres[.]").

### ii.    FLPMA's implementing regulations are also limited to exchanges involving federal land

Plaintiffs also assert that the agreement violates Forest Service regulations implementing Section 206. Here too, they ignore the scope of

those regulations and offer no argument that they apply to the Trail Donation Agreement.

Regulations must be consistent with the statute that authorizes them.[11] These implementing regulations are no exception. 43 U.S.C. § 1716(f) (authorizing regulations "governing exchanges of lands and interests therein pursuant to this Act . . . ."). By their clear text, the regulations apply to the same National Forest System lands that are covered by Section 206 and interests in such lands.

According to its "scope and applicability" section, the Forest Service's regulations in Title 36, Part 254 of the Code of Federal Regulations apply only to "exchanges of National Forest System lands." 36 C.F.R. § 254.1(a). *See* 36 C.F.R. § 254.1(b) (referring to interests in these lands, such as "minerals, water rights, and timber"). Regulations in Part 254 only apply to "other methods of acquisition" where expressly indicated. 36 C.F.R. § 254.1(b).

---

[11] If the regulations went beyond the statute's authorization, they would be unlawful and Plaintiffs' claims would fail for that reason. *See Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 333–34 (2014).

Plaintiffs cite several regulations in Part 254. *See* 36 C.F.R. §§ 254.3(c), 254.3(g), 254.8, 254.9, 254.11. All are, on their face, limited to the "exchanges" identified in § 254.1(a). None contain any language indicating that they apply to any other methods of acquisition or to private land. *See* 36 C.F.R. § 254.1(b).

Again, Plaintiffs have not offered even a *prima facie* argument that the regulations apply. Here, too, Plaintiffs cannot feign surprise. More than a year ago, the Forest Service explained that the Trail Donation Agreement is not governed by Part 254. Instead, it is subject to a different set of regulations that are not limited to National Forest System land. *See* Doc. 39, at 7–8 (citing 41 C.F.R. §§ 102-75.936–102-75.938). Plaintiffs have brought no claim under the applicable regulations nor presented any argument that the Trail Donation Agreement violates them.

Therefore, Plaintiffs' arguments under the Part 254 regulations fail for the same reasons that their Section 206 argument does.

**D.    "Exceedingly clear language" is required for Section 206 and its implementing regulations to apply to private land**

Extending regulations for National Forest System land to private or state land would have "striking implications for federalism and private property rights." *Cowpasture*, 140 S. Ct. at 1849–50. States, not the federal government, have traditional and primary power over private land use. *Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174 (2001). And they have plenary authority over state land. *See Cowpasture*, 140 S. Ct. at 1849 n.6. As the Court observed in *Cowpasture*, allowing a mere easement to draw state or private land into the federal system would "significantly alter the balance between federal and state power and the power of the Government over private property." *Id*. at 1849–50 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Precedent "require[s] Congress to enact exceedingly clear language" if it wishes to produce such results. *Id*.

Section 206 contains no such exceedingly clear language. Indeed, its text is for all practical purposes the same as that the Supreme Court found insufficient in *Cowpasture*. *Compare* 140 S. Ct. at 1842–44 ("National Park System lands") *with* 43 U.S.C. § 1716(a) ("land[s] . . . within the National Forest System"). Therefore, Section 206 and its

implementing regulations do not apply to state or private land and Plaintiffs' FLPMA claim fails for this reason also.

### E.   Plaintiffs' FLPMA claim raises serious constitutional concerns

Under the Fifth Amendment, the federal government must pay "just compensation" whenever it takes "private property . . . for public use." U.S. Const. amend. V. Where the government acquires a permanent easement for itself or the public to physically occupy private property, it is a *per se* taking. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). *See also Nollan v. California Coastal Comm'n*, 483 U.S. 825, 832 (1987) Therefore, were the Forest Service to establish an easement across the Zimmermans' land as Plaintiffs desire, the condemnation of that easement would be a taking under the Fifth Amendment. *See Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F. Supp. 2d 206, 222 (D.R.I. 2002), *aff'd*, 337 F.3d 87 (1st Cir. 2003).

