IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF THE CRAZY MOUNTAINS, a public organization, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> MARY ERICKSON, in her official capacity as Forest Supervisor for the Custer Gallatin National Forest, *et al.*, <br><br> Defendants. | CV 19-66-BLG-SPW <br><br> ORDER ADOPTING FINDINGS AND RECOMENDATIONS |

Before the Court are U.S. Magistrate Judge Cavan's Findings and Recommendations (Doc. 101) regarding Plaintiffs Friends of the Crazy Mountains *et al*'s Motion for Summary Judgment (Doc. 78), the Federal Defendants' Cross-Motion for Summary Judgment (Doc. 81), and the Landowner Defendants' Cross-Motion for Summary Judgment (Doc. 85). Plaintiffs assert that the U.S. Forest Service (USFS) improperly acted in its management of four trails in the Crazy Mountains in southcentral Montana. Judge Cavan recommended denying the Plaintiffs' motion and granting both the Federal Defendants' cross-motion and the Landowner Defendants' cross-motion. (Doc. 101 at 2). Plaintiffs object to these determinations and assert that the easement exchange violated several

1

administrative laws. (Doc. 103 at 2-3). Both the Federal Defendants and the Landowners filed responses to the Plaintiffs' objections. (Docs. 104 and 105). For the following reasons, the Court adopts Judge Cavan's Findings and Recommendations in full.

I. **Legal Standards**

*A. Standard of Review*

Litigants are entitled to *de novo* review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews a magistrate's Findings and Recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). A party makes a proper objection "by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a contrary result. *Lance v. Salmonson*, 2018 WL 4335526 at *1 (D. Mont. Sept. 11, 2018). A district court, when conducting review of a magistrate's recommendations, may consider evidence presented for the first time in a party's objections, but it is not required to. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

*B. Review under the Administrative Procedures Act*

The Plaintiffs' claims are reviewed under the Administrative Procedures Act. *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Under the APA, agency actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Dombeck*, 304 F.3d at 891. The standard is highly deferential, presuming the agency action to be valid. *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011). "Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account if the agency's path may be reasonably discerned." *San Luis & Delta-Mendota Water Authority v. Locke,* 776 F.3d 971, 994 (9th Cir. 2014). It is not the reviewing court's task to make its own judgment about the appropriate outcome. *Locke*, 776 F.3d at 994 (citation omitted).

An agency action is arbitrary or capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law. *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005).

**II.     Background**

*A. Factual Background[1]*

This case concerns a longstanding dispute regarding public access to trails in the Crazy Mountains ("Crazies"). The Crazies are made up of a checkerboard of state, federal, and private land. At issue here are four trails that traverse that checkerboard landscape as part of the Gallatin National Forest (the "Forest"). Two of the trails are located on the west side of the Crazies, and two are on the east side.

On the west side of the Crazies are the Porcupine-Lowline trail (No. 267) and the North Fork Elk Creek trail (No. 195), both of which travel through public and private property. The trails have been depicted on National Forest maps since the early 1900s, and the Forest Service believed it had a prescriptive easement interest in those portions of the trails that passed through private property. But the Forest Service has never secured a perfected easement interest in the trails, and private landowners have long disputed Forest Service access rights to these trails on private property. By 2002, landowners along the Porcupine-Lowline trail began blocking public access to portions of the trail by installing fences and gates and posting "private property, no trespassing" signs. In an effort to resolve the access

---

[1] The facts herein are recited as Magistrate Judge Cavan found them. To the extent the Plaintiffs object to these factual determinations, those objections are addressed in the analysis section, *infra*. To the extent they are not objected to, Judge Cavan's factual findings are reviewed for clear error and, finding none, adopted by the Court.

4

dispute, the Forest Service and landowners began meeting in 2004 to try and negotiate public access to Forest lands.