That the government would take this property by prescription rather than a traditional condemnation is of no consequence. "Simply because an area of law may be ancient and well settled does not mean that it trumps the mandates of the United States Constitution." *Pascoag Reservoir*, 217 F. Supp. 2d at 225. The Fifth Amendment supersedes the

government's earlier common law rights to take private property without paying just compensation. *See* William Michael Treanor, Note, *The Origins and Original Significance of the Just Compensation Clause of the Fifth Amendment*, 94 Yale L.J. 694, 697 (1985). "The government is not like another private individual, and the Constitution through the Takings Clause recognizes that distinction." *Pascoag Reservoir*, 217 F. Supp. 2d at 225.[12]

Plaintiffs seek to effectively commit the Forest Service to taking private property wherever it asserts a mere potential easement interest, a theory with broad constitutional implications well beyond this case. They identify no law supporting this result. On the contrary, the Forest Service Manual provides that condemnation should be a last resort and

---

[12] The government's unique status provides it both benefits and burdens in this context. While the government cannot take an easement in private property without compensating the owner, it also cannot lose property by prescription or adverse possession. *See United States v. Pappas*, 814 F.2d 1342, 1343 n.3 (9th Cir. 1987). Furthermore, this distinction between the government and private parties fits the purposes behind adverse possession and prescription, economic efficiency and the alienability of land interests. *See* Charles C. Callahan, *Adverse Possession* 93 (1961). Because the government has an eminent domain power that private parties lack, those purposes are not advanced by the government taking private property without paying just compensation.

is unavailable where the agency can acquire needed access through negotiation, as it did here. Forest Service Manual § 5463, AR_004980.

Plaintiffs' appraisal argument raises an additional Takings Clause concern. Any attempt to appraise the Forest Service's potential easement interests prior to the Trail Donation Agreement must account for the Fifth Amendment's Just Compensation requirement. U.S. Const. amend. V. Because the Forest Service would have to pay fair market value to acquire the easement Plaintiffs desire, it follows that this potential claim must have no market value.

Suppose, for instance, that the Forest Service announced its interest in acquiring private land through a traditional condemnation. If, instead, the Forest Service negotiated with the landowner to acquire some part of the property, an easement, or other right in exchange for dropping its condemnation plans, the agency would be disposing of no federal property and would have nothing to appraise under Section 206 and its regulations. As here, the potential interest that the Forest Service gave up would be qualified by the obligation to pay just compensation if it ever followed through and took the private property. The value of such an interest must be zero; otherwise, the landowner would not be receiving

35

fair market value. Instead, some of that value would be impermissibly captured by the government.

If the Court grants summary judgment to Defendants, it need not resolve these thorny constitutional issues. Therefore, the doctrine of constitutional avoidance provides an additional reason to rule for Defendants. *See Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1222 (9th Cir. 2012) (If a statute can be reasonably interpreted to avoid a constitutional concern, courts "can and must choose th[at] construction.").

## II.    The Trail Donation Agreement does not violate NFMA

Plaintiffs also assert that the Forest Service's acceptance of the Trail Donation Agreement violates NFMA. Because the Travel Plan depicts the Porcupine Lowline Trail's uses as hiking, mountain biking, stock, snowshoeing, and motorcycles, Plaintiffs assert, the Forest Service was bound to "maintain" the disputed trail for these purposes and could not forego pursuit of its potential easement claim in exchange for a donated easement providing similar public access.

## A.   The NFMA claim still rests on the faulty assumption that the Forest Service had a bona fide easement

As this Court has already held, the Forest Service "cannot enforce its Travel Management Plan over private property." Doc. 10, at 18. Because the Forest Service owned no property right in the Zimmermans' land prior to the Trail Donation Agreement, the Travel Plan did not and could not regulate their property. *See id.*

Both cases Plaintiffs cite concern a forest plan's application to federal property. *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105 (9th Cir. 2018); *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953 (9th Cir. 2005). As the Forest Service observed in its opposition to the preliminary injunction, "[i]n the entire history of NFMA, no case has ever held a USFS Travel Plan could establish a USFS or public use right across private property." Doc. 8, at 17.

Plaintiffs have suggested, although they do not develop the argument in their brief, that the 2006 Travel Plan has this unprecedented effect due to dicta in a preliminary injunction decision in *Montana Wilderness Association v. McAllister*, 658 F. Supp. 2d 1249 (D. Mont. 2009). In that case, several recreational groups challenged the Plan for not allowing more motorized recreation in the Hyalite Porcupine

37

Buffalo Horn Wilderness Study Area south of Bozeman. *Id.* at 1252. The recreational groups sought a preliminary injunction, asserting that the Travel Plan's maps were not sufficiently detailed and their members would suffer irreparable harm if they mistakenly violated the Travel Plan's use restrictions, got lost, or wandered onto private land where the Forest Service had insufficient access rights. *Montana Wilderness Ass'n*, 07-cv-59, Doc. 54 (D. Mont. Nov. 26, 2007) (order denying motion for preliminary injunction). That motion was denied for several reasons, including that any irreparable harm was too speculative. *Id.* With respect to the last purported harm, trespassing on private property, the magistrate judge concluded that disputes over potential easements on private land were "between the landowners and the Forest Service" and did not involve the recreational users. *Id.* at 25–26.