During this same period of time, the Forest Service began the process of creating a draft environmental impact statement ("EIS") and Travel Management Plan for the Gallatin National Forest, which included Forest Service lands in the Crazies. The Final EIS and Travel Plan were completed in 2006 ("2006 Travel Plan"). The 2006 Travel Plan identified opportunities for public recreational use and access using the Forest road and trail system. The Travel Plan made note of the "checkerboard ownership pattern" of lands in the Forest, "with alternating sections of public and private land." (A.R. 5224.) It also stated an objective for the Porcupine-Lowline trail to "secur[e] easements through private land on roads and trails designated for public use" to provide motorcycle opportunity on the trail and to gain better access to National Forest lands in the travel planning area. (A.R. 5271.)

The 2006 Travel Plan was subsequently implemented through a site-specific Road and Trail Environmental Analysis ("2009 EA"). The purpose of the 2009 EA was to analyze the potential environmental effects of several road and trail projects on the Forest. With respect to the Porcupine-Lowline trail, the 2009 EA set forth the following proposed reroute of the trail:

**Porcupine Area** (Crazy Mountain Range, Map CRZ-1)

> In the Porcupine area portions of the Porcupine-Lowline Trail #267 between the Ibex and Porcupine trailheads would be relocated to correspond with final rights-of-way. Some portions of the trail may be shifted onto National Forest land to the east. Currently, the trail passes through large portions of private lands with fences, gates, past harvest and road building and needs to be remarked and reconstructed. Under the decision for the Gallatin Travel Plan this trail is to provide opportunities for motorcycle, mountain bike, stock and foot use (Travel Plan Decision, page II-111). Work would involve about 5.2 miles of new trail construction, 2.6 miles of reconstruction and 3.0 miles of maintenance.

(A.R. 16-17.) Because the Forest Service was still negotiating with the landowners, it did not know the precise location of the trail reroute. Nevertheless, two maps were distributed during scoping and attached to the 2009 EA, which showed the area of the proposed reroute. One map fixes the beginning and end points of the reroute, and states: "Relocate portions of Porcupine Trail onto final rights-of-way between these points." (A.R. 4040.) The other map shows a red oval around the area of land where the trail would be re-routed, thus designating the area of "National Forest land to the east" where the Forest Service would seek to relocate the trail. (A.R. 4039.) The oval generally encompasses a section of National Forest land and an adjacent section of private land, designating placement of the trail within that private/public corridor.

In 2018, the Forest Service and Landowners came to a tentative agreement for a reroute of the Porcupine-Lowline trail. Under the agreement, the Landowners would grant an easement across their property to access Forest lands, and the

Forest Service would relinquish any potential interests it had across the historic Porcupine-Lowline and North Fork Elk Creek trail routes.

The Forest Service initiated scoping and public comment on the proposed reroute, called the Porcupine-Ibex trail (the "Ibex project"). The Forest Service made clear that, based on the information received in scoping, if there was any uncertainty as to whether the reroute would have a significant effect on the environment, the Forest Service would prepare an environmental assessment. Comments were received both in support and against the trail reroute. After reviewing the comments, the Forest Service did not identify any significant, unanalyzed environmental impacts, and thus, determined the Ibex project was consistent with the 2009 EA. The Trail Easement Agreement ("Easement Agreement") was finalized in September 2019. (*See* A.R. 5885-97; 5976-78; 5979-88.)

This action also challenges the Forest Service's management of two trails on the east side of the Crazy Mountains, the East Trunk trail (No. 115, later No. 136) and the Sweet Grass trail (No. 122). Similar to the west side trails, these trails had long been depicted on National Forest maps. But, like the west side trails, the Forest Service does not have a recorded interest in all portions of the east side trails that pass through private property, and landowners along the trails dispute the public's right to use the trails. The Forest Service is currently negotiating with

landowners for public access. In the meantime, the landowners have obstructed public access to the trails, and Plaintiffs allege the Forest Service has failed to intervene and manage the trails for public use.