The magistrate judge also noted, in dicta, that "[t]he mere fact that a landowner disputes the presence of a prescriptive easement on his or her property does not mean that the landowner is legally correct." *Id.* Plaintiffs' reliance on this dictum as supporting the existence of a prescriptive easement here is misplaced. The Zimmermans were not parties to *Montana Wilderness Association*. *See id*. The case did not

38

involve the Crazy Mountains, the Zimmermans' property, or the Porcupine Lowline Trail nor purport to resolve any access dispute. *See id.*

Instead, the magistrate judge simply recognized that mere assertions from one side of a dispute are not dispositive. This logic supports the Defendants, not Plaintiffs. Just as a landowner disputing an alleged prescriptive easement does not mean she's correct, the government's assertion of a potential easement interest does not make it correct either. That's why a bona fide easement can only be established through the proper legal processes.

Additionally, Plaintiffs' NFMA claim is subject to the same "exceedingly clear language" requirement as its FLPMA claim. *See Cowpasture*, 140 S. Ct. at 1849–50. *See also supra* at 32–33. Plaintiffs identify no such language. And the NFMA claim raises the same serious constitutional concerns, which can be avoided by affirming this Court's prior holding that the Travel Plan does not regulate the Zimmermans' private land. Doc. 10, at 18. *See Roommate.com*, 666 F.3d at 1222. *See also supra* at 33–36.

**B.    The Travel Plan did not preclude the Forest Service's negotiation with the Zimmermans but expressly encouraged it**

Plaintiffs' NFMA argument also misrepresents the effect of the Travel Plan. Under the Travel Plan, only "standards" are binding. Doc. 7-12, at 2. Goals, objectives, guidelines, and directives are aspirational. *Id.*

The Travel Plan eliminated a prior standard providing that access rights "will be acquired" to meet Forest Service objectives, replacing it with a directive identifying areas where access rights are desired. Doc. 7-13, at 3. In explaining the change, the Travel Plan observed that this "should not be listed as a 'standard' and not specify that 'road and trail rights-of-way *will* be acquired.' Negotiation and agreement are necessary with private landowners to achieve access goals." *Id.*

The Travel Plan explicitly embraces the Forest Service negotiating with landowners, including the Zimmermans, to resolve access disputes. The Travel Plan acknowledges that the Service "must first negotiate an easement for portions of [the Porcupine Lowline Trail] that pass through private land," identified the trail as an area where access rights needed to be perfected, and expressed the agency's "willing[ness] to work with

40

any landowner in agreeing to a long-term location and easement" for a trail. Facts ¶¶ 12–16; Doc. 7-12, at 7–8, 10, 25; AR_003271, 5246, 5271. The Forest Service resolved administrative appeals in part based on its representation that the depiction of trails on private land did not establish an easement. Facts ¶¶ 17–20; AR_005363–72, 5376–77. Thus, in negotiating and accepting the Trail Donation Agreement, the Forest Service did not violate the Travel Plan but did exactly what the agency set out to do in that plan.

## C.  Even if the Forest Plan purported to regulate the Zimmermans' private land, Plaintiffs' claims should fail

Finally, even if the Travel Plan purported to regulate the Zimmermans' private land, Plaintiffs' procedural objections fail. The Travel Plan's standards are qualified by a requirement that they not be contrary to other law or regulation, including the Constitution's protections for private property rights. *See* Doc. 8, at 17. Therefore, if the Travel Plan improperly asserted control over the Zimmermans' private property, correcting this error would require neither a formal amendment nor extensive process. *See* 36 C.F.R. § 219.13(c) (establishing a streamlined process for correcting forest plans).

41

## CONCLUSION

In this case, the Forest Service did precisely what the Forest Service Manual requires, what the agency expressed its intention of doing in the 2006 Travel Plan, and what it committed to doing in the 2009 Road and Trails Decision: negotiated with the Zimmermans to resolve a long running access dispute while avoiding costly and time-consuming litigation over a potential easement interest. Plaintiffs' effort to resurrect the resolved dispute should fail because their claims rest on the faulty assumption that the Service already had a property right in the Zimmermans' land prior to the Trail Donation Agreement. As this Court has already held, it did not. Plaintiffs' motion for summary judgment should be denied, and judgment entered for the Defendants.

Dated: May 21, 2021.

Respectfully submitted,

ETHAN W. BLEVINS
JONATHAN WOOD
JEFFREY W. McCOY

/s/ Ethan W. Blevins
ETHAN W. BLEVINS

*Attorneys for Defendants*
*M Hanging Lazy 3, LLC and*
*Henry Guth, Incorporated*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word count in D. Mont.

L.R. 7.1(d)(2) and contains 8,367 words.

/s/ Ethan W. Blevins
ETHAN W. BLEVINS

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Ethan W. Blevins
ETHAN W. BLEVINS