On June 10, 2019, Plaintiffs, a coalition of local organizations, filed this action for declaratory and injunctive relief to enjoin Federal Defendants from constructing the Ibex project. (Doc. 1.) This Court denied the motion, finding, *inter alia*, that Plaintiffs did not demonstrate a likelihood of success on the merits. (Doc. 10.)

Subsequently, Plaintiffs filed an Amended Supplemental Complaint. (Doc. 77.) There, Plaintiffs allege that the Forest Service violated: (1) the Federal Land Policy Management Act ("FLPMA") with its Easement Agreement with the Landowners; (2) the National Environmental Policy Act ("NEPA") by failing to analyze the environmental impacts of the Ibex project; and (3) the National Forest Management Act ("NFMA") by failing to comply with the 2006 Travel Plan. (*Id.*) Plaintiffs also contend the Federal Defendants' failure to manage the east side trails for public use violates NFMA, the 2006 Travel Plan, and Forest Service policy. (*Id.*)

Plaintiffs request that the Court declare the Forest Service has violated FLPMA, NEPA, and NFMA; vacate the Forest Service's approval of the Ibex

project and void the Easement Agreement; and direct the Forest Service to restore, repair, reinstall, and manage the trails for public use.

### B. *Magistrate Judge Cavan's Findings*

Judge Cavan addressed each of the Plaintiffs' claims in turn. Plaintiffs allege that the Exchange Agreement violates FLPMA because the USFS owns a legally valid property interest in the property traversed by the trails in the form of easements created through prescription by decades of public use and trail management and maintenance. Judge Cavan determined that, although the USFS plainly believed it had easement interests (evidenced through National Forest maps and management plans), the potential easement interests were not property interests applicable under FLPMA because they were never secured, recorded, perfected, or declared through a judicial decree, and therefore not "tract[s] of land or interests therein within the National Forest system." (Doc. 101 at 13 (citing § 1716(a) of FLPMA)).

Turning to the Plaintiffs' NEPA claims, Judge Cavan determined that the 2009 EA provided sufficient analysis of the environmental impacts. (Doc. 101 at 21). In his view, the 2009 EA's analysis of all the proposed projects, including the Porcupine reroute, addressed the cumulative impacts of all the projects and, where appropriate, addressed specific effects in the porcupine area, such as flagging aquatic issues and sensitive species concerns. Accordingly, he found that Plaintiffs

9

failed to demonstrate that the USFS did not take a "hard look" at the environmental impacts of the project and therefore the NEPA claim fails.

Judge Cavan determined that the NFMA claim had the same defect as the FLPMA claim because NFMA only governs management on Federal lands. Because the potential easement interests were never conclusively established, the USFS had no legally valid interest in the land at issue. Therefore, NFMA does not apply, and the Plaintiffs' claim cannot succeed. (Doc. 101 at 23-24).

Finally, Judge Cavan addressed the Plaintiffs' argument that the USFS must be compelled to protect and restore access to public trails on the east side of the mountain range. Judge Cavan determined that a court, under §706(1) of the APA, can only compel an agency to take a "discrete agency action that [the agency] is required to take" and that the management concerns raised by Plaintiffs do not qualify. (Doc. 101 at 24-25 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).)). Here, because there is not an established, valid legal interest in the potential easements, the Court cannot say, as a matter of law, that the USFS is failing to "protect existing access rights," as asserted by Plaintiffs. (Doc. 79 at 41). Furthermore, Judge Cavan determined, a Court order that the agency must take steps to protect access generally is precisely proscribed by *Norton* and therefore the claims regarding the east side trails cannot succeed. Finding against the Plaintiffs and for the Defendants on all raised issues, Judge Cavan recommended

that the Plaintiffs' motion be denied, and the Federal Defendants' and Landowners' motions be granted. (Doc. 101 at 27).

## III. Analysis

Plaintiffs assert objections to Judge Cavan's findings on all four of the claims.

### A. FLPMA

Plaintiffs object to the Magistrate's determination that USFS never owned an easement interest in the trails, stating that, the USFS already determined that it had an easement in a sworn declaration and had consistently taken the position that it owned valid easement interests from 1987 through 2019. Plaintiffs also challenge the Magistrate's finding that FLPMA is only triggered if USFS formally owns an interest, asserting that the USFS "can acquire and own valid easement interests on National Forest trails that cross private property by prescription alone and even if they are never recorded, established by a court or perfected." (Doc. 103 at 14).

Plaintiffs first argue that the USFS has consistently asserted that it has easement rights in the trails at issue and consequently the USFS' arguments that FLPMA is not applicable is either barred by judicial estoppel or is an impermissible post-hoc rationalization for noncompliance. (Doc. 103 at 6-9).

This argument is not well-founded. Judge Cavan determined that, because there was not an established easement interest owned by the government, the procedures required by FLPMA were inapplicable. Because the Court concluded that FLPMA does not apply to the interests at issue, questions of judicial estoppel and evidence going to whether the USFS acted arbitrarily or capriciously are not relevant.

Plaintiffs also assert that Judge Cavan erred in holding that FLPMA is only triggered if the USFS acquires a fee interest or an established, recorded easement in the two trails. (Doc. 103 at 10). In support, Plaintiffs argue that the USFS can acquire and has acquired valid easement interests through prescription alone. This is true and inarguable, but not on point, given the facts here. The Plaintiffs argue that, because prescription is a valid method of acquiring an interest in land, FLPMA applies. However, as Judge Cavan correctly pointed out, to successfully assert a prescriptive easement in Montana, the alleged easement holder must demonstrate, by clear and convincing evidence, that the five statutory requirements are satisfied. Logically, then, one cannot be said to "own" the easement until it has been declared to exist—assertions of ownership are an essential element, but not the only element. *Wonder Ranch*, cited by Plaintiffs, is exactly the type of action required to establish a valid easement interest such that FLPMA applies. Plaintiffs' reliance on it for the proposition that easements are owned prior to

12

recognition by a court is incorrect. Judge Cavan correctly found that FLPMA applies to interests owned by the government and that the potential, un-litigated prescriptive easement interests do not qualify. Plaintiffs have provided no legal support or caselaw showing otherwise.

*B. NEPA*

Plaintiffs object to the Magistrate's determination that the 2009 roads and trails EA sufficiently analyzed the Ibex project, and assert that the Ibex project was not even included in the 2009 EA because the language was merely aspirational, lacked analysis of the direct, indirect, and cumulative effects of the Ibex project, failed to analyze reasonable alternatives, and improperly scoped the project.

Plaintiffs assert that the Magistrate erred in finding that the Ibex project was included in Alternative 1 of the 2009 EA, stating that the description provided—"[s]ome portions of the trail may be shifted onto National Forest land to the east"—and the general map were merely aspirational and inadequate.[2] (Doc. 103 at 18). This objection understates the description of the reroute (excerpted in the facts section above) and imposes an unduly narrow scope. NEPA requires that federal agencies consider every significant environmental impact of a proposed

---

[2] Plaintiffs also assert that Judge Cavan relied on inappropriate items in the record. (See Doc. 103 at 17). This objection appears to be founded on a misreading of the record; Judge Cavan cited directly to the 2009 EA in conducting his analysis and not the documents Plaintiffs claim. (See Doc. 101 at 17-18). The citations the Plaintiffs complain about relate to the agency's ultimate decision to implement the project.

13

action and that the agency informs the public that those considerations were included in the decision-making process. *Baltimore Gas and Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983). To that end, the description of the Porcupine-Lowline trail reroute is sufficiently descriptive to inform the public. It gives a corridor where the reroute is expected to occur and notifies the public that the trail may be shifted east in places and will require approximately 8 miles of trail work. The Court agrees with Judge Cavan that the Ibex project was included in the 2009 EA.

Plaintiffs next fault the Magistrate for finding that the 2009 EA analyzed the effects of the project, including its impact on wildlife, aquatic species, aquatic resources, and public recreational use and access. (Doc. 103 at 19-20). Plaintiffs also assert that there was no consideration given to how acquiring new easements, releasing existing easements, and trail closures may affect public use and access and the indirect impacts from those decisions to wildlife resources such as big game. The USFS responds that a collective analysis of similar projects all involving "improvement work on certain Gallatin National Forest roads and trails" was both allowed and encouraged because such combined statements prevent an agency from separating a project with substantial impacts into slim actions that, taken alone, would have no significant impact. *See Native Ecosystem Council v. Dombeck*, 304 F.3d 886, 894 (9th Cir. 2002).

The Court agrees with Judge Cavan and the USFS. Plaintiffs insist that the discussion of the Porcupine area projects is insufficient and that the Ibex reroute demands specific analysis, but provide no support for that proposition or authorities requiring such granular scrutiny. NEPA, as stated previously, requires that the USFS take a "hard look" at environmental considerations—here, the USFS noted impacts to stream crossings, Yellowstone cutthroat trout, sensitive species, and addressed public comments to that end. (A.R. 60, 169, and 192). The Ibex project is substantially the same as, and included within, the described Porcupine work area. Accordingly, absent a showing by the Plaintiffs of specific issues raised by the Ibex project, but not included in the Porcupine project, the Court cannot conclude that USFS failed to meet its NEPA obligations regarding environmental impacts. The Plaintiffs have not made such a showing, and their objection on this point is denied.

Plaintiffs next object that the 2009 EA violated NEPA because it failed to include other reasonable alternatives. (Doc. 103 at 22). Plaintiffs believe that the USFS should have compared and contrasted various alternatives including alternative trail designs, locations, and uses or evaluated alternatives that preserved access rights while simultaneously protecting private property rights. NEPA requires that an agency must "study, develop, and describe appropriate alternatives to recommend courses of action in any proposal which involves unresolved

conflicts concerning alternative uses of available public resources." 42 U.S.C. § 4332(2)(E). NEPA and its implementing regulations only require the following with respect to the number of alternatives that must be considered by an agency: (1) the agency must consider "appropriate" alternatives to recommended courses of action, 42 U.S.C. § 4332(2)(E); (2) an EIS must "rigorously explore and objectively evaluate all *reasonable* alternatives" and must explain why it has eliminated an alternative from detailed study, 40 C.F.R. § 1502.14(a); (3) the agency must consider a "no action" alternative, *id.* § 1502.14(d); and (4) the agency must designate a "preferred" alternative, *id.* § 1502.14(e). The statutory and regulatory requirements that an agency must consider "appropriate" and "reasonable" alternatives do not dictate the minimum number of alternatives that an agency must consider. *Native Ecosystems Council v. United States Forest Serv.*, 428 F.3d 1233, 1245-46 (9th Cir. 2005).

The Ninth Circuit has stated that there is no numerical requirement for the number of alternatives and that an agency's obligation to consider alternatives is lesser when conducting an EA rather than an EIS. *Id.* The relevant question is whether the USFS considered appropriate and reasonable alternatives under NEPA. *Id.* at 1246. The EA describes the alternatives development process as follows:

> This EA addresses projected impacts of two alternatives; the Proposed Action (Alternative 1), and No Action (Alternative 2). These two alternatives were

determined to be adequate because; (a) the significance of environmental issues could be minimized through application of mitigation and design features to the Proposed Action, and (b) the effects of other alternatives (i.e. combinations of the Proposed Action and No Action Alternatives) can be adequately understood through comparison of the Proposed Action and No Action Alternatives.

A.R. 3839-40. The USFS then provided a table comparing and contrasting the two alternatives. A.R. 3863. Plaintiffs assert this was insufficient because the USFS did not consider different types of reroutes or trail work. But that objection goes beyond what is required. The reasonableness of a given alternative is limited to what easements could be secured or negotiated; the decision as the USFS described it in the EA was to either build a new trail or not. The Court cannot say that this decision was unreasonably related to the purposes of the project. *Native Ecosystems Council*, 428 F.3d at 1247.

Finally, Plaintiffs' last NEPA objection is that the USFS failed to consider important factors in its scoping notice—Plaintiffs take specific issue with the alleged failure of the USFS to discuss the existence of Northern Pacific railway easements. (Doc. 103 at 24). Judge Cavan faulted the Plaintiffs for failing to establish that the railway deeds are connected to any specific parcel or explain how the deeds would be relevant to the agency's analysis of the environmental impacts. (Doc. 101 at 21). In their objections, the Plaintiffs have not cured this shortcoming. Without authority, the Plaintiffs describe the omission of discussion of the deeds to be a "relevant factor" and "an important aspect of the problem" but

17

never describe specifically how or why they are relevant beyond mere assertion. (Doc. 103 at 24). Plainly stating that whole sections are covered by railway easement is insufficient to form a proper objection such that the Court could make an alternative finding and therefore the objection on this issue is denied.

C. *NFMA*

Plaintiffs continue to assert that the Ibex project violates the Travel Plan, and therefore NFMA, because it changes use designations, closes portions of the trails, etc., without amending the plan or providing for public notice and comment. (Doc. 101 at 26). This objection is partially founded on the same ground as Plaintiffs' FLPMA objections. Consequently, this objection also suffers from the same fatal determination that the land at issue is not governed by NFMA. NFMA governs management for units of the National Forest System (i.e., land owned by the USFS). 16 U.S.C. § 1604(a). As determined in section III.A, the USFS has no legally valid interest in the portions of trails that traverse private property and therefore NFMA does not apply.

D. *East side trails*

Plaintiffs also assert that the USFS failed to abide by its Travel Plan commitments regarding the east side trails because the USFS failed to protect existing access rights. (Doc. 103 at 27). Specifically, Plaintiffs continue to state that the USFS is failing to comply with its obligation to protect public access rights

regarding two trails on the east side of the Crazy Mountains: the East Trunk trail and the Sweetgrass trail. Plaintiffs allege that a nondiscretionary duty arises from the USFS' travel regulations and the travel plan for the Forest. But at no point in the initial briefing or the objections do Plaintiffs identify what action specifically is or is not being taken by the USFS. Even before reaching the merits of Plaintiffs' arguments on this issue, this failure is fatal. For Plaintiffs to succeed in a challenge predicated upon APA § 706(1), they must identify a discrete agency action or a discrete failure to act. *Norton*, 542 U.S. at 63. The purpose of this mandate is to prevent courts from entering general orders compelling broad compliance such that the judge is injected into day-to-day agency management. *Id.* at 67. This prohibited purpose is precisely what the Plaintiffs request regarding the east side trails. "Failing to protect access," as the Plaintiffs style the claim, is too broad and not firm enough for the Court to enter an order compelling compliance and is therefore proscribed under the Supreme Court's order in *Norton* and § 706(1) of the APA. Judge Cavan's findings on this issue are correct.

## IV. Conclusion

IT IS ORDERED that the proposed Findings and Recommendations entered by the United States Magistrate Judge (Doc. 101) are ADOPTED IN FULL.

IT IS FURTHER ORDERED that:

1. Plaintiff's Motion for Summary Judgment (Doc. 78) is DENIED; and

19

2. Federal Defendants' Cross-Motion for Summary Judgment (Doc. 81) is GRANTED; and

3. Landowner Defendants' Cross-Motion for Summary Judgment (Doc. 85) is GRANTED.

DATED this 30th day of March, 2022.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge